**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| LAURA PRESSLEY, ROBERT BAGWELL, TERESA SOLL, THOMAS L. KORKMAS, and MADELON HIGHSMITH,<br><br>Plaintiffs,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Texas Secretary of State, CHRISTINA ADKINS, in her official capacity as Director of the Elections Division of the Texas Secretary of State, BRIDGETTE ESCOBEDO, in her official capacity as Williamson County Elections Administrator; DESI ROBERTS, in his official capacity as Bell County Elections Administrator, and ANDREA WILSON, in her official capacity as Llano County Elections Administrator,<br><br>Defendants. | Civil Action No. 1:24-cv-00318 |

**PLAINTIFFS' ORIGINAL COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Laura Pressley, Ph.D. (*pro se*), along with plaintiffs Robert Bagwell, Teresa Soll, Thomas L. Korkmas, and Madelon Highsmith, (by and through their undersigned counsel), file this Complaint for Declaratory and Injunctive Relief against Defendants Jane Nelson, in her official capacity as the Texas Secretary of State (the "Secretary"), Christina Adkins, in her official capacity as Director of the Elections Division of the Texas Secretary of State (the "Elections Director"), Bridgette Escobedo, in her official capacity as Williamson County Elections Administrator ("Ms. Escobedo"), Dr. Desi Roberts, in  his official capacity as Bell County

Elections Administrator ("Dr. Roberts"), and Andrea Wilson, in her official capacity as Llano County Elections Administrator ("Ms. Wilson"), and allege as follows:

## I.      NATURE OF THE ACTION

*"...the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."*
*Reynolds v. Sims*, 377 U.S. 533, 555 (1964)

1.      This Complaint seeks declaratory and injunctive relief arising from failures of the Texas Secretary of State and the elections administrators of certain Texas counties to comply with the United States Constitution, Texas Constitution, and federal and state election statutes. As described herein, Defendants' failures have deprived Plaintiffs and others similarly situated of their right to cast a secret ballot that is protected against fraud and have further violated the Equal Protection and Due Process clauses of the Fourteenth Amendment. These violations result not from unconstitutional election laws, but from the Defendants' willful and systematic disregard of valid, constitutional federal and state election laws. In other words, Plaintiffs do not seek a change in Texas or federal election law. Rather, they seek Defendants' compliance with existing law, which compliance is essential to securing the right to vote free from debasement and dilution. Because of the constitutional gravamen of Defendants' election law violations, Plaintiffs seek relief from this Court, including interim injunctive relief.

2.      As described in detail herein, the Texas Secretary of State has promulgated "advisories" to Texas counties and election officials that advise and purport to permit such election officials to modify or ignore various Texas election laws. The Secretary has also permitted the use of electronic voting systems with uncertified and illegal components. As a result, Plaintiffs are relegated to a class of citizens whose vote does not enjoy the same critical legal protections as certain other Texas voters, for no reason other than the Defendants' arbitrary declaration of a

"waiver" of election laws. In addition to violating Plaintiffs' rights to due process and equal protection, the Defendants' willful disregard of Texas election law has the very serious effect of violating the secrecy of the ballot guaranteed by the Texas Constitution and federal law.

3.     Accordingly, Plaintiffs seek a declaration that Defendants' actions and inactions, as described herein, violate the Fourteenth Amendment and Texas and federal laws protecting the secrecy of the ballot. Plaintiffs further seek preliminary and permanent injunctions against such actions and inactions.

## II.     JURISDICTION AND VENUE

4.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights, under color of state law, secured by the United States Constitution and the Voting Rights Act, 52 U.S.C. §§ 10301 and 10303 and 52 U.S. §§ 21081(a)(1)(A)(i) and (ii), 21081(a)(1)(C).

5.     Plaintiffs and others similarly situated are denied due process and equal protection of Texas election laws accorded them by the Fourteenth Amendment to the Constitution of the United States by virtue of the debasement of their votes.

6.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States, and involve the assertion of a deprivation, under color of state law, of rights under the Constitution of the United States and an Act of Congress providing for equal rights of citizens or of all persons within the United States.

7.     This Court has personal jurisdiction over Defendant Jane Nelson, who is sued in her official capacity as the Texas Secretary of State.

8.      This Court has personal jurisdiction over Defendant Christina Adkins, who is sued in her official capacity as the Director of the Elections Division of the Texas Secretary of State.

9.      This Court has personal jurisdiction over Defendants who are county election officials: Bridgette Escobedo, in her official capacity as Williamson County Elections Administrator, Desi Roberts, in his official capacity as Bell County Elections Administrator, and Andrea Wilson, in her official capacity as Llano County Elections Administrator.

10.      Under 28 U.S.C. § 1391(b)(1) and (2), venue is proper in the Austin Division of the U.S. District Court for the Western District of Texas because a substantial part of the events that give rise to Plaintiffs' claims have occurred and will continue to occur in this District, and one or more of the defendants reside in the district.

11.      This Court has authority to enter a declaratory judgment in this action under 28 U.S.C. §§ 2201 and 2202.

### III.      PARTIES

12.      Plaintiff Laura Pressley, Ph.D. is a qualified and registered voter in Williamson County, Texas. Dr. Pressley is a consistent voter in Williamson County who votes in-person at the polls and by Texas law is not entitled to vote by-mail.  Because of the actions of Defendants, she is required to utilize a ballot that contains a randomly assigned unique identifier/ballot tracking number, rather than a consecutively-numbered ballot as required by law. She also must utilize voting system equipment and components that are illegal and/or have not been certified.  As a result, the secrecy of Dr. Pressley's ballot has been breached, and her constitutional rights to equal protection and due process have been violated. These harms have already occurred and will recur in upcoming Williamson County elections without intervention by this Court.

13.     Plaintiff Robert Bagwell is a qualified and registered voter in Williamson County, Texas. Mr. Bagwell is a consistent voter in Williamson County who votes in-person at the polls and by Texas law is not entitled to vote by-mail. Because of the actions of Defendants, he is required to utilize a ballot that contains a randomly assigned unique identifier/ballot tracking number, rather than a consecutively-numbered ballot as required by law. He also must utilize voting system equipment and components that are illegal and/or have not been certified.  As a result, the secrecy of Mr. Bagwell's ballot has been breached, and his constitutional rights to equal protection and due process have been violated. These harms have already occurred and will recur in upcoming Williamson County elections without intervention by this Court.

14.     Plaintiff Teresa Soll is a qualified and registered voter in Williamson County, Texas. Ms. Soll is a consistent voter in Williamson County who votes in-person at the polls and by Texas law is not entitled to vote by-mail.  Because of the actions of Defendants, she is required to utilize a ballot that contains a randomly assigned unique identifier/ballot tracking number, rather than a consecutively-numbered ballot as required by law. She also must utilize voting system equipment and components that are illegal and/or have not been certified.  As a result, the secrecy of Ms. Soll's ballot has been breached, and her constitutional rights to equal protection and due process have been violated. These harms have already occurred and will recur in upcoming Williamson County elections without intervention by this Court.

15.     Plaintiff Thomas L. Korkmas is a qualified and registered voter in Bell County, Texas. Mr. Korkmas is a consistent voter in Bell County who votes in-person at the polls and by Texas law is entitled to vote by-mail but chooses to exercise his right to vote in person. Accordingly, because of the actions of Defendants, he is required to utilize a ballot that contains a randomly assigned unique identifier/ballot tracking number, rather than a consecutively-numbered

ballot as required by law. He also must utilize voting system equipment and components that are illegal and/or have not been certified.  These harms have already occurred and will recur in upcoming Bell County elections without intervention by this Court.

16.     Plaintiff Madelon Highsmith is a qualified and registered voter in Llano County, Texas. Ms. Highsmith is a consistent voter in Llano County who votes in-person at the polls and by Texas law is not entitled to vote by-mail.  Because of the actions of Defendants, she is required to utilize a ballot that contains a randomly assigned unique identifier/ballot tracking number, rather than a consecutively-numbered ballot as required by law. She also must utilize voting system equipment and components that are illegal and/or have not been certified.  These harms have already occurred and will recur in upcoming Llano County elections without intervention by this Court.

17.     Defendant Jane Nelson is the current Texas Secretary of State and is named as a Defendant in her official capacity. She may be served with process by serving the Texas Secretary of State at James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

18.     Defendant Christina Adkins is the current Director of the Elections Division of the Texas Secretary of State, which carries out the duties specified by the Texas Election Code. She may be served with process by serving the Texas Secretary of State at James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

19.     Defendant Bridgette Escobedo is the current elections administrator in Williamson County. She may be served with process by serving County Judge Bill Gravell, Jr. at 710 S. Main Street, Suite 101, Georgetown, Texas 78626.

20.     Defendant Dr. Desi Roberts is the current elections administrator in Bell County. He may be served with process by serving County Judge David Blackburn at 101 E. Central Avenue, Belton, Texas 76513.

21.     Defendant Andrea Wilson is the current elections administrator of Llano County. She may be served with process by serving County Judge Ron Cunningham at 801 Ford Street, Room 101, Llano, Texas 78643.

22.     The defendants are proper parties in their official capacities pursuant to 28 U.S.C. § 1983 and *Ex Parte Young*, 209 U.S. 123 (1908).

## IV.     FACTUAL BACKGROUND

### A.  OVERVIEW

23.     Plaintiffs are all registered Texas voters who have voted in past Texas elections and intend to vote in future elections. Plaintiffs Pressley, Bagwell, and Soll reside and vote in Williamson County, Plaintiff Korkmas resides and votes in Bell County, and Plaintiff Highsmith resides and votes in Llano County. All Plaintiffs are consistent voters and voted in the most recent Texas elections in November 2023 and March 2024, and intend to vote in future elections, including but not limited to the upcoming primary run-off elections scheduled for May 28, 2024 and the November 2024 general election.

**1.     Two classes of voters**

24.     Texas law recognizes and creates two classes of voter – those who vote by-mail and those who vote in-person at the polls. As described more fully herein, only Texas voters who meet certain criteria may vote by-mail.  However, even if qualified to vote by-mail, those voters may opt to vote in-person instead. All other voters *must* vote in-person pursuant to Texas law. Plaintiffs Dr. Pressley, Mr. Bagwell, Ms. Soll and Ms. Highsmith do not qualify to vote by mail;

accordingly, these Plaintiffs must all vote in-person at a polling location.  Mr. Korkmas, while he is entitled to vote by-mail, chooses to exercise his right to vote in-person at the polls in Bell County.

**2.     Electronic Voting Systems**

25.     All Texas counties utilize an electronic voting system of some kind. The Texas Election Code specifies the requirements for such systems but does not require the use of a particular system. Counties are permitted to select the electronic voting system of their choice, so long as those systems are certified by the Texas Secretary of State as complying with the Election Code and the Texas Administrative Code. The Texas Secretary of State is, in turn, an officer of the state compelled to comply with state law as enacted by the legislature and assented to by the Governor in accordance with the state and federal republican forms of government guarantees. Tex. Const. art. 1, §2 & art. 2 §1; U.S. Const. art. 4, §4.  Consequently, the Secretary of State has no authority to make her own law or declare herself or others exempt from law as made through the process of bicameralism and presentment. *E.g., INS v. Chada*, 462 U.S. 919 (1983); *Texas v. Garland,* No. 5:23-cv-00034-H (N.D. Tex. Feb. 27, 2024).

26.     All Texas voters who vote in person are required to utilize an electronic voting system to complete and cast their ballots under the protection of laws passed by the legislature and assented to by the Governor insofar as those laws are permitted to operate by those sworn to so assure. Texas voters who qualify to vote by mail utilize paper ballots. Because they do not qualify to vote by mail, Plaintiffs Pressley, Bagwell, Soll, and Highsmith must use the electronic voting systems selected by their respective counties. If Plaintiff Korkmas wishes to exercise his right to vote in person, he must also utilize the electronic voting system selected by Bell County.

**3.      In-person voters denied fraud detection and ballot secrecy.**

27.      The Texas Constitution commands the Legislature to provide for ballot numbering and other such laws to detect and punish election fraud.  The Texas Election Code mandates ballots be consecutively numbered starting with "1" and provides for other such laws related to that consecutive numbering. The consecutive-numbering requirement furthers the State's interest in preventing, detecting, and punishing fraud and ensuring the integrity of Texas elections.

