# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| LAURA PRESSLEY, ROBERT BAGWELL, TERESA SOLL, THOMAS L. KORKMAS, and MADELON HIGHSMITH, | § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Action No. 1:24-cv-00318-DII |
| JANE NELSON, in her official capacity as the Texas Secretary of State, CHRISTINA ADKINS, in her official capacity as the Director of the Elections Division of the Texas Secretary of State, BRIDGETTE ESCOBEDO, in her official capacity as Williamson County Elections Administrator, DESI ROBERTS, in his official capacity as Bell County Elections Administrator, and ANDREA WILSON, in her official capacity as Llano County Elections Administrator, | § § § § § § § § § § § § § § | |
| *Defendants* | § | |

---

**DEFENDANT BRIDGETTE ESCOBEDO, IN HER OFFICIAL CAPACITY AS WILLIAMSON COUNTY ELECTIONS ADMINISTRATOR, RULE 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

ERIC OPIELA PLLC
Eric Opiela
Texas Bar No. 24039095
9415 Old Lampasas Trail
Austin, Texas 78750
Telephone: 512.791.6336
eopiela@ericopiela.com

**COUNSEL FOR DEFENDANT**

**BRIDGETTE ESCOBEDO**

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................................................1

ARGUMENT ...................................................................................................................3

    **I.  RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION** ........................................................................................................................3

        **A.  Plaintiffs lack standing because their claims are merely conjectural rather than actual or imminent.** ...............................................................................7

        **B.  The *Ex parte Young* exception does not apply to claims arising under state law** .................................................................................................................9

        **C.  Political Question Doctrine deprives this Court of jurisdiction** ...................10

    **II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)** ...........................................................................................13

        **A.   Standard of Review** ......................................................................13

        **B.   Plaintiffs have not stated a procedural due process claim against Defendant Escobedo** ..........................................................................13

        **C.   Plaintiffs have not stated a substantive due process claim against Defendant Escobedo………………………..…………………….…….……14**

        **D.   Plaintiffs have not stated an equal protection against Defendant Escobedo** ........................................................................................16

    **III.   RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** ................................................................................................17

PRAYER ......................................................................................................................19

CERTIFICATE OF SERVICE ...........................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...............................................................15

*Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011) ...........................................4, 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........................................................................13

*Baker v. Carr*, 369 U.S. 186, 217 (1962)......................................................................12

*Beeler v. Rounsavall*, 328 F.3d 813 (5th Cir. 2003) ....................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................13

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915)......................14

*Brown v. Todd*, 53 S.W.3d 297 (Tex. 2001) ....................................................................4

*Buras v. Hill*, No. 4:22-cv-753-SDJ-KPJ, 2023 WL 4290073 (E.D. Tex., May 19, 2023)............9

*City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018)...................................17

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................................ 14-15

*Coal. For Good Governance v. Raffensperger*, 2020 WL 2509092 (N.D. Ga. May 14, 2020) ....12

*Common Cause v. Federal Election Commission*, 108 F.3d 413 (D.C. Cir. 1997) ........................2

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447 (1923). ...............................11

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2005)....................................................2

*Davis v. FEC*, 554 U.S. 724 (2008) .................................................................................3

*E.T. v. Paxton*, 41 F.4th 709  (5th Cir. 2022)...................................................................8

*Eubanks v. Nelson*, No. 23-10936 (5th Cir. Apr. 3, 2024)..............................1, 6, 9, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)...................3

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)..............................................3

*Harold H. Higgins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011). ................6

*Heckman v. Williamson County*, 369 S.W.3d 137 (Tex. 2012). .....................................4

*Hines v. Quillivan*, 982 F.3d 266 (5th Cir. 2020) ........................................................16

*Lance v. Coffman*, 549 U.S. 437 (2007) ..........................................................................1

*Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). ................4

*Lutostanski v. Brown*, No. 23-50257 (5th Cir. Dec. 12, 2023). ........................1, 6, 9, 18

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992)..................................................3, 4, 11

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)....................................................11

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ............................................................2

*McKinley v. Abbott,* 643 F.3d 403 (5th Cir. 2011) ................................................10

*Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999) ..............................................15

*Nolles v. State Committee for the Reorganization of School Districts*, 524 F.3d 892 (8th Cir. 2008) ...........................................................................................................1

*Nolan v. Ramsey*, 597 F.2d 577 (5th Cir. 1979) ....................................................14

*Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553 (5th Cir. 1988) ...............10

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ...........................10

*Plotkin v. IP Axess Inc.*, 407 F.3d 690  (5th Cir. 2005). ........................................13