28.      Texans who vote by mail receive a consecutively-numbered paper ballot.  However, many Texans who vote in-person, including Plaintiffs, have no choice but to use ballots that lack consecutive numbers. Instead, the ballots Plaintiffs have been required to utilize contain computer-generated randomly assigned unique identifier "ballot tracking" numbers, which do not comply with Texas law and, importantly, **do not preserve the secrecy** of Plaintiffs' ballots, as described more fully herein. As a result, Plaintiffs are relegated to a class of voters whose votes are neither assured secrecy nor protected from dilution or debasement by fraud. This contravenes both federal and state law and is directly attributable to the actions of Defendants.

**4.  In-person voters must use uncertified voting system equipment.**

29.      Additionally, as in-person voters, Plaintiffs are required to utilize electronic voting systems that contain uncertified voting system equipment. This is not a mere technicality. As explained more fully herein, these components are uncertified because, among other things, they have wireless external network connectivity, in direct violation of Texas law. In other words, in order to participate in Texas elections, Plaintiffs must cast their votes using electronic voting systems that do not comply with Texas law and that do not preserve the secrecy or ensure the integrity of Plaintiffs' votes. This does not apply to Texans who vote by mail. Again, this unconstitutional disparity is the direct result of the actions of Defendants who purport, collectively,

to authorize a "waiver" of Texas election security laws, and to act in accordance with this putative "waiver."

## 5.  State and County Election Officials

30.     The Texas Secretary of State is the chief election officer for the State and a member of the Executive Branch. The Texas Legislature has tasked the Secretary with "[maintaining] uniformity in the application, operation, and interpretation of the [Election] code and of the laws outside the code." Tex. Elec. Code Sec. 31.003. To perform these duties, the Secretary "shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code." *Id*. The Secretary "shall assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside this code." Tex. Elec. Code Sec. 31.004(a). The Secretary is directed to take action to protect the voting rights of Texas citizens from abuse of those administering elections by ordering a correction of such abuses and may seek enforcement through the Texas attorney general. Tex. Elec. Code Sec. 31.005.

31.     The county Election Administrator position in Texas is appointed by the respective county election commission comprising the county judge, the county clerk, the tax-assessor/collector, and the Democratic and Republican Party County Chairs.  Tex. Elec. Code Sec. 31.032.  Relevant to this case, and as described more fully herein, an elections administrator has the sole authority to select the ballot-numbering method for their respective county.[1]

---

[1] Exhibit 1 – Pressley Declaration. *See* Exhibit E -Tx AG Opin KP-0422_1_Hood County Ballot Numbering, p. 3.

## B.  VOTING IN TEXAS

### 1.  Two voter classes exist in Texas – by mail voters and in-person voters.

32.     Two distinct classes of voters exist in Texas - those who are permitted by state law to vote absentee *by-mail* and those who are required by state law to vote *in-person* at the polls. Under the U.S. Constitution's one-person, one-vote guarantee of equal protection, both of these voter classes in Texas are guaranteed equal protection of their ballot from harm resulting from disparate legal treatment by the state. Both voter classes are also guaranteed due process in the exercise of their right to vote.

#### *a.  By-mail voters are a voter class created and specified by Texas law.*

33.     Pursuant to the Texas Election Code, only certain qualified voters meeting the requirements listed below are eligible to participate in *by-mail* voting, namely those who:

    i.   are absent from county of residence (Section 82.001),
    ii.  suffer a disability or confinement for childbirth (Section 82.002),
    iii. are aged 65 years or older (Section 82.003),
    iv.  are confined in jail (Section 82.004),
    v.   participate in address confidentiality program (Section 82.007), or
    vi.  are under involuntary civil commitment (Section 82.008).

34.     Further, statutory requirements exist to apply for, and be recognized as eligible to, vote by-mail.  A person must submit the following supporting information as specified by the Texas Election Code:

    i.   an application is required (Section 84.001),
    ii.  the application must contain the applicant's name, address, drivers license, election identification certificate, personal identification card issued by the Texas Department of Public Safety or last four digits of their social security number and other additional information related to the grounds for which the applicant is applying for a by-mail ballot (Section 84.002 and 84.0021), and
    iii. the application must be signed by a witness who is not related to the applicant within the second degree of affinity or the third degree by consanguinity (Section 84.003).

35.     According to the Election Code, if a person knowingly provides false information on an application for a ballot by-mail, the offense is a state jail felony and may be increased to the next higher category of offense depending upon circumstances (Section 84.0041).

36.     While voters who qualify for by-mail voting may vote by-mail, Texas law does not mandate it or prohibit them from voting in-person at the polls if they so choose.  Voters meeting such qualifications are permitted to freely choose either to vote *by-mail* or vote *in-person*.

### b.     *In-person voters are a class created and specified by Texas law.*

37.     According to Texas election law, only a legally defined set of voters are eligible to vote by-mail as provided *supra*. All other qualified voters in Texas not meeting the requirements of Chapter 82 are compelled to cast their ballot *in-person* at the polls (Section 84.0041).  This results in prohibiting these voters from casting a ballot *by-mail*.

38.     These two classes of voters (*by-mail* and *in-person*) do not in themselves constitute any U.S. Constitutional deprivations, and none are claimed in this Complaint.

39.     The Texas Legislature has more than admirably done its part in enacting non-discriminatory statutes equally protecting the secrecy of ballots and ensuring protection from ballot fraud for all voters regardless of how they cast their ballot, whether *by-mail* or *in-person.*  Yet, as described in detail *infra,* their laws protecting *in-person* voters from fraud are being modified, ignored, waived and/or suspended, under the color of law, by Defendants, causing discrimination and violation of the secrecy of Plaintiffs' ballots.

**2.  Basics of electronic/paper hybrid voting systems in Texas.**

40.     The Secretary provides a comprehensive list of voting systems she has certified and that the 254 Texas counties have adopted up through February 6, 2024.[2]  This case focuses on the ES&S and Hart InterCivic electronic voting systems certified in Texas for use with paper ballots, typically called "hybrid voting systems."

41.     In-person voters at the polls walk up to an electronic pollbook that communicates wirelessly in real-time across the county and to offsite servers.  These pollbooks are certified by the Secretary.[3]  The pollbook verifies in-person voters are qualified to vote, checks them in, and provides printed information that the voter then inputs into electronic voting system equipment that marks the ballot, a ballot marking device (BMD).

42.     The electronic ballot marking device displays voters' correct ballot in a computer screen, voters electronically make their choices, and the electronic ballot marking device physically prints the choices on a paper ballot.  Voters retrieve their marked paper ballot and place it into a computerized optical ballot scanner that stores and tabulates votes.  All this is done in-person at the polls.

43.     A pictorial depiction of the Hart InterCivic hybrid voting system is provided below[4]:

---

[2] Exhibit 2 - Sec. of State 2024 Voting System by Texas County, 2/6/2024.  Last visited on February 10, 2024 at https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-bycounty.pdf#search=Voting%20Systems%20by%20County
[3] Tex. Elec. Code Sec. 31.012
[4] Exhibit 1 – Pressley Declaration, p. 7.



| Voter Check-in | Ballot Marking Devices | Ballot Scanner |
|---|---|---|
| (Produces barcode or access code) | (Accepts barcode or access code) | (Accepts/counts ballot) |

44.     The ES&S ballot marking devices are called "ExpressVote BMDs," and the Hart InterCivic Systems are called "Verity Duo BMDs."  Exactly how the electronic pollbooks provide printed information to the ES&S and Hart InterCivic ballot marking devices is a critical component of this case and requires more in-depth explanation.

   *a.  ES&S voting system tracks computerized randomly and uniquely assigned ballot numbers through voting system software*

45.     **For voters in counties that use ES&S** voting systems (Williamson and Bell), in-person voters are forced to accept pre-printed information on their ballot that includes a barcode and a computerized ***randomly and uniquely assigned*** ballot number.  See example below:



46.     The voting system equipment components at the polls required to pre-print this information include:

i.    ES&S ExpressLink software (licensed for use with Tenex and Votec pollbooks used by Williamson and Bell counties, respectively),
ii.   an optional wireless printer server, and
iii.  the ES&S ExpressVote Ballot Card Printer, a compact standalone thermal printer.

47.     The ES&S ExpressLink software is loaded onto each polling station pollbook and commands the ExpressVote Ballot Card Printer to pre-print a barcode and a randomly and uniquely assigned computerized ballot number on each voter's ballot when they check in.

48.     **For polls in Williamson County**, the ES&S ExpressLink software sends print commands through the electronic Tenex pollbook to a wireless printer server that is directly wired to the ES&S ExpressVote Ballot Card Printer.[5,6,7] See descriptions below.

---

[5] Exhibit 1 – Pressley Declaration.  *See* Exhibit H - Wm. 1122 Presentation (Print server and Epollbook)
[6] Exhibit 1 – Pressley Declaration.  *See* Exhibit K - LP PIA Tenex Server and ExpressLink License
[7] Exhibit 1 – Pressley Declaration.  *See* Exhibit AJ - Wm. Nov. 2023 Pct 310 Ballot Image



49.     **For polls in Bell County**, the ES&S ExpressLink software print commands are sent through the Votec pollbook through a wired USB connection to the ES&S ExpressVote Ballot Card Printer.[8,9]  See descriptions below.

---

[8] Exhibit 1 – Pressley Declaration.  *See* Exhibit AH - Wm. 1122 Print server and Epollbook and Exhibit AK - Tex. Sec. of State Election Advisory No. 2019-23; pp. 2-3.

[9] Exhibit 1 – Pressley Declaration.  *See* Exhibit AB - Example of Nov. 23 Bell Ballot Image



50.     The ES&S ExpressLink software and ES&S ExpressVote Ballot Printer random ballot numbering process for tracking ballot numbers with voting system software is described and authorized by the Secretary:

    i.     in a mass email from Christina Adkins, then Legal Director of the Elections Division, sent in April 2019 to election administrators in Texas: "Procedures for Ballot Marking Devices/Ballot on Demand Systems,"[10] and

    ii.    in the official Secretary of State's October 2019 Election Advisory 2019-23.[11]

***b. Hart InterCivic voting system assigns ballot numbers through voting system software.***

51.     For voters in counties that use Hart InterCivic hybrid ballot marking device electronic voting systems, such as Llano County, in-person voters are forced to accept a pre-assigned unique ballot number on their ballot before it is cast.

---

[10] Exhibit 1 – Pressley Declaration. *See* Exhibit AL - Hood County RQ0405KP Req. for AG Opinion - Adkins April 2019 email on ballot numbering using voting system software, pp. 5-7.
[11] Exhibit 1 – Pressley Declaration. *See* Exhibit AK - Tex. Sec. of State Election Advisory No. 2019-23; pp. 2-3.

52.     Llano County uses wireless KnowInk pollbooks that communicate wirelessly in real time across the county and to offsite servers and is believed to be loaded with Hart InterCivic voting system software that generates a ticket with a specifically formatted barcode.

53.     The Hart InterCivic Controller scans the barcode generated by the pollbook and generates yet another printed ticket with an access code to gain entry into and vote on the Hart InterCivic Duo ballot marking device.

54.     The voter uses the touchscreen of the Hart InterCivic Duo ballot marking device, the Duo, to enter the access code.  Then the electronic ballot is accessed on the computer touch screen and the voter makes their choices.

55.     In-person voters in Llano County are forced to cast their votes on a ballot that includes a computerized unique ballot number that may be tracked back to the voter's name through the access code and the barcode generated by the pollbook.[12] See description of the process as shown below:

---

[12] Exhibit 1 – Pressley Declaration – *See* Exhibit AC - MH_Llano Election Poll Train Material and Exhibit AL – Hood County RQ0405KP Req. for AG Opinion - Adkins April 2019 email on ballot numbering using voting system software, pp. 5-7.



56.     The Hart InterCivic ballot numbering through the voting system equipment, the ballot marking device, is authorized and described in a mass email from Christina Adkins, then Legal Director of the Elections Division of the Texas Secretary of State, sent in April 2019 to election administrators in Texas, "Procedures for Ballot Marking Devices/Ballot on Demand Systems"[13] and will be discussed more *infra.*

### c. Secretary's computerized randomly and uniquely assigned ballot numbering process through voting system software is prevalent across Texas.