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .................................................................17

*Reno v. Flores*, 507 U.S. 292 (1993) ....................................................................14

*Republican Nat'l Cmte. v. Democratic Nat'l Cmte.*, 140 S. Ct. 1205 (2020)...............17

*Reyes v. North Texas Tollway Authority*, 861 F.3d 558 (5th Cir. 2017)......................15

*Richardson v. Texas Sec'y of State*, 978 F.3d 220 (5th Cir. 2020) ............................15

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974)........................2

*Shrimpers & Fisherman of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419 (5th Cir. 2020)8

*Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240 (5th Cir. 2000) ............................14

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.,* 632 F.3d 938 (5th Cir. 2011)..............11, 12

*Stern v. Tarrant County Hospital Dist.*, 778 F.2d 1052 (5th Cir.1985)..........................9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................3

*Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020) ..............................12

*Zimmerman v. Robinson*, 862 S.W.2d 162 (Tex. App.—Amarillo 1993) ....................12

*Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047  (5th Cir. 1997)............................17

*Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938 (5th Cir. 1977) ...........................................................................................................14

*White v. Garcia*, No. 4:22-CV-00746, 2022 WL 17968764  (N.D. Tex. Nov. 28, 2022) ..............9

*Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729 (5th Cir. 2020)..........................10

*Wood v. State ex rel. Lee*, 126 S.W.2d 4  (Tex. 1939)................................................5

## CONSTITUTIONS, STATUTES, AND RULES

Tex. Const. art. I, § 3................................................................................................5

Tex. Const. art. VI, § 2(c) .........................................................................................5

Tex. Const. art. VI, § 4; ............................................................................................5

Tex. Elec. Code § 122.001 ........................................................................................5

Tex. Elec. Code § 211.01 ..........................................................................................5

Fed. R. Civ. P. 12 .....................................................................................................1

## OTHER SOURCES

Dr. Laura Pressley, *Election Integrity Lunch and Learn*, Cause of America – April 16, 2024, at 31:24 (accessible at: https://twitter.com/i/spaces/1gqxvQpWawjJB )............................................8

To The Honorable Judge Of Said Court:

Now Comes Defendant Bridgette Escobedo, in her official capacity as Williamson County Elections Administrator, who asks this Court to dismiss the claims against her for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for Plaintiffs' failure to state a claim under Fed. R. Civ. P. 12(b)(6). Additionally, Escobedo asks for denial of Plaintiffs' Injunction Motion.

## SUMMARY OF THE ARGUMENT

In this case, the Plaintiffs include registered voters of Bell, Llano and Williamson Counties. The defendants include the Texas Secretary of State and its Elections Director (collectively, "State Defendants") and the election administrators for Bell, Llano, and Williamson Counties (collectively, "County Defendants"). Plaintiffs, in a voluminous mish-mash of election-related claims, challenge the continued use of electronic voting systems, some which have been in use for over a decade, which they allege are improper because they assign randomly generated, unique, ballot numbers and have "wireless external network connectivity." Dkt. 1, ¶¶ 27–29. Plaintiffs allege these electronic voting systems violate federal and state law, as well as the Fourteenth Amendment. Dkt. 1, §§ IV.C., VII. These meritless "conspiracy theory"-based allegations fail to state a claim. But even if they did, this Court lacks jurisdiction over their claims.

It is well established in this Circuit, in decisions as recent as this month, that individual voters lack standing to bring claims challenging the use of electronic voting systems. *See,* e.g. *Eubanks v. Nelson*, No. 23-10936 (5th Cir. Apr. 3, 2024); *Lutostanski v. Brown*, No. 23-50257 (5th Cir. Dec. 12, 2023). The claims of Plaintiffs are, in the words of the Supreme Court, "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *See Lance v. Coffman*, 549 U.S. 437, 442 (2007); *Nolles v. State Committee for the Reorganization of School Districts*, 524 F.3d 892 (8th Cir. 2008) (dismissing a substantive and procedural due process claim by voters in an election case because

they alleged only generalized grievances rather than injury unique to them); *Common Cause v. Federal Election Commission*, 108 F.3d 413 (D.C. Cir. 1997)(dismissing a challenge to FEC action due to lack of a discrete injury to the plaintiff). Further, Plaintiffs have entirely failed to assert an ongoing, non-speculative threat of future injury necessary to constitute an injury-in-fact, making only speculative and vague assertions about potential "fraud" or ballot secrecy issues.