57.     A list of voting systems by county is attached and incorporated by reference.[14]   The list contains all Texas counties, the vendor type of voting system, the model, the version of software, and the quantity on hand. *Id.*   Texas counties began moving away from all direct

---

[13] Exhibit 1 – Pressley Declaration – *See* Exhibit AL – Hood County RQ0405KP Req. for AG Opinion - Adkins
   April 2019 email on ballot numbering using voting system software, pp. 5-7.
[14] Exhibit 2 - Sec. of State 2024 Voting System by Texas County, 2/6/2024. Last visited on February 10, 2024 at
   https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-
   bycounty.pdf#search=Voting%20Systems%20by%20County

recording electronic (DRE) voting systems with no auditable paper trail and adopted hybrid voting systems using paper ballots with the new ballot marking devices in 2018 through 2024.[15,16,17,18]

| Year | Number of Texas Counties Using Hybrid Voting Systems with New Ballot Markers | Texas Secretary of State Reference Document and Version |
|------|------|------|
| 2018 | 20 | Voting Systems by County, 10/1/2018 1:43 PM |
| 2020 | 83 | Voting Systems by County, 2/11/2020 4:11 PM |
| 2022 | 105 | Voting Systems by County, 2/18/2022 10:21 AM |
| 2024 | 233 | Voting Systems by County, 2/6/2024 |

58.     Large counties such as Harris, Dallas, Tarrant, Bexar, Travis and others require in-person voters to use computerized ballot numbering through voting system software.

59.     While the hybrid voting systems using new ballot marking devices were initially certified in Texas with consecutively pre-numbered paper ballots as evidenced by Advisory 2019-23, to date and to the best of Plaintiffs' knowledge, counties such as Jefferson and Ellis use their ES&S hybrid voting systems with pre-printed consecutively numbered ballots.  Hood County also uses the Hart InterCivic hybrid voting system with pre-printed consecutively numbered ballots.  These counties utilize similar voting systems to Plaintiffs' counties (Williamson, Bell and Llano), demonstrating that there is no technical reason for waiving consecutive numbering and implementing randomly and uniquely assigned computerized ballot numbering.

---

[15] Texas Secretary of State Voting Systems by County, 10/1/2018 1:43 PM.  Obtained by Dr. Pressley October 4, 2018 at https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-bycounty.pdf#search=Voting%20Systems%20by%20County
[16] Texas Secretary of State Voting Systems by County, 2/11/2020 4:11 PM.  Obtained by Dr. Pressley in 2020 at https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-bycounty.pdf#search=Voting%20Systems%20by%20County
[17] Voting Systems by County, 2/18/2022 10:21 AM.  Obtained by Dr. Pressley in 2022 at https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-bycounty.pdf#search=Voting%20Systems%20by%20County
[18] Texas Secretary of State Voting Systems by County, 2/6/2024.  Obtained by Dr. Pressley on February 10, 2024 at https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-bycounty.pdf#search=Voting%20Systems%20by%20County

## C.  TEXAS STATE LAW EQUALLY PROTECTS
## VOTERS REGARDLESS OF CLASS

**1.    The Texas Constitution commands the Legislature to equally protect voters from fraud.**

60.    Article VI, Sec. 2 of the Texas Constitution mandates that voting privileges be protected from the influence of abuse of power and "other improper practice[s]."

> **TEXAS CONSTITUTION ARTICLE VI**
> **SEC. 2. QUALIFIED VOTER; REGISTRATION; ABSENTEE VOTING**.
> (c) The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence in elections from power, bribery, tumult, or other improper practice.

61.    For almost 150 years, and consistent with federal voter protections, the Texas Constitution has commanded the Legislature to enact laws protecting all ballots in Texas from fraud by legislating provisions for the numbering of ballots and establishing additional laws that detect and punish fraud.

> **TEXAS CONSTITUTION ARTICLE VI SEC. 4.**
> **ELECTIONS BY BALLOT; PURITY OF ELECTIONS; REGISTRATION OF VOTERS.**
> In all elections by the people, the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets[19] and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; and the Legislature shall provide by law for the registration of all voters.
> (Feb. 15, 1876. Amended Aug. 11, 1891, and Nov. 8, 1966.)

**2.    The Texas Legislature has enacted laws mandating consecutively numbered ballots, ballot secrecy, and other laws that detect and punish ballot fraud.**

*a.  Election administrators are mandated to prepare official ballots as consecutively numbered and preserve such records.*

---

[19] The Texas Supreme Court has long held that the term "tickets" is equated to "ballots." *Wood v. State ex rel. Lee*, 126 S.W.2d 4, 9 (Tex.1939).

62.     County Defendants, the election administrators in Williamson, Bell and Llano counties, are mandated to have official ballots consecutively pre-numbered beginning with the number "1." Tex. Elec. Code Section 52.062.  This cornerstone of election integrity has been in effect in Texas for over 70 years:

**TEXAS ELECTION CODE**
**SECTION 52.062.  NUMBERING OF BALLOTS.**
The ballots prepared by each authority responsible for having the official ballot prepared shall be numbered consecutively beginning with the number "1."

63.     County Defendants are closely governed by five laws requiring that they properly prepare, record, distribute, and preserve election supplies documenting the "range of ballot serial numbers" distributed to election offices at the polls, and that those election records be preserved. Texas Elec. Code Sections 51.004, 51.006, 51.007, 51.008.

**TEXAS ELECTION CODE**
**Sec. 51.004. DISTRIBUTING SUPPLIES.**
(a) Except as otherwise provided by law, the authority responsible for procuring the election supplies for an election shall distribute the supplies for the election.
(b) The appropriate supplies shall be distributed to each presiding election judge not later than one hour before the polls are required to be open for voting and to the early voting clerk before the beginning of early voting.

**Sec. 51.006. PREPARING BALLOTS FOR DISTRIBUTION.**
The authority responsible for distributing election supplies shall package and seal each set of ballots before their distribution and shall mark the package with the number of ballots enclosed and the range of the ballot serial numbers. If the authority is the early voting clerk, the ballots allocated for early voting need not be packaged and sealed.

**Sec. 51.007. RECORD OF BALLOT DISTRIBUTION.**
(a) As soon as practicable after the ballots are packaged for distribution, the authority responsible for distributing election supplies shall prepare a record of the number of ballots and the range of serial numbers on the ballots to be distributed to each presiding judge and the early voting clerk.
(b) The authority shall preserve the record for the period for preserving the precinct election records.

**Sec. 51.008. SUPPLEMENTING DISTRIBUTED BALLOTS.**
(a) The authority responsible for distributing election supplies shall retain a reserve of ballots to supplement the distributed ballots and on election day may reallocate previously distributed ballots among the polling places.
(b) The authority shall enter on the record of ballot distribution the number of ballots reserved and the number of ballots distributed from the reserve to each polling place. The range of serial numbers on the ballots shall be included in the record.
(c) If distributed ballots are reallocated, the authority shall indicate the reallocation on the record of ballot distribution and shall issue a receipt to each presiding election judge showing the number of ballots and the range of serial numbers on the ballots taken from the judge's polling place for redistribution. Each presiding judge shall indicate on the ballot register any reallocation of ballots affecting that polling place.
(d) The authority shall retain the undistributed reserve for the period for preserving the precinct election records

64.     Intentional failures to distribute these supplies, which document and memorialize the chain of custody of ballots and their consecutive ballot serial numbers, constitute a Class C misdemeanor offense.  Tex. Elec. Code Sec. 51.010.

**Sec. 51.010. FAILURE TO DISTRIBUTE OR DELIVER SUPPLIES.**
(a) A person commits an offense if the person is responsible for distributing election supplies for an election and intentionally fails to distribute any of the supplies by the prescribed by Section 51.004(b).
(b) A person commits an offense if the person is entrusted with the delivery of election supplies for use at polling places and intentionally fails to deliver any of the supplies within the time specified by the person who entrusted the delivery to the person.
(c) An offense under this section is a Class C misdemeanor.

65.     These five laws related to the chain of custody of consecutively numbered ballots were enacted by the Legislature as part of its mandate to create laws designed to detect and punish ballot fraud, including fraud committed by those in official possession of ballots such as the authority responsible for procuring and distributing ballots or officers at the polls.  These five laws are so critical that the Legislature enacted criminal penalties to punish violations.

***b. Election officers at polls are mandated to meticulously handle, manage, inspect, and record consecutively numbered ballots and protect ballot secrecy.***

66.     Election officers at polling locations such as presiding judges, alternate judges, and/or clerks are directed by and are subject to various laws related to consecutive ballot numbering.

67.     The Election Code requires election officers at the polls to examine and verify that official ballots are properly consecutively pre-printed and that any unnumbered or defectively pre-printed ballots are segregated and retained. Tex. Elec. Code Sec. 62.007.  This law is a further extension of the chain of custody provisions, which subsequently ensure that any potential ballot fraud occurring at the polls is detected and documented for future prosecution as required.

**Sec. 62.007. EXAMINING BALLOTS.**
(a) An election officer shall unseal the ballot package, remove the ballots, and examine them to determine whether they are properly numbered and printed.
(b) An unnumbered or otherwise defectively printed ballot shall be placed in ballot box no. 4.

68.     Texas law further requires these poll election officers to physically disarrange some pre-consecutively numbered ballots face down on a table, allowing the voter to choose their ballot and view their ballot serial number.  Tex. Elec. Code Sec. 62.009.  Adherence to this crucial law assures absolute secrecy of the ballot because, under these specified directions to polling election officials, only the voter who chooses their ballot will view and know their ballot serial number.

**Sec. 62.009. DISARRANGING BALLOTS FOR VOTERS' SELECTION.**
(a) As needed for voting, an election officer shall disarrange a supply of the ballots so that they are in random numerical order.
(b) The disarranged ballots shall be placed face down on a table in a manner preventing an election officer or other person from ascertaining the number of a ballot selected by a voter.

69.     Finally, the Texas Legislature has not enacted or permitted any exceptions or changes to consecutive numbered ballots beginning with "1" or changes to any ancillary laws that

are dependent upon, require, or protect consecutive ballot numbering.  Recent attempts to do so failed decisively.  In 2021, Texas House Bill HB 3698 and Texas Senate Bill SB 1215 proposed modifying consecutive ballot numbering for electronic ballot voting systems, Tex. Elec. Code Sec. 124.062. Neither bill was granted a hearing in their respective legislative committees, and neither bill was re-introduced in the subsequent three Special Sessions of the 87th Legislature in 2021. Further, neither bill was re-introduced in the most recent Regular or Special Sessions of the 87th Legislature in 2023.

### 3.   The Texas Legislature enacted laws defining voting system standards and requiring federal and state certification of such systems.

70.     Voting system standards and definitions in Texas are consistent with the federal standards contained in 52 U.S. Code Sec. 21081.  Specifically, voting systems in Texas are defined as "a method of casting and processing votes."  Tex. Elec. Code Sec. 121.003(1).  The methods may function with the use of "electronic apparatus and includes the procedures for casting and processing votes, and the programs, operating manuals…and other software necessary for the system's operation."  *Id*.  Further, Texas voting system equipment means "any kind of …electronic apparatus for use in a voting system."  Tex. Elec. Code Sec. 121.001(4).  In the counties where Plaintiffs are registered to vote, those three unique voting systems each utilize state certified electronic pollbooks to check in voters[20] and operate with ballot marking devices (BMD),[21] defined as "a voting system with an electronic interface that allows a voter to mark a paper ballot."  Tex. Elec. Code Sec. 121.003(13).

---

[20] Tex. Elec. Code 31.014
[21] Exhibit 2 - Sec. of State 2024 Voting System by Texas County, 2/6/2024.
   Last visited on February 10, 2024 at https://www.sos.texas.gov/elections/forms/sysexam/voting-sys-bycounty.pdf#search=Voting%20Systems%20by%20County

71.     Texas law defines minimum voting systems standards to be used in an election in Texas.  Pertinent standards directly applicable to this proceeding include the following.  Texas voting systems must:

i.    "preserve the secrecy of the ballot" (Tex. Elec. Code 122.001(a)1),
ii.   comply with Federal voting system standards "adopted by the Election Assistance Commission" (Tex. Elec. Code 122.001(a)(3)),
iii.  'be safe from fraudulent or unauthorized manipulation" (Tex. Elec. Code Sec. 122.001(a)(4)),
iv.   permit voting on all offices and measures that voters are allowed to vote on and prevent counting votes on offices and measures for which a voter is not entitled to vote.  (Tex. Elec. Code 122.001(a)(5 and 6)), and
v.    provide records to audit the voting system (Tex. Elec. Code 122.001(a)(10)).