Additionally, Plaintiffs' Complaint must be dismissed for lack of jurisdiction under Political Question Doctrine. The legislative choice to utilize electronic voting systems is a political question not appropriate for judicial consideration. *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). *See also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2005) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does"); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) ("[T]he presence of a political question suffices to prevent the power of the federal judiciary from being invoked by the complaining party.").

Furthermore, Plaintiffs have also failed to state a proper procedural or substantive Due Process claim. Plaintiffs have failed to allege the violation of any procedural requirements by Defendants and, as far as substantive due process. Additionally, Plaintiffs have failed to allege any action that is so egregious or outrageous that it may fairly be said to shock the contemporary conscience.

Plaintiffs have furthermore failed to state an Equal Protection claim because they have failed to allege facts showing their votes or ballots were or will imminently be treated differently than those of other similarly situated voters by Escobedo (or any other person under her direction or control).

Plaintiffs' requested relief would bar Escobedo from using Williamson County's electronic voting systems and require the use of hand-counted paper ballots—which would be nigh impossible in a county the size of Williamson–and lead to disarray in not only the May political subdivision elections, but also the Primary Runoff and General elections conducted in Williamson County. The Court should dismiss this case at the earliest possible opportunity.

## I. RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendant Escobedo moves to dismiss Plaintiffs claims under Fed. R. Civ. P 12(b)(1) because this Court lacks subject-matter jurisdiction; specifically Plaintiffs lack standing. The requirement that the plaintiff have standing imposes a "fundamental limitation" upon a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation omitted). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). Finally, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations and quotations omitted).

The Supreme Court has made it clear that generalized grievances do not afford Plaintiffs Article III standing. For example, it noted that:

> We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no

more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lujan*, 504 U.S. at 573-74 (1992). The Court has made it clear, in later referring to *Lujan*, that the bar to entertaining suits, such as this one, that are based on "generalized grievances" is of constitutional than rather than merely prudential dimension. *Lexmark International, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 127 n 3 (2014). Federal courts, including the Supreme Court, have routinely dismissed election-related claims for lack of standing when the plaintiffs' alleged injury is not unique to them but instead is one shared by the public at-large. *E.g., Lance v. Coffman*, 549 U.S. 437 (2007).  As such, they lack standing, and this Court does not have article III jurisdiction.

To the extent that the plaintiffs allege that the court has supplemental jurisdiction over alleged violations of state law, the same standard applies when determining if standing exists. As the Texas Supreme Court, relying on *Lujan*, has held:

> Under Texas law, as under federal law, the standing inquiry begins with the plaintiff's alleged injury. The plaintiff must be personally injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury.

*Heckman v. Williamson County*, 369 S.W.3d 137, 155 (Tex. 2012).

In specific regard to the issue of whether status as a voter can confer standing, the Texas Supreme Court noted in 2001:

> No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts. Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large.

*Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001).

In *Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011), the NAACP of Austin and several Travis County voters sued the Texas Secretary of State, alleging that her certification of

an electronic voting machine violated the Texas Election Code and the Texas Constitution. *Andrade,* 345 S.W.3d at 6. "The voters assert[ed] that the Secretary's failure to require a contemporaneous paper record of an electronic vote violate[d] their statutory right to a recount and an audit, as well as Texas constitutional guarantees of equal protection, the purity of the ballot box, and the right of suffrage." *Id*. (*citing* TEX. CONST. art. I, § 3, art. VI, § 2(c), art. VI, § 4; and Tex. Elec. Code §§ 122.001, 211.01). The Court ultimately concluded that "most of the voters' allegations involve[d] generalized grievances about the lawfulness of government acts" and that "their remaining claims fail[ed] on their merits." *Id.* at 4.

As here, the *Andrade* plaintiffs argued that "failing to require a paper ballot undermines the framers' intent in drafting the numbering requirement [of TEX. CONST. art. VI, § 4]—a requirement they claim[ed] was intended to secure the integrity of the election process." *Id.* at 15. The Texas Supreme Court held that even "[a]ssuming, as we must, that these allegations are true, they amount only to a generalized grievance shared in substantially equal measure by all or a large class of citizens." *Id*. The *Andrade* plaintiffs further argued that "the lack of a contemporaneous paper record neither provides a means of detecting and punishing fraud, nor preserves the purity of the ballot box." *Id.* at 16. The Court responded that "we have held that the 'purity of the ballot box' provision requires only that *the Legislature* pass laws as necessary to deter fraud and protect ballot purity: 'This constitutional provision is addressed to the sound discretion of the Legislature.'" *Id.* (emphasis in original) (quoting *Wood v. State ex rel. Lee*, 126 S.W.2d 4, 9 (Tex. 1939).