72.     Before a voting system or voting system equipment may be used in an election in Texas, "the system and a unit of the equipment must be approved by the secretary of state."  Tex. Elec. Code Sec. 122.031(a).  The requirements for approval must comply with standards consistent with Subchapter A of Chapter 122 as noted *supra*. Tex. Elec. Code Sec. 122.032(a)(1).

73.     A total of six examiners are appointed to evaluate and inspect voting systems and equipment that have been submitted for approval by the Secretary.  Four examiners are appointed by the Secretary, and two are appointed by the Attorney General.  Tex. Elec. Code Sec. 122.035 (a-c).  Examiners are required to "examine the voting system or voting system equipment" and write and deliver a report to the secretary.  Tex. Elec. Code Sec. 122.036(a) and (b).  The Secretary authorizes approval of voting systems and voting system equipment for Texas.  Tex. Elec. Code 122.038(a).

74.     The Secretary is required to provide a written order of approval if the voting system satisfies, including but not limited to, the following requirements :

i.    compliance with Tex. Elec. Code Sec. 122.001,
ii.   federal certification and adoption by the EAC pursuant to Tex. Elec. Code Sec. 122.001(a)(3),

26

iii. compliance with 1 Tex. Admin. Code Sec. 81.60 and satisfactory Form 101 responses from voting system vendors,

iv. compliance with 1 Tex. Admin. Code Sec. 81.61 to be certified by a nationally recognized testing laboratory,

v. compliance with 1 Tex. Admin. Code Sec. 81.62 for central accumulator audit logs to meet specific standards, and

vi. compliance with other laws in the Texas Election Code related to voting systems and voting system equipment operations in Texas including but not limited to consecutive ballot numbering laws, Tex. Elec. Code Sections 52.062, 51.006, 51.007, 51.008, 62.007 and 62.009.

75.     The Secretary may prescribe limited additional standards for voting systems "consistent with" Title 8 (Voting Systems) of the Texas Election Code.  Tex. Elec. Code 122.001(c).   While the Secretary may prescribe additional standards for voting system certifications, the Secretary is commanded by the Legislature to uniformly interpret the Election Code and other laws outside the code and prepare detailed directives and instructions "relating to and based on this [Election] code and the laws outside this code." Tex. Elec. Code Sec. 31.003. To be specific, any additional voting system certification standards the Secretary may prescribe must:

i. not conflict with Tex. Elec. Code Title 8 Voting Systems chapters (121 General Provisions, Chapter 122 State Supervision Over Voting Systems, Chapter 123 Adoption and Acquisition of Voting System, Chapter 124 Voting System Ballot, Chapter 125 Conduct of Voting with Voting System, Chapter 127 Processing Electronic Voting System Results, Chapter 129 Direct Recording Electronic Voting Machines),

ii. not conflict with the federal standards of the 2005 Election Assistance Commission Voluntary Voting System Guidelines for which the Texas systems were federally certified, and

iii. not conflict with other election laws governing voting systems in the Texas Constitution, Election Code, Administrative Code, and Penal Code.

76.     Once a voting system has been certified by the Secretary and before a voting system may be used in Texas elections, the voting system must be adopted by a county commissioners

court for general elections for state and county officers and all elections ordered by the governor.

Tex. Elec. Code 123.001(a)(1) and (2).

### 4.      Texas law defines standards for certification of electronic pollbooks used to accept in-person voters at the polls.

77.      The Texas Legislature has granted the Secretary the authority to "prescribe specific requirements and standards, consistent with this [Election] code for the certification of electronic devices used to accept voters" at the polls.  Pertinent criteria required for the certification of these electronic pollbook devices include:

**Sec. 31.014. CERTIFICATION OF ELECTRONIC DEVICES TO ACCEPT VOTERS.**

(a) The secretary of state shall prescribe specific requirements and standards, consistent with this code, for the certification of an electronic device used to accept voters under Chapter 63 that require the device to:

   (1) produce an electronic copy of the list of voters who were accepted to vote for delivery to the election judge after the polls close;

   (4) provide the full list of voters registered in the county with an indication of the jurisdictional or distinguishing number for each territorial unit in which each voter resides;

   (5) time-stamp when each voter is accepted at a polling place, including the voter's unique identifier;

   (6) if the county participates in the countywide polling place program under Section 43.007 or has more than one early voting polling place, transmit a time stamp when each voter is accepted, including the voter's unique identifier, to all polling place locations;

   (7) time-stamp the receipt of a transmission under Subdivision (6); and

   (8) produce in an electronic format compatible with the statewide voter registration list under Section 18.061 data for retention and transfer that includes:

      (A) the polling location in which the device was used;

      (B) the dated time stamp under Subdivision (5); and

      (C) the dated time stamp under Subdivision (7).

(b) A device described by this section must be certified annually by the secretary of state.

(c) The secretary of state shall adopt rules that require a device described by this section used during the early voting period or under the countywide polling place program under Section 43.007 to update data in real time…

78.    Electronic pollbook vendors seeking certification must meet criteria defined by the Secretary for certification.   Among other things, vendors must [22]:

i.   obtain and submit a technical test report by a NIST-certified testing lab for compliance to the Secretary's Texas Technical Testing Matrix for Electronic Pollbooks,[23]

ii.   provide a Technical Data Package including User Operating, Support, Maintenance Manuals, Training Materials and Instruction Guides, Recommended Use Procedures, Software License Agreement, Software System Design, Warranty Information, Recommended Security Practices[24,25]

iii.   provide list of compatible peripheral devices used with the electronic pollbook system,[26]

iv.   provide a statement regarding any foreign ownership interests in the electronic pollbook system,[27]  and

v.   submit pollbook and peripheral devices intended to be used with the system.[28]

79.    After conducting a Functional Examination[29]  of the electronic pollbook submitted for certification, the Secretary makes the decision to approve the system for Texas certification.

80.    Local jurisdictions are required to "complete Acceptance Testing on the newly acquired equipment to ensure that the system meets the functional standards required by the Texas Electronic Pollbook Functional Standards."[30,31]   Local jurisdictions are further required to ensure the system, as delivered, meets those functional requirements and may use the Texas Electronic Pollbook Test Cases to help them in their functional acceptance testing.[32,33]

---

[22] Exhibit 3 - Texas Certification Procedures for Electronic Pollbooks
[23] Exhibit 4 - Texas Technical Testing Matrix for Electronic Pollbooks
[24] Exhibit 3 - Texas Certification Procedures for Electronic Pollbooks
[25] Exhibit 5 - Form 200 Application for Texas Certification of Electronic Pollbook
[26] *Id.*.
[27] *Id.*
[28] *Id.*
[29] Exhibit 6 - Texas Electronic Pollbook Functional Standards
[30] Exhibit 3 - Texas Certification Procedures for Electronic Pollbooks
[31] Exhibit 7 - Texas Functional Testing Matrix for Electronic Pollbooks
[32] Exhibit 6 - Texas Electronic Pollbook Functional Standards
[33] Exhibit 8 - Texas Electronic Pollbook Test Cases

81.     Because the electronic pollbooks are wirelessly networked and connected online to verify and check in qualified in-person voters at the polls[34,35,36] it is mandatory that the electronic pollbook "**must not directly connect to an electronic voting system**." Texas Technical Testing Matrix for Electronic Pollbooks Section 35 (emphasis added).[37]

**5.      Texas law commands the Secretary to uniformly apply and interpret election laws.**

82.     The Election Code has long required equal treatment, equal application and equal interpretation of election laws to secure equal protection of the vote.

> **TEXAS ELECTION CODE**
> **Sec. 31.003. UNIFORMITY.**
> The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code. In performing this duty, the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code. The secretary shall distribute these materials to the appropriate state and local authorities having duties in the administration of these laws.

**6.      The Texas Legislature recently passed laws prohibiting and punishing unlawful alteration of election laws to reduce election fraud and maintain ballot secrecy.**

83.     In 2021, the Texas Legislature enacted new provisions directed to election officials, including but not limited to Defendants, to ensure uniform and consistent application of the Election Code, to preserve the integrity of the ballot box, reduce fraud, protect the secrecy of the ballot, and address issues of election law waivers by election officials.

> **TEXAS ELECTION CODE**
> **Sec. 1.0015. LEGISLATIVE INTENT.**
> It is the intent of the legislature that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the

---

[34] Tex. Elec. Code 31.014(a)(3,6 and 7)
[35] Exhibit 4 - Texas Technical Testing Matrix for Electronic Pollbooks, Sections 11, 34 and 37.
[36] Exhibit 7 - Texas Functional Testing Matrix for Electronic Pollbooks, Section 9.
[37] Exhibit 4 - Texas Technical Testing Matrix for Electronic Pollbooks, Section 35.

conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted.

### Sec. 33.0015. CHAPTER PURPOSE AND WATCHER DUTY.

The purpose of this chapter is to preserve the integrity of the ballot box in accordance with Section 4, Article VI, Texas Constitution, by providing for the appointment of watchers. It is the intent of the legislature that watchers duly accepted for service under this chapter be allowed to observe and report on irregularities in the conduct of any election, but may not interfere in the orderly conduct of an election…

### Sec. 127.306. WAIVER NOT PERMITTED.

The secretary of state may not waive any requirements of this subchapter [SUBCHAPTER I. RISK-LIMITING AUDIT].

### Sec. 129.003. PAPER AUDIT TRAIL REQUIRED.

(a) In this section, "auditable voting system" means a voting system that:

(1) uses, creates, or displays a paper record that may be read by the voter; and

(2) is not capable of being connected to the Internet or any other computer network or electronic device…

(j) The secretary of state may not waive any requirements of this section.

### Sec. 129.054. NETWORK CONNECTIONS AND WIRELESS TECHNOLOGY.

(a)  A voting system may not be connected to any external communications network, including the Internet…

(b) A voting system may not have the capability of permitting wireless communication…

(c) The secretary of state may not waive any requirements of this section.

### Sec. 276.019. UNLAWFUL ALTERING OF ELECTION PROCEDURES.

A public official or election official may not create, alter, modify, waive, or suspend any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code.

84.     Along with these added mandates, in 2021 the Legislature also enacted new civil and criminal remedies specifically addressing public and election officials who violate election laws.

**TEXAS ELECTION CODE**
**Sec. 31.130. SUIT AGAINST ELECTION OFFICER.**
An action, including an action for a writ of mandamus, alleging that an election officer violated a provision of this code while acting in the officer's official capacity may only be brought against the officer in the officer's official capacity.

**Sec. 33.061. UNLAWFULLY OBSTRUCTING WATCHER.**
(a) A person commits an offense if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe, including by taking any action to obstruct the view of a watcher or distance the watcher from the activity or procedure to be observed in a manner that would make observation not reasonably effective.
(b) An offense under this section is a Class A misdemeanor.

**Sec. 33.063. RELIEF.**
The appointing authority for a watcher who believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties may seek:
(1) injunctive relief under Section 273.081, including issuance of temporary orders;
(2) a writ of mandamus under Section 161.009 or 273.061; and
(3) any other remedy available under law.

## V.   U.S. CONSTITUTIONAL VIOLATIONS

### A.  DEFENDANTS SUSPEND STATE LAWS FOR CONSECUTIVE BALLOT NUMBERING FOR IN-PERSON VOTERS

85.     Under the color of law, the Texas Secretary of State, a member of the executive branch in Texas, has purported to exercise the authority to usurp the statutory directives enacted by the Legislature and assented to by the Governor related to ballot numbering and the detection of ballot fraud.[38]

---

[38] Tex. Const. Art. VI Sec. 4, Tex. Elec. Code Sections 52.062, 51.006, 51.007, 51.008, 62.007, 62.009.

86.     In 2019, the Secretary provided a mass email[39] and a subsequent "Election Advisory"[40] informing County Clerks and Election Administrators that consecutively numbered paper ballots for use with ES&S and Hart InterCivic electronic voting systems at the polls are now *optional.*  These communications are in complete contravention of, and make obsolete, Tex. Elec. Code Sections 52.062, 51.006, 51.007, 51.008, 51.010, 62.007, and 62.009, which either mandate or require such numbering.  Putting aside its infidelity to the requirements of bicameralism and presentment or the republic form guarantees of two constitutions, there is also disparate treatment among the classes of voters created in Texas law, as there is no Advisory suspending consecutive ballot numbering for voters casting their ballots by-mail.

87.     The Secretary claims that these seven laws are simply "procedures related to voting systems"[41] and that Sections 122.001(c) and 52.075 of the Election Code provide authority for their suspension.