Finally, the *Andrade* plaintiffs argued that "the Secretary's certification of the eSlate violate[d] the requirement that voting systems be capable of providing records from which the system's operation may be audited, and, therefore, the Secretary acted outside her authority in

certifying the system." *Id.* at 17. The Court again held that the plaintiffs had merely stated a generalized grievance, holding that "the voters have made no showing that the Secretary's certification harmed them other than as members of the general public. Accordingly, for much the same reason their article VI claims are barred, the voters lack standing to pursue their Election Code complaints." *Id.*

Plaintiffs here have not—and cannot—allege that the use of electronic voting systems affects them differently than it does the other voters in the state. Accordingly, they have only a generalized grievance that is not unique to them and, therefore, lack standing. Where, as here, the plaintiffs lack constitutional standing, the cause should be dismissed under Rule 12(b)(1). *Harold H. Higgins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011).

In the last six months, most recently on April 3, 2024, the Fifth Circuit has considered this generalized-grievance bar to standing in cases challenging voting systems, both times upholding the District Court's finding that plaintiffs do not have standing. I *Eubanks v. Nelson*, the Fifth Circuit affirmed the Northern District's ruling that the plaintiffs lacked standing to challenge multiple counties' use of allegedly "noncompliant, uncertified voting equipment and systems." *Eubanks,* 2024 WL 1434449 at *1-*2. Citing to its decision last year in *Lutostanski v. Brown*, the Fifth Circuit noted that the plaintiffs, in both cases, did not allege that their votes were treated differently from other votes, but that all voters who used the challenged voting systems were at risk of having their votes not counted as intended. *Id.* at *2; *see also Lutostanski*, 88 F.4th at 586 ("[P]laintiffs' theory would apply equally to all voters in Travis County."). Likewise, with respect to their allegations that ballot secrecy could be compromised, their claims were not specific nor particular to them. *Eubanks*, 2024 WL 1434449 at *1.

Indeed, Plaintiffs' own statements demonstrate the generalized nature of their claims. *See*, *e.g.*, Dkt. #1, ¶ 1 ("As described herein, Defendants' failures have deprived Plaintiffs *and others similarly situated* of their right to cast a secret ballot that is protected against fraud") (emphasis added); *Id.* ¶¶ 23–24 ("Plaintiffs are all registered Texas voters who have voted in past Texas elections and intend to vote in future elections." … "[E]ven if qualified to vote by-mail, those voters may opt to vote in-person instead."); *Id.* ¶ 107 ("every single *in-person* ballot cast in Williamson, Bell and Llano counties at the polls physically contains a randomly generated unique ballot number assigned to their ballot by voting system software.") (emphasis in original); *Id.* ¶ 145 ("Plaintiffs request redress on behalf of themselves and all in-person voters similarly situated across the State of Texas."). Assuming arguendo Plaintiffs' claims were true–which they are not– their position would be no different from any other in-person voter in the counties at issue. The generalized grievance – here, Defendant Escobedo's reliance on state-issued advice and certifications – does not constitute a showing that Defendant Escobedo has harmed Plaintiffs or treated them any differently than any other Williamson County voter.

### A. Plaintiffs lack standing because their claims are merely conjectural rather than actual or imminent.

To satisfy the injury-in-fact requirement for standing, a plaintiff's injury must also be "actual or imminent" as opposed to merely "conjectural or hypothetical." *See Lujan*, 504 U.S. at 560. The highly conjectural and hypothetical nature of Plaintiffs' alleged injury-in-fact is apparent throughout the Complaint. *See*, *e.g.*, Dkt. #1, ¶ 121 ("A bad actor *could* use, sell, or otherwise capitalize on knowing how voters in Williamson County vote. Those who have access, such as county election officials, voting system vendors, electronic pollbook vendors and their employees, *could conceivably*…") (emphasis added); *Id.* ¶ 148 (asserting that "[c]onsecutive numbering is intended to detect and prevent ballot box fraud"…but failing to allege any actual or imminent

threat of fraud); *Id.* ¶ 28 (asserting "Plaintiffs are relegated to a class of voters whose votes are neither assured secrecy nor protected from dilution or debasement by fraud" but again failing to describe any actual dilution, fraud, or security breach of ballot secrecy). The Fifth Circuit "does not 'recognize the concept of probabilistic standing based on a non-particularized increased risk—that is, an increased risk that equally affects the general public.'" *E.T. v. Paxton*, 41 F.4th 709, 716 (5th Cir. 2022) (plurality opinion) (quoting *Shrimpers & Fisherman of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (per curiam)).