### Section 13 – Ballot Numbering and Ballot Signature/Initial Requirements

1. **Ballot Numbering Requirements:** The Texas Election Code establishes the following ballot numbering requirements in order to track and account for the total number of ballots used in an election, how they were used, in what locations, and to account for the ballot stock that was unused Any ballots used in a Texas election must be (1) numbered consecutively, beginning with the number "1", (2) numbered so that a specific range can be linked to a specific polling place, and (3) must be distributed to voters non-sequentially in order to preserve ballot secrecy. (Secs. 51.006-51.008, 52.062, 62.009). Under Section 121.001 of the Texas Election Code, the other titles of the code apply to all voting systems except to the extent that a provision is "inconsistent with this title or cannot feasibly be applied" in an election using a voting system. Under Section 122.001(c) of the Texas Election Code, the Secretary of State has the authority to prescribe procedures related to voting systems. For jurisdictions using ballot marking devices, our office has authorized the following modified procedures for jurisdictions to comply with the ballot numbering requirements pursuant to Section 52.075:

88.     The Secretary's justification for suspending these seven mandatory laws related to consecutively numbered ballots for in-person voters - as simple discretionary "procedures" - is

---

[39] Exhibit 1 – Pressley Declaration.  *See* Exhibit AL - Hood County RQ0405KP Req. for AG Opinion - Adkins April 2019 email on ballot numbering using voting system software, pp. 5-7.
[40] Exhibit 1 – Pressley Declaration. *See* Exhibit AK - Tex. Sec. of State Election Advisory No. 2019-23; pp. 2-3.
[41] *Id.*

drawn of whole cloth.  The State Constitution mandates that the Legislature provide for ballot numbering laws,[42] prohibits suspension of laws by those outside the Legislature,[43] and delineates separation of powers between the Legislative and Executive Branches.[44]

89.     Because the State Defendants are purporting to provide election officials direct authority to suspend these laws, and County Defendants are taking up that invitation and have subsequently also suspended these seven laws in their counties and are not consecutively numbering in-person ballots cast at the polls as required by Tex. Elec. Code Sec. 52.062, in person voters are deprived of due process and equal protection of their vote.

90.     County Defendants are likewise not adhering to Sections 51.006, 51.007, 51.008, 51.010, 62.007, and 62.009, which relate to election supplies and election worker actions that require such numbering for checks and balances to detect and punish fraud.  Specifically, these laws ensure the chain of custody of ballots is documented and accounted for by the elections administrator, ballot delivery clerks, and the election officers at the polls receiving the ballots. These sections of the Election Code provide checks and balances that involve multiple verifications that the exact ballots *intended to be distributed to* the polls *are the same exact ballots actually received at the polls*.  As required by Tex. Elec. Code Sec. 62.007, any discrepancy from what was intended to be delivered versus what was finally received at the polls is to be documented and tracked to detect and provide evidence of potential ballot fraud.

91.     This creates a disparate and discriminatory voting practice between in-person and by-mail voter classes because the Secretary has not modified, ignored, waived or suspended the consecutively numbered ballot law (Section 52.062) for voters casting ballots by-mail.

---

[42] Tex. Const. Art. VI. Sec. 4.
[43] Tex. Const. Art. I, Sec. 28.
[44] Tex. Const. Art. II, Sec. 1.

92.     The Texas Constitution clearly empowers – and requires – the legislative branch to enact laws regarding ballot numbering. The Secretary, whose office is under the executive branch, has no such authority.

93.     While the Secretary claims in Advisory 2019-23 that Tex. Elec. Code Sec. 122.00l(c) conveys "authority to prescribe procedures related to voting systems," that statement is not entirely accurate.  The statue in question provides, quite appropriately, that "[t]he secretary of state may prescribe *additional* standards for voting systems consistent with this title." (Emphasis added).  Title 8 Voting Systems lacks any mention of authorizing computerized ballot numbering through voting system software and electronic pollbooks, or more specifically the authority to exclude the consecutively pre-numbered ballot system utilized in Texas for over 75 years under Tex. Elec. Code Sec. 52.062.

94.     Nothing in the consecutive ballot numbering law, Section 52.062, authorizes its own suspension or exclusion by the executive branch.  Nor could it without violating the republican form of government guarantee. There is no authority for the Secretary to interpret Tex. Elec. Code § 52.062 in a manner that:

      i.    grants the Secretary authority to advise counties to ignore election laws for in-person voters in violation of Texas's separation of powers provisions in Art. 1, Sec. 28 of the Texas Constitution and also violating equal protection and due process guaranteed by the Fourteenth Amendment of the U.S. Constitution;

     ii.    empowers the Secretary to "provide for numbering of tickets," a power that is specifically reserved for the legislative branch, in violation of direct language of Tex. Const. Art. 6, Sec. 4; and

   iii.    impedes election officials' ability to "detect and punish fraud and preserve the purity of the ballot box" unequally for specific voter classes, again in violation of Texas's separation of powers provisions in Art. 1, Sec. 28 of the Texas Constitution and also violating equal protection and due process guaranteed by the Fourteenth Amendment of the U.S. Constitution;

95.     While the Secretary unconvincingly claims that Texas Elec. Code § 52.075 provides authority to modify, ignore, waive, and/ or suspend consecutive ballot numbering laws for in-person voters, there is no authority to provide exceptions to the law in direct contravention of and rendering useless the consecutive ballot numbering mandate in § 52.062 and the other laws related to such that are intended to equally "detect and punish fraud" for all voters casting ballots in person and by mail.

96.     Section 52.075, by its plain terms, is reserved for situations in which voting systems are not able to comply with ballot formatting standards provided by the Election Code and for systems that could not operate without a form modification permitted by the Secretary.  Section 52.075 relates only to the "form and content" of ballots, not the consecutive numbering by which they are tracked by election administrators, clerks, judges, and election watchers, and should not be read to create the obvious Texas and U.S. Constitutional conflict at issue here.

97.     Nothing in the Election Code grants the Secretary authority to provide for ballot numbering or to ignore specific provisions of the Election Code mandated to the Legislature by the Texas Constitution.

98.     Modifying, ignoring, waiving, and/ or suspending constitutionally mandated duly enacted laws that detect and punish fraud and prescribing discretionary administrative procedures are not equal. Defendants have overstepped their authority and have violated separation of powers granted exclusively to the Texas Legislature to modify or suspend laws.  Tex. Cons. Art. 1 Sec. 28.

99.     The Fifth Circuit has recognized the limited authority Section 52.075 grants to the Secretary, noting that "the Secretary has discretion to alter the…content of electronic ballots, but that discretion is cabined to encoding ballots (prepared by local officials) for compatibility with

an electronic voting system." *Texas Alliance for Retired Americans v. Scott*, 28 F.4th 669, 673 (5th Cir. 2022).

100.    ES&S and Hart InterCivic hybrid voting systems that use Ballot Marker devices are technically compatible and operate with pre-printed consecutively numbered ballots as acknowledged in Election Advisory 2019-23 Section 13.1.a and as evidenced by their use in Jefferson, Ellis and Hood counties.  Thus, there is no necessity, and no authority, for the Secretary to invoke an exception excluding consecutive numbering of ballots, especially since it already "conform[s] to the formatting requirements of the system" for casting in-person electronic hybrid voting system ballots.  As discussed *supra*, consecutive ballot numbering provides uniform, consistent, and equal protection for the detection and punishment of ballot fraud for in-person voters casting ballots at the polls as well as those voters casting ballots by-mail.

101.    A member of the Texas executive branch cannot override the Texas Constitution, particularly where it directs authority (in the form of a command) only to the Legislature, nor can that member simply override the U.S. Constitution, which guarantees equal protection against ballot fraud for all voters, regardless of how they cast their ballots, whether in-person or by-mail.

102.    In 2022, the Texas Attorney General issued Opinion No. KP-0422 related to the county authority responsible for choosing the numbering method for ballots.  The Attorney General opined that, "[b]ecause the [Texas] statutes do not vest ballot-preparation or supervisory authority in any other entity, the elections administrator has sole authority to select the numbering method."  That opinion neither addresses the constitutional question presented here nor provides any controlling influence over the analysis.  *See, e.g.*, In re Smith, 333 S.W.3d 582, 588 (Tex. 2011) (attorney general opinions are not precedent or controlling). However, it does place the

ballot-numbering responsibility squarely on the shoulders of elections administrators, including County Defendants.

103.    In that opinion, the Attorney General additionally claims that "the Legislature designated the numbering of a ballot as part of its form, and provided a general rule as well as an alternate avenue, through the Secretary of State, for an election using a voting system."   Notably, the opinion does not address the constitutional, civil, and criminal consequences of ignoring Texas laws that require consecutive ballot numbering to protect the secrecy and security of ballots cast in-person. Tex. Elec. Code Sec. 51.004, 51.006, 51.007, 51.008, 51.010, 62.007 and 62.009.

104.    Regardless of the reach of the Attorney General's opinion or its correctness, the Secretary's interpretation of Sec. 52.075 actually results in disparate treatment of in-person and by-mail voter classes that is discriminatory and a violation of the Fourteenth Amendment. Moreover, that erroneous interpretation gives the executive branch a duty reserved for the Legislature and is also a violation of Texas Constitution Art. 1 Sec. 28 and Article VI Sec. 2 and 4.  The Secretary's unconstitutional, illegal and unnecessary invoking of the exception in Section 52.075 to bring in a computerized randomly and uniquely assigned ballot numbering system and tracking through voting system software raises concerning questions.

**B.  THE SECRETARY UNLAWFULLY PURPORTS TO AUTHORIZE RANDOMLY AND UNIQUELY ASSIGNED BALLOT NUMBERING FOR IN-PERSON VOTERS - CAUSING BALLOT SECRECY BREACHES**

105.    Under the color of law, the Secretary has further usurped the Texas Legislature's jurisdiction related to ballot numbering by illegally authorizing all *in-person* ballots cast at the polls to be assigned and printed with a computer-generated randomly and uniquely assigned

number that enables "Ballot Tracking Through Voting System Software."[45] See excerpt below of the Secretary's Advisory 2019-23, Section 13(1)b:



b. **Ballot Tracking Through the Voting System Software**. The procedures below have been approved by the Secretary of State's office as a means of fulfilling ballot numbering requirements through the system software and/or the use of additional peripheral devices. Any vendor seeking to utilize a software solution for ballot numbering must have their solution approved by the Secretary of State.

   i. **ES&S ExpressVote – Tracking Ballot Numbers Through the ExpressVote Activation Card Printer/ExpressLink Software**

     1. Each ExpressVote Activation card printer that is assigned to a specific polling place will be given a two to three digit alpha code. This code will be printed on each Ballot Card for the voter.

     2. In addition to the alpha code, each polling place will print a randomly generated serial number between 1 to 99,999 on the card along with the identifying information related to the election.

     3. The system will generate a report showing which ballots (based on their serial number) were used at each location. This report must be retained with your precinct election records.

     4. For tracking purposes, you will continue to have the presiding judge fill out the Ballot Register (PDF), and the original and duplicate forms will be returned in the applicable envelopes. The ballots shall be tracked, distributed, and retained just as you would with a traditional pre-printed full ballot in accordance with Sections 51.006, 51.007, 51.008 with the exception of notating the serial number of the ballot ranges.

106.    In reliance on the State Defendants' guidance to implement randomly and uniquely assigned ballot numbering and tracking through the voting system software, County Defendants have subsequently implemented this system.

107.    As a result, every single *in-person* ballot cast in Williamson, Bell and Llano counties at the polls physically contains a randomly generated unique ballot number assigned to their ballot by voting system software.

108.    **The Secretary's computerized random and unique identifier ballot numbering system completely ignores the process of checks and balances and ballot chain of custody established by the Texas Legislature** and found in Sections 51.006, 51.007, 51.008, 51.010, 62.007, and 62.009 of the Election Code.

109.    Election administrators and election officers at the polls have no way of knowing what ballot numbers are assigned to ballots under their authority either at the elections office or subsequently at the polls. These computer-generated random unique identifier numbers on ballots are not provided to the election officers, and the election administrators are not provided the numbers until *after the election*. This situation enables ballots to be easily removed and/or replaced

---

[45] Exhibit 1 – Pressley Declaration. *See* Exhibit AK - Tex. Sec. of State Election Advisory No. 2019-23; pp. 2-3.

virtually undetected because there is no documented history of the actual finite range of ballot numbers distributed to polls to compare to, as the law requires. Tex. Elec. Code Sections 52.062, 51.006, 51.007, 51.008, 51.010, and 62.007.