Plaintiffs' "ballot secrecy" assertions center on the bizzare claim that one of the Plaintiffs, Dr. Laura Pressley, was able to develop an undefined algorithm which she applied to records obtained from Williamson County and limited to Williamson County voters. Dkt. #1, ¶¶ 113–123.

Dr. Pressley, whose academic degrees are in chemistry, not computer science or computer engineering, revealed on a Twitter Spaces podcast last week, that she developed this algorithm not through academic study or analysis, but through Devine revelation:

> All the data I got was from the Williamson County Attorney's office, and I got on my knees…and I said, 'Dear Lord, show me the pattern because I know it's here, I know it's happening, I feel it…so I got on my knees and I prayed and 20 minutes later He showed me the pattern.
> Dr. Laura Pressley, *Election Integrity Lunch and Learn*, Cause of America – April 16,

2024, at 31:24 (accessible at: https://twitter.com/i/spaces/1gqxvQpWawjJB )

Reality, however, is that the voter sign-in systems in Williamson County are not linked to, or even from the same vendor as the ballot marking devices. Any "algorithm" developed by Plaintiffs, which they decline to share with Defendants or the Court at this time, would have to be based on the order voters voted at a polling location, the style of the ballot based on where a voter resides, and the order in which ballots are cast by a voter. These attributes are not unique to electronic voting systems, and could be determined at any polling place that uses hand cast paper

ballots, provided that the cast ballots were kept in the order in which they were cast. Plaintiffs claim with regard to ballot secrecy is purely hypothetical, resting on mere speculation that, theoretically, an individual will: 1) possess ill intent to violate ballot secrecy, 2) file Public Information Act requests with Williamson County, 3) independently divine the algorithmic pattern that Dr. Pressley claims to have observed, and 4) successfully use that algorithm to discover how *the Plaintiffs* voted.

Plaintiffs have merely alleged that this unlikely scenario is possible. But speculating about a possibility is insufficient to support a claim. *See Buras v. Hill*, No. 4:22-cv-753-SDJ-KPJ, 2023 WL 4290073 (E.D. Tex., May 19, 2023), at *6 ("'[C]laims of the possibility of hacking and manipulation of electronic voting systems' are 'speculative at best.'") (*quoting White v. Garcia*, No. 4:22-CV-00746, 2022 WL 17968764, at *4 (N.D. Tex. Nov. 28, 2022), *R. & R. adopted*, 2022 WL 17968757 (N.D. Tex. Dec. 27, 2022)).

Thus, for this reason also, the Plaintiffs lack standing, and the Court should dismiss the claim for want of jurisdiction. As the Fifth Circuit noted in *Eubanks* and *Lutostanksi*, the types of allegations in the Complaint are "too 'speculative' to provide a basis for standing." *Eubanks*, 2024 WL 1434449 at *2; *Lutostanksi*, 88 F.4th at 587 (noting plaintiffs did not explain why, how, when, or to whom data was unlawfully released (or sold or compromised)).

**B.  The *Ex parte Young* exception does not apply to claims arising under state law.**

While Plaintiffs make general assertions concerning the Fourteenth Amendment, the bulk of their complaints relate to their assertions that the Defendants have violated the Texas Constitution and various provisions of the Election Code. *See, e.g.*, Dkt. #1, § IV.C. Alleging a violation of state law "is neither a necessary nor a sufficient condition for a finding of a due process violation [or equal protection]." *See Stern v. Tarrant County Hospital Dist.*, 778 F.2d 1052, 1059

(5th Cir.1985) (en banc), *cert. denied* 476 U.S. 1108 (1986). "The appropriate standard is one of federal law." *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 558 (5th Cir. 1988).

Further, sovereign immunity would bar any state law claims—to the extent alleged—against Defendant Escobedo. The *Ex parte Young* exception "is not a way to enforce state law through the back door." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 740 (5th Cir. 2020). The narrow *Ex parte Young* doctrine is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Neuwirth*, 845 F.2d at 556 (5th Cir. 1988) (noting that the *Ex parte Young* exception does not apply to "suits which would seek to have federal judges order state officials to conform their conduct to state law"); *Papasan v. Allain*, 478 U.S. 265, 277 (1986) (holding that *Ex parte Young* "does not foreclose an Eleventh Amendment challenge where the official action is asserted to be illegal as a matter of state law alone"). "[S]ince state law claims do not implicate federal rights or federal supremacy concerns, the *Young* exception does not apply to *state* law claims brought against the state," including claims brought against official capacity defendants seeking prospective injunctive relief "for violations of the Texas Constitution." *McKinley v. Abbott,* 643 F.3d 403, 405-06 (5th Cir. 2011) (emphasis in original). Accordingly, to the extent Plaintiffs assert claims against Defendant Escobedo based on violations of state law, they are barred by sovereign immunity and should be wholly disregarded.