110.    The security system of checks and balances for ballots *distributed by* election administrators and actually *received by* election officers at the polls, as provided by the Election Code Sections discussed *supra*, which is intended to detect ballot fraud, has been completely and unilaterally obliterated by the Secretary with no public input, debate, or scrutiny and in violation of the separation of powers doctrine.

111.    Since 2019, the Secretary has created law related to ballot numbering - the explicit authority reserved for the Legislature.  Tex. Constitution Art. VI, Sec. 4.  The Secretary has in a dictatorial fashion side-stepped the legislative political process of elected representatives publicly submitting a bill, holding committee hearings with expert and stakeholder testimony, reviewing, debating, assessing potential unintended consequences, proposing and voting on amendments, and the public casting of floor votes by members of the Texas Senate and House, and being finally reviewed by the Governor.  All of these legislative processes have been usurped by the Secretary, resulting in obstruction of laws that detect and provide evidence of potential ballot fraud and causing harm to Plaintiffs and other similarly situated in-person voters in Texas.

112.    Randomly generated ballot numbers **are not** assigned by voting system software for ballots cast by-mail.  By-mail ballots are consecutively numbered pursuant to Tex. Elec. Code Sec. 52.062.

113.    In Williamson County, Plaintiffs have long suspected that the Secretary's illegal computerized ballot numbering system collects and stores how *in-person* voters vote, given that:

     i.   the same computer (the wireless electronic pollbook) that checks in qualified voters from the county's voter registration list is also licensed and loaded with voting

system software, ES&S ExpressLink that controls the computerized numbering, and

ii.   that same wireless computer utilizing voting system software (ES&S ExpressLink) electronically selects and assigns each voter a computerized ballot number and sends a wireless command to a print server that is physically connected to the voting system hardware, the ES&S ExpressVote Printer, to print each voter's ballot ballot with the computerized number on it.

114.   Plaintiffs Pressley, Soll, and Bagwell obtained Williamson County election records through Public Information Act requests for the May 2022, May 2023, and November 2023 elections.[46]

115.   Dr. Pressley reviewed these records and uncovered an algorithmic pattern that reveals exactly how *in-person* voters voted.  They all were assigned random computerized ballot numbers in Williamson County.  **This algorithmic pattern and data are not presented in this Complaint, but Plaintiffs respectfully request the opportunity to present this evidence in camera to the Court.**

116.   For at least the May 2022, May 2023, and November 2023 elections, Williamson County ballots cast *in-person* at the polls for early voting and on election day can be extracted by voter name.  The randomly and uniquely assigned ballot number system reveals not just Plaintiffs' votes, but also the votes of most, if not all, of those voters who vote in-person, including but not limited to, county commissioners, city council members, district attorney, county attorney, sheriff, judges, and county judge.[47]

117.   This violation of secrecy results solely because Plaintiffs and all Williamson County in-person voters have no choice but to use Defendants' illegal and unconstitutional ballot numbering system.

---

[46] Exhibit 1 – Pressley Declaration, pp. 6-7 and 11.
[47] Exhibit 1 – Pressley Declaration, pp.6 and 11.

118.     This harm suffered by Plaintiffs is the direct result of the Defendants modifying, altering, ignoring, waiving, and/or suspending Texas consecutive ballot numbering laws for in-person voters – all outside the review, scrutiny, and transparency of the legislative process.

119.     The computer-generated, non-consecutive ballot tracker numbering system breaches the secrecy of the ballot, as the way it is stored within the electronic voting system enables anyone in possession of the pertinent election records (which are subject to the Public Information Act) to match the ballot tracking number to the voter's name and thereby identify a specific voter's ballot. The Williamson County plaintiffs, who are lawfully in possession of Williamson County election records for the November 2023 election via open records requests, have been able to identify and verify their own ballots using nothing but the electronically generated election records possessed by Williamson County and, presumably, its vendors.

120.     **In other words, the uncertified voting system and the computer-generated, random unique identifier ballot tracking numbers stored on that system give anyone in possession of the relevant election records the ability to identify how in-person voters in Williamson County have voted in multiple elections.[48]**

121.     A bad actor could use, sell, or otherwise capitalize on knowing how voters in Williamson County vote.   Those who have access, such as county election officials, voting system vendors, electronic pollbook vendors and their employees, could conceivably:

  i.     extract voter data and patterns by precincts, and
  ii.    program ballot styles for specific voters that could exclude them from voting on specific races or measures they are entitled to vote on, or illegally add them to races or measures they are not entitled to vote on, resulting in secretly affecting the outcome of elections.

---

[48] Exhibit 1 – Pressley Declaration, pp.6 and 11 and Exhibit AP.

122.    For years, it has been reported in Williamson County that some voters have received incorrect ballots that include races those voters are not entitled to vote on,[49] and some have received ballots with eligible races and measures excluded from their ballots.[50] There is some statistical evidence suggesting that the most recent occurrence of voters being excluded from voting on a Williamson County ESD #9 new tax measure might not have been accidental.[51]

123.    While *in-person* voters using electronic hybrid voting systems in Texas are **forced** to have their ballots labeled with the Secretary's illegal computerized ballot numbering system, *by-mail* voters are not subject to illegal modification, alteration, waiver, and/or suspension of *by-mail* ballot numbering laws in Texas.

### C. SECRETARY SUSPENDS STATE CERTIFICATION LAWS FOR VOTING SYSTEMS AND POLLBOOKS USED BY IN-PERSON VOTERS

**1. ES&S voting system equipment used in Williamson and Bell counties that randomly numbers ballots with a unique identifier was illegally certified by the Secretary and was known to <u>not be</u> certified by the EAC.**

124.    ES&S ExpressLink, the voting system software certified by the Secretary, is assigning, printing, storing, and revealing how voters vote in Williamson County and potentially all across Texas.   The Secretary is **suspending certification laws for voting systems and electronic pollbooks** and thus, again, bypassing statutory safeguards that would have detected and prevented these breaches of ballot security in Texas.

125.    The Secretary's voting system certification approval orders for the voting systems used by Williamson County (ES&S EVS 6.1.1.0 and 6.3.0.0 systems) document the ExpressLink

---

[49] Exhibit 1 – Pressley Declaration.  *See* Exhibit AM - Wm. County Voters Receiving Wrong Pct. Ballots Nov. 20 and May 22.
[50] *Id.*
[51] Exhibit 1 Pressley Declaration.  *See* Exhibit AO - Statistical Analysis of ESD9 Election Nov. 23.

software and the ExpressVote Activation ballot printer as a component of the certified voting systems.  See highlighted sections below in the excerpted tables from those certification orders:



126.    As shown above, the Secretary's respective certification orders for the ES&S EVS 6.1.1.0[52] and 6.3.0.0[53] systems claim that the voting system components, including the **ExpressLink software** and the **ExpressVote Card Printer**, "have been evaluated at an accredited independent voting system laboratory for conformance to the 2005 Voluntary Voting System Guidelines (VVSG)…and was certified by the Election Assistance Commission (EAC)…"[54,55]

---

[52] Exhibit 9 - Secretary's Cert Order ES&S EVS 6.1.0.0, p. 2.
[53] Exhibit 10 – Secretary's of State Certification Order, ES&S EVS 6.3.0.0, pp. 2-3.
[54] Exhibit 9 - Secretary's Cert Order ES&S EVS 6.1.0.0, p. 2.
[55] Exhibit 10 – Secretary's of State Certification Order, ES&S EVS 6.3.0.0, p. 2.

> EVS 6.1.1.0 has been evaluated at an accredited independent voting system laboratory for conformance to the 2005 Voluntary Voting System Guidelines (VVSG). EVS 6.1.1.0 was certified by the Election Assistance Commission (EAC) on July 27, 2020.

> EVS 6.3.0.0 has been evaluated at an accredited independent voting system laboratory for conformance to the 2005 Voluntary Voting System Guidelines (VVSG). EVS 6.3.0.0 was certified by the U.S. Election Assistance Commission (EAC) on November 17, 2022.

The Texas Secretary of State's certification orders for 6.1.1.0 and 6.3.0.0 clearly document that the ES&S ExpressLink software and the ES&S ExpressVote Activation card ballot printer that format, assign, and print the random, unique identifying numbers on *in-person* voters' ballots[56] are certified in Texas.

127.     However, according to the report of Brian Mechler, a Texas state examiner for ES&S EVS 6.1.1.0 and 6.3.0.0 systems, the ExpressLink and ExpressVote Activation Card ballot printer were *not examined*.[57,58]  Additionally, the EVS 6.1.1.0 version was *not certified by the EAC*. See excerpts from Mechler's reports below:

> **Voting System Examination of Election Systems & Software EVS 6.1.1.0**
>
> Brian Mechler, Technical Examiner
> Exam Dates: August 21, 2020
> Report Date: September 20, 2020

> **Voting System Examination of Election Systems & Software EVS 6.3.0.0**
>
> Brian Mechler, Technical Examiner
> Exam Dates: January 24-25 & March 31, 2023
> Report Date: April 17, 2023

> **5   ExpressLink and ExpressVote Activation Card Printer**
>
> These components are not within the scope of this certification exam nor are they a part of the EAC certification.  Nevertheless, they are listed as part of the Form 100 [1], and this section will briefly describe their purpose.

> **5.1  Observations**
>
> Use of the ExpressLink and ExpressVote ActivationCard printer was not observed during this exam. Based on the functionality described in the ES&S technical data package (TDP), large polling places which serve voters from more than one precinct may benefit from these devices since they will reduce the workload on poll workers and increase voter throughput.

128.     The Election Assistance Commission Certification of Conformance for the ES&S EVS 6.1.1.0[59] and 6.3.0.0[60] shows that the ExpressLink Software and the ExpressVote Card Printer were not listed as certified components.   Additionally, the test plans for VVSG 1.0 Certification

---

[56] As stated in Tex. Sec. of State Advisory 2019-23 Section 13(1)(b)i, "Tracking Ballot Numbers Through the ExpressVote Activation Card Printer/ExpressLink Software." Exhibit 1 – Pressley Declaration.  *See* Exhibit AK – Tex. Sec. of State Election Advisory No. 2019-23; pp. 2-3.

[57] Exhibit 11 - Texas voting system examiner Mechler ES&S EVS 6.1.1.0 Report, p. 5, Section 5 and 5.1

[58] Exhibit 12 - Texas voting system examiner Mechler ES&S EVS 6.3.0.0 Report, p.6, Section 5.1.

[59] Exhibit 13 - EAC ES&S EVS 6.1.1.0 Certification of Conformance.  See pp. 7 and 16 that show the ES&S ExpressLink software and ExpressVote ballot printer are not included in the EAC certification.

[60] Exhibit 14 - EAC ES&S EVS 6.3.0.0 Certification of Conformance.  See pp. 7 and 16 that show the ES&S ExpressLink software and ExpressVote ballot printer are not included in the EAC testing. See p. 7 that shows the ES&S ExpressLink software and ExpressVote ballot printer are not included in the EAC certification.

Testing Election Systems & Software (ES&S) Voting System (EVS) 6.3.0.0 clearly document that

the ExpressLink Software and the ExpressVote Card Printer "were not part of the EAC certified

configuration" that was tested."[61]



129.    Accordingly, the Secretary's claims related to certification of ES&S EVS 6.1.1.0

and 6.3.0.0 components are not entirely accurate:

i.    ES&S ExpressLink software and ExpressVote ballot printer were not certified by
        the Election Assistance Commission for use with the ES&S EVS 6.1.1.0 or 6.3.0.0
        - in violation of Tex. Elec. Code Sec. 122.001(3),

ii.    ES&S ExpressLink software and ExpressVote ballot printer were not evaluated for
        conformance to the 2005 VVSG 1.0 - in violation of 1 Tex. Admin. Code 81.61,

iii.    ES&S ExpressLink software and ExpressVote ballot printer were not evaluated by
        Texas voting system examiners – in violation of Tex. Elec. Code Sec. 122.036(a),
        and

iv.    ES&S ExpressLink software and ExpressVote ballot printer were not evaluated for
        ballot secrecy since they were not evaluated by the EAC, not evaluated by a testing

---

[61] Exhibit 15 - EVS 6.3.0.0 EAC VVSG Testing Plan.  The ES&S Activation Card Printer or ExpressLink software
were tested, pp. 31 and 45.  The EVS 6.1.1.0 EAC VVSG Test Plan also excludes the ExpressLink software.  *See*
Exhibit 16 - EVS 6.1.1.0 EAC VVSG Testing Plan.

lab, and not evaluated by state examiners – in violation of Tex. Elec. Code Sec. 122.001(a)(1) and U.S. 52 U.S. Code Sec. 21081(a)(1)(A)(i and ii), 21081(a)(1)(C).