### C. Political Question Doctrine deprives this Court of jurisdiction.

Plaintiffs' basic claim, distilled to its essence, is that they disagree with the Secretary of State's approval of electronic voting systems and Williamson County's use of the approved system rather than hand-marked and hand-counted paper ballots. This is the same sort of situation the Supreme Court discussed almost a century ago in a case that similarly was based on a generalized grievance common to the public at large rather than on an imminent injury that was specific to the

plaintiff.

The Court described the substance of the complaint as being:

> merely that officials of the executive department of the government are executing an act of Congress asserted to be unconstitutional; and this we are asked to prevent. To do so would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess.

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488-89 (1923). The Supreme Court in *Lujan* relied on this precedent and language from several other of its precedents, including the foundational case of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) to conclude what it characterized as being obvious:

> To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an "individual right" vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to "take Care that the Laws be faithfully executed." Art. II, § 3. It would enable the courts, with the permission of Congress "to assume a position of authority over the governmental acts of another and co-equal department," . . . and to become "'virtually continuing monitors of the wisdom and soundness of Executive action.'" . . . We have always rejected this vision of our role.

*Lujan*, 504 U.S. at 577 (citations omitted).

If a court were to entertain generalized grievances about how the law is enforced, rather than addressing actual or imminent injury that is particularized to the Plaintiffs, which is what these Plaintiffs are asking the court to do Defendant Escobedo, then it would assume a non-judicial role and would abandon its position in the constitution's separation of powers scheme and exceed its jurisdiction.

There are six factors that indicate a political question, the presence of any one of which is sufficient to render a case non-justiciable. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.,* 632 F.3d 938, 940 (5th Cir. 2011). First, whether there is "a textually demonstrable constitutional

commitment of the issue to a coordinate political department." *Baker v. Carr*, 369 U.S. 186, 217 (1962). Second, whether there is "a lack of judicially discoverable and manageable standards for resolving [such issue]." *Id*. Third, whether it is impossible to decide the case "without an initial policy determination of a kind clearly for nonjudicial discretion." *Id.* Fourth, whether it is impossible for the court to undertake "independent resolution without expressing lack of the respect due coordinate branches of government." *Id*. Fifth, whether there is "an unusual need for unquestioning adherence to a political decision already made." And sixth, whether there is a "potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Id*.

Of those factors, the "dominant consideration" is whether the Constitution's text demonstrably commits an issue to a coordinate political branch. *Id.* at 950. Here, that factor is dispositive, as the Constitution explicitly commits the determination of the time, place, and manner of conducting elections to the States. U.S. Const. art. I, § 4. Accordingly, this case presents a non-justiciable political question and the Court must dismiss it. *Spectrum Stores, Inc*., 632 F.3d at 950.

The Fifth Circuit has expressly indicated that the decision of "whether to use electronic voting machines or paper ballots" is a challenge to "the wisdom of [a state's] policy choices." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 398 (5th Cir. 2020) (comparing the justiciability of the use of a voting machines or paper ballots to whether "provisions of the Texas Election Code run afoul of the Constitution") (*citing Coal. For Good Governance v. Raffensperger*, 2020 WL 2509092 (N.D. Ga. May 14, 2020) (dismissing claims seeking to require use of paper ballots rather than touchscreen ballots for virus prevention purposes "because they present a nonjusticiable political questions.")).

Plaintiff's claims are not in the jurisdiction of this Court because of the application of

political question doctrine. Accordingly, Defendant Escobedo asks this court to grant her Motion to dismiss under Fed. R. Civ. P. 12(b)(1).

I.   <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)</u>

   A. **Standard of Review**

This Court may dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not provide fair notice of the claim and does not state factual allegations showing that the right to relief is plausible. Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint must allege sufficient facts to give the defendant fair notice of Plaintiff's claims against the defendant. Additionally to survive a motion to dismiss, the complaint must contain plausible grounds to show an entitlement to relief as opposed to mere "labels and conclusions."" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005).