130.    **The Secretary's modifying, ignoring, altering, waiving, and/or suspending of federal voting system laws and Texas state certification laws, and falsely claiming the ES&S ExpressLink software and ExpressVote ballot printer meet state and federal legal and certification standards caused the breach of voter ballot secrecy in Williamson County.** These systems were not tested, examined, verified and certified for ballot secrecy as required by state and federal law.  As a result, these uncertified illegal system components assign, print and store computer-generated random unique identifier ballot numbers for all in-person voters in Williamson County, as permitted by the Secretary's "Ballot Tracking Through Voting System Software" Advisory 2019-23.

**2.    Llano County uses computerized ballot numbering through voting system software for in-person ballots.**

131.    Llano County utilizes computerized ballot numbering through the Hart InterCivic voting system software for in-person voters, as authorized by the Secretary.  The Hart InterCivic computer program chooses the computerized unique identifier assigned and documented on each in-person cast ballot.

**3.    Electronic pollbooks illegally certified by the Secretary are the conduit for uncertified voting system equipment to be connected to external networks and assign illegal computerized ballot numbers to in-person ballots.**

132.    Other computerized election equipment implicated in the storing and revealing of *in-person* voter names and their ballot data includes the Tenex electronic pollbook used in Williamson County.

133.    The Secretary's electronic pollbook certification orders for the Tenex Precinct Central 4.2.2 and 4.5.2.4 systems used in Williamson County claim:

"Our office has reviewed your application materials, the testing lab report from Pro V&V showing completion of the Texas Technical Matrix for Electronic Pollbooks, and the completed Texas Functional Matrix for Electronic Pollbooks completed by the examiners from our office. Having reviewed those materials, we have concluded that your system meets the requirements for certification of an electronic pollbook system."[62]

134.    It is unclear how the Secretary's claims for the Tenex electronic poll book certification are consistent with Texas election laws when the evidence shows that:

i.    The uncertified ES&S ExpressLink voting system software used to generate, assign, and print the computerized ballot number for *in-person* voters is directly licensed for use with, and loaded onto, the wireless Tenex pollbook.[63,64]   This is a violation of the Texas Technical Matrix for Electronic Pollbooks required by the state to certify these electronic devices.  Specifically, Section 35 requires that the "pollbook must not directly connect to an electronic voting system."[65]

ii.    The uncertified ES&S ExpressLink voting system software is directly loaded onto the electronic pollbook, thus violating Tex. Elec. Code Sec. 129.054(a) which specifies voting systems are prohibited from being connected to "any external communications network, including the Internet."

iii.    The uncertified ES&S ExpressVote ballot printer is connected to the Tenex pollbook via a Tenex print server that is wirelessly connected to the networked pollbook, also in violation of Tex. Elec. Code Sec. 129.054(a).

135.    **The State Defendants' actions of modifying, ignoring, altering, waiving, and/or suspending Texas state certification laws for electronic pollbooks and wireless connectivity of voting systems are the conduits for breaching voter ballot secrecy in Williamson County.** As a result, these illegalities provide the means to assign, print, and store computer-generated unique identifier ballot numbers for all in-person voters in Williamson County, as authorized by the Secretary's "Ballot Tracking Through Voting System Software" advisory 2019-23.

---

[62] Exhibit 17 - Secretary's Tenex Precinct Central 2022 and 2020 Certification Orders
[63] Exhibit 1 – Pressley Declaration.  *See* Exhibit AI - Wm. 2020 Tenex Print Server and ExpressLink License and Exhibit J - LP PIA (Tenex License for ExpressLink).
[64] Exhibit 1 – Pressley Declaration. *See* Exhibit AK - Tex. Sec. of State Election Advisory No. 2019-23; pp. 2-3.
[65] Exhibit 4 - Texas Technical Testing Matrix for Electronic Pollbooks, Sec. 35, last visited 2/8/24 at
   https://www.sos.state.tx.us/elections/forms/electronic-pollbook-technical-testing-matrix-101519.pdf

### D.     REDRESS AT STATE AND COUNTY LEVELS HAVE FAILED

136.    State efforts with regard to the new 2021 laws have had no effect in stopping or reducing election waivers authorized and/or enacted by Defendants.

137.    Dr. Pressley, Mr. Bagwell, Ms. Soll, Mr. Korkmas, and Ms. Highsmith have all worked to raise concerns regarding violations of law cited *supra* to their respective Commissioners Courts, County Judges, and Election Administrators.  County elected officials have been requested by Plaintiffs and many other voters to cease computerized ballot numbering and to return to pre-printed consecutively numbered ballots – all to no avail.

138.    Section D of Exhibit 1, Dr. Pressley's Declaration, includes a detailed list of efforts to return to consecutively numbered ballots, spanning from 2016 through the present.[66]  These efforts include:

i.      2016 – 2024: Dr. Pressley has given over 500 invited presentations and interviews related to the lack of consecutively numbered ballots in Texas requesting a return to intended law.

ii.     2016 – 2024:  Dr. Pressley has trained over 800 election watchers for Primary, Constitutional, General, Special, Runoff and Municipal elections all over Texas. Have debriefed hundreds of individuals that have watched at the polls and at the central counting stations in counties such as Harris, Tarrant, Bexar, Travis, Collin, Denton, Williamson, and many more.   Watchers report these counties and many more utilize the new hybrid voting systems and *do not consecutively number ballots in their elections*.

iii.    2019 – 2023:  She has repeatedly met with and requested that the Williamson County elections administrator provide consecutively numbered ballots to Williamson County in-person voters.

iv.     2017 – 2023:  Dr. Pressley has repeatedly met with state representatives and senators to educate them on the issues of consecutively numbered ballots and requested they help address waivers by the Texas Secretary of State.

v.      2021:  May of 2021, she worked with Hood County in Texas to obtain a Texas Attorney General opinion on the legality of randomly numbered ballots using voting system software.  Hood County reverts to using consecutively numbered

---

[66] Exhibit 1 – Pressley Declaration, p. 4-7.

ballots.  July 2021, she worked with three Texas election law attorneys to provide a legal opinion for the pending Hood County AG opinion request.[67]

vi.    2022:  In April, she sent a demand letter to Bell and Williamson County elections administrators to follow consecutively numbered ballot laws for her May 2022 candidacy to school board.[68]  In June, she successfully lobbied for the Republican Party of Texas Platform to include a plank for consecutively numbered ballots.[69] Texas Attorney General provides Opinion KP-0422 on Dec. 15, 2022 and does not answer if random numbering by voting system software meets state law.

vii.   2023:  In April, she met with the new Texas Secretary of State, Jane Nelson, and provided a detailed data package documenting over 25 election law waivers the Secretary of State has issued for state laws that detect and punish election fraud, including but not limited to consecutive ballot numbering laws.[70]  In September, she met with Williamson County Precinct 3 Commissioner Valerie Covey to educate her on the legal issues and the lack of auditability for random ballot numbers and requested she address the issues.  July through October, she testified and met with the Williamson County Elections Commission to educate them on the legal issues and the lack of auditability for random ballot numbers and requested they address the issues.  Presented multiple times to County Elections Commission and county Commissioners Court on the illegalities of random unique identifier ballot numbering, the dangers of breaching ballot security of voters, and the lack of auditability and potential for fraud related to use of random numbered ballots. Repeatedly requested to meet with Williamson County Judge, Commissioner Pct 1, 2, and 4.  They would not meet.  October through December, worked with the Williamson County Republican Party Executive Committee to pass resolutions for consecutively numbered ballots in our county.   The bodies passed multiple resolutions that were ignored by the elections administrators and county officials.

viii.  2024:  Dr. Pressley has presented multiple times to Commissioners Court the illegalities of random numbering, the dangers of breaching ballot security of voters, and the lack of auditability and potential for fraud related to use of random numbered ballots.[71,72] She has clearly communicated the issues of lack of auditability, chain of custody, and potential for breach of ballot confidentiality with random numbering through voting system software.  She has collaborated with

---

[67] Exhibit 1 – Pressley Declaration.  *See* Exhibit B - Borgelt Letter Ballot Numbering.
[68] Exhibit 1 – Pressley Declaration.  *See* Exhibit C - Demand to Wm Co (2022).
[69] Exhibit 1 – Pressley Declaration.  *See* Exhibit D - Republican Party of Texas 2022 Platform; p. 33, Section 242.k.
[70] Exhibit 1 – Pressley Declaration.  *See* Exhibit F - Pressley Letter to Sec. Nelson April 2023 and Exhibit G – Waiver Packet to Sec. Nelson April 2023
[71] Exhibit 1 – Pressley Declaration.  *See* Testimony of Dr. Pressley at Williamson County Commissioners Court on January 23, 2024 starting at 19:40, https://williamsoncountytx.new.swagit.com/videos/295523
[72] Exhibit 1 – Pressley Declaration.  *See* Testimony of Dr. Pressley at Williamson County Commissioners Court on February 27, 2024 starting at 17:31,  https://williamsoncountytx.new.swagit.com/videos/298455?fp=swagit

other Plaintiffs and performed detailed audits of county and state election and voting system certification records for Williamson, Bell, and Llano counties.

## VI.     APPLICABLE FEDERAL LAW

### A.  U.S. CONSTITUTION PROTECTS VOTERS FROM DISPARATE LEGAL TREATMENT

139.    The United States Constitution protects the right of all qualified citizens to vote in state and federal elections and to have their votes counted under equal terms. *Reynolds v. Sims*, 377 U.S. 533, 554. (1964). The Constitution also protects a citizen's vote against "dilution or debasement." *Hadley v. Junior College District*, 397 U.S. 50, 54 (1970). *See also Baker v. Carr*, 369 U.S. 186, 208 (1962).

140.    Beyond the bare right to vote, the Supreme Court has made clear that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Further, and particularly relevant to this case, "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic process." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992).

141.    In the election context, among others, the equal protection guarantee of the Fourteenth Amendment applies to states and political subdivisions. *Avery v. Midland County*, 390 U.S. 474, 479-80 (1968). Indeed, "[all] procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgment of the right to vote." *Moore v. Reynolds*, 394 U.S. 814 (1969).

142.    Additionally, the due process clause of the Fourteenth Amendment "protects against the disenfranchisement of a state electorate in violation of state election law." *Duncan v. Poythress*, 657 F.2d 691, 693 (5th Cir. 1981).  The due process clause "prohibits action by state

officials which seriously undermine the fundamental fairness of the electoral process." *Id*. at 700. "Due process is implicated where the entire election process…fails on its face to afford fundamental fairness." *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978).

### B.   U.S.  ELECTION LAW PROTECTS BALLOT SECRECY

143.   52 U.S. Code Sec. 21081 defines standards for voting systems used in elections for federal office.  Pertinent sections that require equal protection of the secrecy of voters' ballots and votes and the non-discriminatory standards for how votes are constituted and counted are shown below:

**52 U.S. CODE SEC. 21081 – VOTING SYSTEM STANDARDS**
**(a)  REQUIREMENTS**
Each voting system used in an election for Federal office shall meet the following requirements:
(1)  IN GENERAL
(A) Except as provided in subparagraph (B), the voting system (including any lever voting system, optical scanning voting system, or direct recording electronic system) shall –
(i) permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted…
(C) The voting system shall ensure that any notification required under this paragraph preserves the privacy of the voter and the confidentiality of the ballot…
(6) UNIFORM DEFINITION OF WHAT CONSTITUTES A VOTE
Each State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State.
(b)  VOTING SYSTEM DEFINED
In this section, the term "voting system" means –
(1) the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used –
(A) to define ballots;
(B) to cast and count votes…

## VII.    CAUSES OF ACTION

144.    Under color of law, Defendants, who are state and county election officials, may not utilize election practices that violate state and federal laws that guarantee ballot secrecy and one-person one-vote for in-person voters.  Under federal and state laws, the secrecy of Texas ballots cast by in-person voters and their protections from fraudulent actions should be equal to ballots cast by voters through the mail. State and county election officials who systematically discriminate against the class of in-person voters by violating state and federal laws that guarantee voters' rights to ballot secrecy and fraud protection infringe the constitutional rights to equal protection and due process held by in-person voters.