   B. **Plaintiffs have not stated a procedural due process claim against Defendant Escobedo.**

Plaintiffs do not clearly specify whether they have alleged a violation of due process under its procedural or substantive component. *See generally* Dkt. #1. They cursorily claim the State Defendants made decisions "with no public input, debate, or scrutiny." *See* Dkt. #1, ¶¶ 110–11. To the extent Plaintiffs intend to allege procedural due process claims against County Defendants

for relying upon state-issued advisories and voting system certifications, they fail because procedural due process does not constrain the creation of generally applicable laws or policies. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption."). *Nolan v. Ramsey*, 597 F.2d 577, 580 (5th Cir. 1979) (holding that due-process rights did not attach to the adoption of a rule by the Texas Railroad Commission because it was a quasi-legislative decision). Further, even if they could identify a right to procedural due process, they have failed to identify any deprivation tied to a failure to follow some form of process. *See, e.g., Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 942 (5th Cir. 1977) (finding plaintiff could identify no deprivation of a property interest without procedural due process when Georgia Public Service Commission certified a corporation under Georgia motor carrier code). Thus, no procedural due process rights attach—and no cognizable property interest deprivation can be found with respect to Defendant Escobedo's decision to rely upon election advisories and voting system certifications issued by the Secretary of State.

### C. Plaintiffs have not stated a substantive due process claim against Defendant Escobedo.

If Plaintiffs allege a substantive-due-process violation, it similarly fails. "Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000). "Substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). In cases dealing with the specific actions of a governmental officer, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847

(1998) (internal quotations omitted). Thus, to constitute a substantive due process violation, the governmental officer's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8); *see also Reyes v. North Texas Tollway Authority*, 861 F.3d 558, 562 (5th Cir. 2017)

Here, Plaintiffs, do not allege that Defendant Escobedo has infringed on their right to vote. Instead, they allege that, relying on the Secretary of State's election advisories and system certification, the Defendant Escobedo has somehow violated their rights. Plaintiffs assert that, as in-person voters, they are not afforded "fraud prevention protections" (*See* Dkt. #1, ¶ 153) and, therefore, not equally protected "against the detection and punishment of fraud." (*See* Dkt. #1, ¶ 154). Further, Plaintiffs put forth the conclusory and unsubstantiated allegations that Defendant Escobedo's reliance on the Secretary of State's election rules somehow leads to fraud, compromised ballot secrecy, and dilution of the one person/one vote standard.

These claims differ profoundly from other voting-rights cases in which the State action itself is alleged to have imposed a burden on "the right of qualified voters . . . to cast their votes effectively." *See, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 237 (5th Cir. 2020) (where plaintiffs alleged a burden from state's signature-comparison procedures for mail-in ballots. Plaintiffs' Complaint is simply devoid of any alleged facts that Defendant Escobedo has burdened any Plaintiff's right to vote, much less taken any arbitrary action "so egregious" as to "shock the contemporary conscience." *See Morris*, 181 F.3d at 668. Despite repeatedly claiming that their "harms are real" (*See* Dkt. #1, ¶¶ 1157, 163, 171, and 178), none of the Plaintiffs have shown that Defendant Escobedo has denied any Plaintiffs

right to vote, diluted the vote of any Plaintiff, disclosed any Plaintiffs vote, or otherwise disenfranchised any Plaintiff.

### D. Plaintiffs have not stated an equal protection against Defendant Escobedo.

"To state a claim for equal protection, 'the plaintiff must prove that similarly situated individuals were treated differently.'" *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020) (quoting *Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003). As an initial matter, rather than claiming they were treated differently from others similarly situated, Plaintiffs have asserted precisely the opposite of an Equal Protection claim by alleging that they share the same injury as others "similarly situated." *See* Dkt. #1, ¶¶ 1, 5, 111, 145. But, liberally construing the Complaint and assuming *arguendo* that mail-in voters are similarly-situated to in-person voters—a proposition the Defendant Escobedo does not concede—Plaintiffs have still failed to allege any non-speculative, substantive differential treatment.

While Plaintiffs have alleged that mail-in ballots are numbered consecutively and ballots used in certain counties' electronic voting systems are randomly generated, they have failed to allege facts plausibly showing that this difference results or will imminently result in any difference in the outcome of any election. They allege unsubstantiated fears that non-consecutive numbering is less secure than consecutive numbering, but fail to allege that any Plaintiff's vote has been denied, diluted, disclosed, or distributed. *See, e.g.,* Dkt. #1, ¶ 111 (complaining only of "potential ballot fraud"), ¶ 144 (alleging merely lack of fraud "protection" but containing no facts indicating fraud is imminent, much less explaining how fraud might be accomplished). Further, one Plaintiff claims to possess the secret knowledge enabling *her* to breach the secrecy of the ballot, Plaintiffs have failed to allege that any other person has uncovered this same "algorithmic pattern," has or is about to obtain the requisite documents, or is in any other way imminently about to discover how they—or any other person—voted in any past election. Dkt. #1, ¶¶ 114–19.