145.    The ballots of Texans who vote by mail are protected to the full extent of the law. Plaintiffs' ballots cast in-person at the polls are not. Plaintiffs request redress on behalf of themselves and all in-person voters similarly situated across the State of Texas.

### A.  COUNT I

**Violations of Equal Protection and Due Process -
Failure to Consecutively Number In-Person Ballots and Detect Ballot Box Fraud**

146.    Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

147.    Based on the foregoing facts and authorities, Plaintiffs assert violations of the Equal Protection and Due Process Clauses of the United States Constitution as the result of Defendants' failure and refusal to consecutively number the ballots of in-person voters.

148.    **Consecutive numbering is intended to detect and prevent ballot box fraud associated with, but not limited to, illegal introduction of duplicate ballots, removal of legal ballots, and the introduction of counterfeited ballots.**  Unlike Texans who are permitted and

choose to vote by mail, Plaintiffs have been stripped of the protections of Texas ballot-numbering laws specifically intended by the Legislature to ensure the integrity and security of Texas elections.

149.     **Defendants are modifying, ignoring, waiving, and/ or suspending the following Texas Constitutional and statutory requirements for consecutive ballot numbering for in-person voters: Tex. Const. Art. VI, Sec. 4, Tex. Elec. Code Sections 52.062, 51.004, 51.006, 51.007, 51.008, 51.010, 62.007, and 62.009.**

150.     The Secretary's unconstitutional Advisory 2019-23, Section 13.1.b, which purports to suspend election laws related to consecutive ballot numbering, not only creates confusion for election officials, but also places them at risk of committing civil and criminal violations with respect to the constitutional rights of voters.

151.     Section 52.075 of the Election Code does not grant the Secretary authority to **exclude** consecutive ballot numbering for voters using ES&S and Hart InterCivic ballot marking device voting systems.  Election officials in Hood, Jefferson[73], and Ellis counties have all utilized pre-printed consecutively numbered ballots successfully with their ballot marking device voting systems, which are similar to those systems used in Williamson, Bell, and Llano counties. In other words, there is no *need* to permit election officials to use computer-generated random unique identifiers/ballot trackers based on the capabilities and requirements of the electronic voting systems. The random numbering can be disabled, and counties can use pre-printed consecutively numbered ballots in accordance with Texas law. The Secretary's waiver of consecutive numbering is not borne out of necessity.

---

[73] Exhibit 1 – Pressley Declaration.  *See* Exhibit AE - BS_Email Jefferson EV Ballot Image May 23 and Exhibit AF - Jefferson County ES&S Ballot Image (no computerized random numbering).   Jefferson County ES&S Ballot Image does not utilize computerized numbering and is pre-numbered consecutively on the back of the ballot for use with the ES&S ballot marking devices in Jefferson County.

152.   By way of example, the following Jefferson County electronic ballot image for the May 6, 2023 Joint General Election shows a) consecutive numbering of "004361" on the back of the ballot, and b) no computerized randomly generated unique ballot identifier printed on the front of the ballot using the voting system software.[74]



153.   In-person voters in Williamson, Bell and Llano counties are not afforded protection equal to that of *in-person* voters casting ballots in Hood, Jefferson, and Ellis counties with regard to the prevention and detection of ballot fraud, because of the suspension of a multitude of consecutive ballot numbering laws by the counties in which Plaintiffs reside and vote.  Plaintiffs, who are *in-person* voters in Williamson, Bell and Llano counties, must cast ballots with computer-generated random unique identifier numbers assigned to, and permanently printed on, their ballots.

154.   Having one county follow the Election Code while permitting another the choice to exclude up to eight election laws enacted to detect and punish fraud leads to an incoherent and unfair election process that does not offer due process and equal protection against the detection and punishment of fraud for voters who must cast their ballots in-person without a consecutive ballot number.

---

[74] *Id.*

155.    Defendants cannot override the U.S. Constitution and federal voting system standards that guarantee due process, equal protection from fraud, ballot secrecy, and one person, one vote for all voters whether they cast their ballots in person or by mail.

156.    If Plaintiffs wish to participate in the election process in their respective counties, they must waive rights guaranteed to them by the Texas Constitution and the Texas Election Code, namely the right to a ballot that is (1) consecutively numbered, (2) secret, and (3) subject to procedures and processes designed to protect election integrity and the concept of "one person-one vote."

157.    The harms Plaintiffs have suffered are real, not theoretical, and will continue to occur at each future called election unless and until this Court orders Defendants to comply with the law.

158.    Accordingly, Plaintiffs seek a declaration that Defendants' actions of modifying, ignoring, waiving and/or suspending Texas election laws relating to the consecutive numbering of ballots for in-person voters violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

159.    Plaintiffs further seek preliminary and permanent injunctions against Defendants' actions of modifying, ignoring, waiving and/or suspending Texas election laws relating to the consecutive numbering of ballots for in-person voters. Pursuant to the Local Rules, Plaintiffs' application for injunctive relief will be filed separately from this Complaint.

## B.  COUNT II

**Violations of Equal Protection and Due Process -**
**Illegal Ballot Tracking with Computerized Random Unique Identifier Numbering for In-**
**Person Voters Breaches Ballot Secrecy**

160.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint, including the counts above, as though fully set forth herein.

161.    Based on the foregoing facts and authorities, Plaintiffs assert violations of the Equal Protection and Due Process Clauses of the United States Constitution as the result of Defendants' approval and use of computerized unique identifier numbering of their ballots.

162.    Unlike Texans who are permitted to vote by-mail, if Plaintiffs wish to participate in the election process in their respective counties, they, as in-person voters, must accept a ballot that has a computerized unique identifier ballot tracker number assigned to their ballot and suffer breaches in the secrecy of their votes as described herein.

163.    The harms Plaintiffs have suffered are real, not theoretical, and will continue to occur at each future called election unless and until this Court orders Defendants to comply with the law.

164.    Accordingly, Plaintiffs seek a declaration that Defendants' actions in permitting and using computerized unique identifier ballot tracking numbering as described herein violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

165.    Plaintiffs further seek preliminary and permanent injunctions against Defendants' authorization and use of computerized random unique identifier ballot tracking numbers that do not comply with Texas law. Pursuant to the Local Rules, Plaintiffs' application for injunctive relief will be filed separately from this Complaint.

### C.  COUNT III

**Violations of Equal Protection and Due Process – Use of Uncertified and
Illegal Electronic Voting System Equipment for In-Person Voting Breaches Ballot Secrecy**

166.    Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

167.    The Secretary's actions in modifying, ignoring, altering, waiving, and/or suspending of federal voting system laws and Texas state certification laws and falsely claiming the ES&S ExpressLink software and ExpressVote ballot printer meet state and federal legal and certification standards caused the breach of voter ballot secrecy in Williamson County.

168.    This voting system software and hardware used to randomly assign unique identifier numbered ballots cast by in-person voters was not tested, examined, and certified for ballot secrecy as required by Tex. Elec. Code Sec. 122.001(a)(1).  Furthermore, as described *supra*, the voting system software and hardware ExpressLink software and ExpressVote ballot printer were not certified by the Election Assistance Commission and were not officially tested and approved by the VVSG 1.0 standards, in violation of Tex. Elec. Code Section 122.001(a)3. Additionally, the Texas examiners did not examine the ExpressLink software and ExpressVote ballot printer for Texas certification, in violation of Tex. Elec. Code Section 122.036.  Instead, these uncertified illegal voting system components that assign, print, and store computer generated ballot numbers for *all in-person* voters in Williamson and Bell counties are authorized only by the Secretary's illegal "Ballot Tracking Through Voting System Software" Advisory 2019-23, Section 13(1)b.

169.    Based on the foregoing facts and authorities, Plaintiffs assert violations of the Equal Protection and Due Process Clauses of the United States Constitution as the result of Defendants' approval and use of uncertified and illegal voting system components.

170.    Unlike Texans who are permitted to vote by mail, if Plaintiffs wish to participate in the election process in their respective counties, they must use a voting system that contains uncertified and illegal components that breach the secrecy of Plaintiffs' votes as described herein.

171.    The harms Plaintiffs have suffered are real, not theoretical, and will continue to occur at each future called election unless and until this Court orders Defendants to comply with the law.

172.    Accordingly, Plaintiffs seek a declaration that Defendants' actions in certifying, authorizing, and using uncertified and illegal voting system components violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

173.    Plaintiffs further seek preliminary and permanent injunctions against Defendants' certification, authorization, and use of voting system components that do not comply with Texas law. Pursuant to the Local Rules, Plaintiffs' application for injunctive relief will be filed separately from this Complaint.

### D.  COUNT IV

**Violations of Equal Protection and Due Process – Use of Uncertified and
Illegal Electronic Pollbook Systems for In-Person Voting Breaches Ballot Secrecy**

174.    Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

175.    The Secretary has waived state certification standards for electronic pollbooks and by doing so permits a conduit for voting system software and equipment to be connected to an external network, including the internet, which stores data that reveals how voters vote.

176.    Based on the foregoing facts and authorities, Plaintiffs assert violations of the Equal Protection and Due Process Clauses of the United States Constitution as the result of Defendants'

waiving of certification standards and approving the use of illegal electronic pollbooks for in-person voters.  These electronic pollbooks are the conduit for illegal external network connectivity to voting system hardware and software (ES&S ExpressVote Ballot Printer and ExpressLink), which enable the illegal computerized random unique identifier ballot numbering, storage, and disclosure of votes for in-person voters.

177.    Unlike Texans who are permitted to vote by mail, if Plaintiffs wish to participate in the election process in their respective counties, they must use ballots generated by an illegal pollbook system that breaches the secrecy of Plaintiffs' votes as described herein.

178.    The harms Plaintiffs have suffered are real, not theoretical, and will continue to occur at each future called election unless and until this Court orders Defendants to comply with the law.

179.    Accordingly, Plaintiffs seek a declaration that Defendants' actions in certifying and using illegal electronic pollbooks for in-person voters violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

180.    Plaintiffs further seek preliminary and permanent injunctions against Defendants' certification, authorization, and use of voting system components that do not comply with Texas law. Pursuant to the Local Rules, Plaintiffs' application for injunctive relief will be filed separately from this Complaint.

## VIII. JURY REQUEST

Plaintiffs request a trial by jury.

## IX. PRAYER FOR RELIEF

Plaintiffs respectfully request declaratory and injunctive relief and judgment against Defendants, as follows:

a.      Emergency temporary restraining order as requested in the separate application filed simultaneously herewith, pursuant to the Local Rules of the Western District of Texas;

b.      Declaratory judgment that

      i.   Defendants' actions of modifying, ignoring, waiving and/or suspending Texas election laws relating to the consecutive numbering of ballots for in-person voters violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution;

      ii.  Defendants' actions in permitting and using computerized random unique identifier ballot numbers as described herein violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution;

      iii. Defendants' actions in certifying, authorizing, and using uncertified and illegal voting system components violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution; and

      iv.  Defendants' actions in certifying and using illegal electronic pollbooks for in-person voters violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

c.      Preliminary and permanent injunctions against Defendants' unconstitutional actions in

      i.   modifying, ignoring, waiving, and/or suspending Texas election laws relating to the consecutive numbering of ballots for in-person voters;

      ii.  permitting and using computerized random unique identifier tracking and numbering of ballots;

      iii.   certifying, authorizing, and using uncertified and illegal voting system components; and

      iv.   certifying and using illegal electronic pollbooks for in-person voters.

     d.     Plaintiffs also request all such other and further relief to which they may be entitled, including attorneys' fees and costs of court.

Respectfully submitted:

Anna Eby
State Bar No. 24059707
EBY LAW FIRM, PLLC
P.O. Box 1703
Round Rock, Texas 78680
Telephone: (512) 410-0302
Facsimile: (512) 477-0154
eby@ebylawfirm.com

/s/ *Frank G. Dobrovolny*
Frank Dobrovolny
State Bar No. 24054914
The Dobrovolny Law Firm, P.C.
217 South Ragsdale
Jacksonville, TX 75766
903-586-7555
DobrovolnyLawFirm@Gmail.com

Attorneys for Plaintiffs:
Robert Bagwell, Teresa Soll, Thomas L. Korkmas, and Madelon Highsmith

/s/*Laura Pressley*
Laura Pressley, Ph.D., *pro se* litigant
101 Oak Street, Ste. 248
Copperas Cove, TX  76522
313-720-5471
LauraPressley@Proton.me