Accordingly, Plaintiffs have failed to allege facts showing that the difference in the way mail-in and in-person ballots used in electronic voting systems are numbered causes Plaintiffs' votes to be treated differently. As such, they have failed to state an equal protection claim.

## II.   RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy" and "requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1050 (5th Cir. 1997)."To be entitled to a preliminary injunction, the applicants must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (*quoting Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).

Additionally, Plaintiffs' motion should be denied because it seeks injunctive relief which would interfere with an ongoing election. Early in-person voting for the May 4, 2024 political subdivision elections began April 22, 2024. Immediately following the May 4, 2024 election, the same electronic voting systems must be quickly turned around for use in the May 28, 2024 Primary Runoff Elections, in which early in-person voting begins May 20, 2024. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Cmte. v. Democratic Nat'l Cmte.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (*citing Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). The "wisdom of the *Purcell* principle" is that it seeks to avoid "judicially created confusion." *Id.* Changing election process immediately before, and during, an election, is disfavored under *Purcell.*

On the merits, as discussed in detail *supra,* Plaintiffs are unlikely to prevail on their

underlying claims. Plaintiffs lack standing in that they have brought only a generalized grievance against the use of certain state-approved election systems. *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024). Additionally, Plaintiffs have no standing because they have not shown they are situated differently than the general public. *Id.* at *2; *see also Lutostanski*, 88 F.4th at 586. Plaintiffs claims also fail as Defendant Escobedo enjoys sovereign immunity and *Ex Parte Young* doctrine does not impact her immunity. Plaintiffs similarly have failed to articulate either a substantive or procedural due process claim on which they are substantially likely to prevail. Furthermore, they have failed to put forth a "careful description of the asserted right," and their claims are devoid of any "egregious" conduct by Defendant Escobedo. Plaintiffs have failed to articulate an equal protection claim on which they are substantially likely to prevail. This court lacks jurisdiction under the "political question" doctrine to even consider Plaintiffs' grievances over the adoption of electronic voting systems.

Second, Plaintiffs have not shown a substantial threat of an injury, much less an irreparable one, if the requested injunctions are not granted. Plaintiffs haven't shown that anyone other than Plaintiff Pressley has the sacred knowledge of how to unmask the secrecy of ballots, and she will not reveal her supernatural formula to anyone. Dkt. #19-1 at pp. 7–9. Plaintiffs have not even shown that anyone has or is seeking the underlying documents necessary to allegedly unmask voters for either the May 4, 2024 or May 28, 2024 elections. Therefore, Plaintiffs have not shown any credible harm, much less irreparable harm, to the secrecy of their votes if this Court does not grant injunctive relief.

With regard to the third and fourth elements necessary to grant a preliminary injunction, despite Plaintiffs' bare assertions that they wish to create "as little hardship as possible," their relief would impact not just the elections of Williamson County—a county of nearly half a million

registered voters, but every county in this state using the three major electronic voting systems. Dkt. #19, ¶ 25; ¶ 19.a, h. Accordingly, Plaintiffs' motion for preliminary injunction is not in the public interest and must be denied.

### III.    <u>PRAYER</u>

For all these reasons, Williamson County Election Administrator Bridgette Escobedo respectfully asks the Court to dismiss Plaintiffs' claims against her and deny Plaintiffs' motion for preliminary injunctive relief.

Respectfully submitted,

ERIC OPIELA PLLC

*/s/ Eric Opiela*
Ross Fischer
State Bar No. 24039095
ERIC OPIELA, PLLC
9415 Old Lampasas Trail
Austin, TX 78750
Telephone: (512) 791-6336
Email: eopiela@ericopiela.com

**COUNSEL FOR DEFENDANT
BRIDGETTE ESCOBEDO, IN HER
OFFICIAL CAPACITY AS WILLIAMSON
COUNTY ELECTIONS ADMINISTRATOR**

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2024, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, and the following pro se litigant:

***Via email:*** LauraPressley@Proton.me
***And First Class Mail***
Laura Pressley, Ph.D.,
101 Oak Street, Ste. 248
Copperas Cove, TX 76522

*Pro Se Litigant*

_/s/ Eric Opiela_
Eric Opiela