**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LAURA PRESSLEY, ROBERT BAGWELL, TERESA SOLL, THOMAS L. KORKMAS, and MADELON HIGHSMITH, | § § § § | |
| *Plaintiffs*, | § § | |
| | § | |
| v. | § | |
| | § | |
| JANE NELSON, in her official capacity as the Texas Secretary of State, CHRISTINA ADKINS, in her official capacity as the Director of the Elections Division of the Texas Secretary of State, BRIDGETTE ESCOBEDO, in her official capacity as Williamson County Elections Administrator, DESI ROBERTS, in his official capacity as Bell County Elections Administrator, and ANDREA WILSON, in her official capacity as Llano County Elections Administrator, | § § § § § § § § § § § § § § | Civil Action No. 1:24-cv-00318-DII |
| *Defendants*. | § | |

---

**DEFENDANTS' RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH BRIEF IN SUPPORT**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Division Chief, General Litigation
Division

JOSEPH D. KEENEY
Attorney-In-Charge
Texas Bar No. 24092616
Southern District of Texas No. 3850268
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4090
Facsimile: (512) 320-0667
Joseph.Keeney@oag.texas.gov

***ATTORNEYS FOR DEFENDANTS***

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................... iii

I.      Introduction ..................................................................................................... 1

II.     Motion to Dismiss for Lack of Subject-Matter Jurisdiction ............................ 3

        A.    Standard of Review ................................................................................ 3

        B.    Arguments & Authorities ....................................................................... 3

              1.    Plaintiffs lack standing because their generalized, conjectural
                    grievances would not be redressable by any relief this Court could
                    provide. ....................................................................................... 3

                    a.    Plaintiffs lack standing because their claims are merely
                          generalized grievances shared by a large class—all in-person
                          voters in the Defendant counties. .................................... 4

                    b.    Plaintiffs lack standing because their claims are merely
                          conjectural rather than actual or imminent. ..................... 8

              2.    The *Ex parte Young* exception does not apply to claims arising under
                    state law. ...................................................................................... 10

              3.    Article III prevents adjudication of the Plaintiffs' claims, as Political
                    Questions are inextricably present. .............................................. 11

III.    Motion to Dismiss for Failure to State a Claim .............................................. 14

        A.    Standard of Review .............................................................................. 14

        B.    Arguments & Authorities ..................................................................... 14

              1.    Plaintiffs cannot sue the state for their own conduct. ................... 14

              2.    Plaintiffs have not stated a procedural due process claim against the
                    SOS Defendants. ......................................................................... 15

              3.    Plaintiffs have not stated a substantive due process claim against the
                    SOS Defendants. ......................................................................... 16

              4.    Plaintiffs have not stated an equal protection against the SOS
                    Defendants. ................................................................................. 18

              5.    Plaintiffs have not stated a First Amendment claim against the SOS
                    Defendants. ................................................................................. 19

              6.    Plaintiffs have not stated a statutory claim against the SOS
                    Defendants. ................................................................................. 19

IV.     Prayer ............................................................................................................ 20

Certificate of Service .................................................................................................. 22

### TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983).................................................................................................. 17

*Andrade v. NAACP of Austin,*
   345 S.W.3d 1 (Tex. 2011).................................................................................. 5, 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................. 14

*Baker v. Carr,*
   369 U.S. 186 (1962).................................................................................................. 11

*Beeler v. Rounsavall,*
   328 F.3d 813 (5th Cir. 2003) ............................................................................. 18

*Bi-Metallic Inv. Co. v. State Bd. of Equalization,*
   239 U.S. 441 (1915).................................................................................................. 15

*Brennan v. Stewart,*
   834 F.2d 1248 (5th Cir. 1988) ........................................................................... 16

*Buras v. Hill,*
   No. 4:22-CV-753-SDJ-KPJ, 2023 WL 4290073 (E.D. Tex. May 19, 2023), *R. & R. adopted*, No. 4:22-CV-753-SDJ, 2023 WL 4234393 (E.D. Tex. June 28, 2023) ................................................................................................................................. 7

*Cnty. of Sacramento v. Lewis,*
   523 U.S. 833 (1998).................................................................................................. 17

*Coal. For Good Governance v. Raffensperger,*
   2020 WL 2509092 (N.D. Ga. May 14, 2020)............................................... 12

*Coury v. Prot,*
   85 F.3d 244 (5th Cir. 1996) .................................................................................... 3

*Davis v. FEC,*
   554 U.S. 724 (2008)..................................................................................................... 4

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,*
   489 U.S. 189 (1989).................................................................................................. 17

*E.T. v. Paxton,*
   41 F.4th 709 (5th Cir. 2022) .................................................................................. 8

*Eubanks v. Nelson,*
   No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024)............................. 4, 5, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000)..................................................................................................... 4

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990)..................................................................................................... 4

*Hines v. Quillivan*,
   982 F.3d 266 (5th Cir. 2020) ........................................................................ 18

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ...................................................................................... 4

*Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir. 1998) ...................................................................... 3

*Howery v. Allstate Ins. Co.*,
   243 F.3d 912 (5th Cir. 2001) ........................................................................ 3

*Jungemann v. Dept of State Louisiana*,
   No. 1:22-CV-02315, 2023 WL 5487390 (W.D. La. Aug. 24, 2023)............ 7

*Kuwait Pearls Catering Company, WLL v. Kellogg Brown & Root Services, Inc.*,
   853 F.3d 173 (5th Cir. 2017) ...................................................................... 11

*Lance v. Coffman*,
   549 U.S. 437 (2007)....................................................................................... 5

*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992)................................................................................... 4, 8

*Luther v. Borden*,
   48 U.S. 1 (1849)........................................................................................... 11

*Lutostanski v. Brown*,
   88 F.4th 582 (5th Cir. 2023) .................................................................. 5, 10

*Marbury v. Madison*,
   5 U.S. 137 (1803)......................................................................................... 11

*McKinley v. Abbott*,
   643 F.3d 403 (5th Cir. 2011) ...................................................................... 10

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*,
   466 U.S. 789 (1984)..................................................................................... 19

*Menchaca v. Chrysler Credit Corp.*,
   613 F.2d 507 (5th Cir. 1980) ........................................................................ 3

*Miller v. Doe*,
   422 F. Supp. 3d 1176 (W.D. Tex. 2019) ..................................................... 19

*Minn. State Bd. for Cmty. Coll. v. Knight*,
   465 U.S. 271 (1984)..................................................................................... 16

*Morris v. Dearborne*,
   181 F.3d 657 (5th Cir. 1999) ................................................................. 17, 18

*Mortensen v. First Federal Savings & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) .......................................................................... 3

*Neuwirth v. La. State Bd. of Dentistry*,
   845 F.2d 553 (5th Cir. 1988) ...................................................................... 10

*Nixon v. United States*,
    506 U.S. 224 (1993) ............................................................................................ 13

*Nolan v. Ramsey*,
    597 F.2d 577 (5th Cir. 1979) ............................................................................. 16

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................ 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .............................................................................................. 10

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ............................................................................. 14

*Raskin v. Jenkins*,
    No. 3:22-CV-2012-E-BH, 2022 WL 19355739 (N.D. Tex. Nov. 2, 2022), *R. &
    R. adopted*, No. 3:22-CV-02012-E-BH, 2023 WL 2777417 (N.D. Tex. Apr. 4,
    2023) ...................................................................................................................... 7

*Reno v. Flores*,
    507 U.S. 292 (1993) ............................................................................................ 16

*Reyes v. North Texas Tollway Authority*,
    861 F.3d 558 (5th Cir. 2017) ............................................................................. 17

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ............................................................................. 17

*Saldano v. O'Connell*,
    322 F.3d 365 (5th Cir. 2003) ............................................................................. 12

*Shelby County v. Holder*,
    570 U.S. 529 (2013) ............................................................................................ 20

*Shrimpers & Fisherman of RGV v. Tex. Comm'n on Env't Quality*,
    968 F.3d 419 (5th Cir. 2020) ............................................................................... 8

*Simi Inv. Co., Inc. v. Harris Cnty.*,
    236 F.3d 240 (5th Cir. 2000) ............................................................................. 16

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
    632 F.3d 938 (5th Cir. 2011) ............................................................................. 11, 12, 13

*Stern v. Tarrant County Hospital Dist.*,
    778 F.2d 1052 (5th Cir.1985) (en banc), *cert. denied* 476 U.S. 1108 (1986).......................... 10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .............................................................................................. 3

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ............................................................................. 12

*U.S. v. Crouch*,
    84 F.3d 1497 (5th Cir. 1996) ............................................................................. 17

*Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*,
   547 F.2d 938 (5th Cir. 1977) ............................................................... 16

*White v. Garcia*,
   No. 4:22-CV-00746-O-BP, 2022 WL 17968764 (N.D. Tex. Nov. 28, 2022), *R.
   & R. adopted*, No. 4:22-CV-00746-O-BP, 2022 WL 17968757 (N.D. Tex. Dec.
   27, 2022) ............................................................................................. 7, 9

*Williams On Behalf of J.E. v. Reeves*,
   954 F.3d 729 (5th Cir. 2020) ............................................................... 10

*Wood v. State ex rel. Lee*,
   126 S.W.2d 4 (Tex. 1939) ...................................................................... 6

**Constitutional Provisions & Statutes**

42 U.S.C. § 1988 .......................................................................................... 19

42 U.S.C.§ 1983 ........................................................................................... 19

52 U.S. § 21081(a)(1)(A)(i) .................................................................... 19, 20

52 U.S. § 21081(a)(1)(A)(ii) ................................................................... 19, 20

52 U.S. § 21081(a)(1)(C) ........................................................................ 19, 20

52 U.S.C. § 10301 ........................................................................................ 19

52 U.S.C. § 10301(a) ................................................................................... 20

52 U.S.C. § 10303 ........................................................................................ 19

52 U.S.C. § 10303(f)(2) ............................................................................... 20

Tex. Elec. Code § 122.001 ............................................................................ 5

Tex. Elec. Code § 211.01 .............................................................................. 6

**Constitutional Provisions**

Tex. Const. art. I, § 3 .................................................................................... 5

Tex. Const. art. VI, § 2(c) ............................................................................. 5

Tex. Const. art. VI, § 4 .............................................................................. 5, 6

U.S. Const. art. I, § 4, cl. 1 ......................................................................... 12

TO THE HONORABLE JUDGE OF SAID COURT:

Now Come Defendants Texas Secretary of State Jane Nelson and Texas Elections Director Christina Adkins in their official capacities (collectively "SOS Defendants"), who ask this Court to dismiss the claims against them for lack of subject-matter jurisdiction and for Plaintiffs' failure to state a claim.

## I.    INTRODUCTION

In this case, Plaintiffs challenge the use of electronic voting systems, which they allege are improper because they assign randomly generated unique identifying numbers on ballots and have "wireless external network connectivity." Dkt. #32, ¶¶ 27–29. Plaintiffs allege that this feature of the electronic voting systems, combined with the use of certain system components and equipment, violates state and federal law and thereby violates the First and Fourteenth Amendments. Dkt. 32, ¶ 117; *see also* Dkt. #32, ¶¶ 159–81. Their primary concern centers around the assertion of an "algorithm"—which they insist they cannot reveal—but which they claim without demonstration enables them to match the names of many voters with their ballots if those ballots contain a randomly generated unique identifying number displayed on it. Dkt. #32, ¶ 115. Their Complaint fails to show that any person other than those with whom they have shared the information has knowledge of this algorithm with intent to violate the ballot secrecy of the Plaintiffs. The Complaint is also deficient because it fails to factually allege how this alleged algorithm works— it is wholly conclusory.[1] As such, these allegations fail to state a claim. But even if they did, the Court lacks jurisdiction.

The Fifth Circuit has recently held—twice—that there is no standing to bring claims challenging the use of electronic voting systems. Such a "generalized grievance" shared by all

---

[1] To date, Plaintiffs are unwilling to reveal this information under a protective order to Defendants.

voters utilizing the challenged electronic voting systems does not state a particularized injury as necessary for Article III standing. Further, Plaintiffs have entirely failed to assert either an ongoing or non-speculative "certainly impending" threat of future injury—which they allege would be a violation of ballot secrecy or voter fraud—as necessary to constitute an injury-in-fact. In the alternative, the Court should dismiss the Complaint for want of jurisdiction because the choice to utilize electronic voting systems is a political question not appropriate for judicial consideration.

Further, even if the Court possessed jurisdiction, 1) Plaintiffs have also failed to state a Due Process Claim—there is no procedural requirement that was alleged to have been violated and, 2) as far as substantive due process, Plaintiffs have failed to allege any action that is so egregious or outrageous that it may fairly be said to shock the contemporary conscience. 3) They have failed to state an Equal Protection claim because they have failed to allege facts showing their votes or ballots were or will imminently be treated differently by the SOS Defendants or any other person than those of other voters similarly situated. 4) They have failed to state a First Amendment claim because they have not alleged facts showing any actual or imminent threat that the secrecy of their ballots will be violated by another. Finally, 5) they have failed to state a claim under any federal statute because none of their cited statutes prohibit any conduct alleged in the Complaint.

Indeed, Plaintiffs' theory of the case is not that any state actor is intentionally or knowingly violating Plaintiffs' constitutional or statutory rights. Rather, Plaintiffs allege that they breached the secrecy of the ballots of thousands of voters and seek to hold the state responsible for their actions. (Dkt. #32) at ¶ 115. But the Secretary of State is not failing in its duty to protect the secret ballot. The Secretary of State is presently aware of—and responding to—the possibility that individuals may be able to obtain data through a public information request that could compromise a voter's right to a secret ballot in certain circumstances. *See* App'x 1, 4. And as Plaintiffs confirm,

they are not suing the State over this issue. (Dkt. #43) at ¶ 11 ("Ballot secrecy breaches obtained via another method - completely unrelated to this case and to Dr. Pressley's algorithmic ballot numbering breach method…"). Regardless, their claims fail as a matter of law for the following reasons.

## II.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A.   Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss [for lack of subject-matter jurisdiction] is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B.   Arguments & Authorities

**1.   Plaintiffs lack standing because their generalized, conjectural grievances would not be redressable by any relief this Court could provide.**

For the reasons set forth below, Plaintiffs lack standing to bring their claims against the SOS Defendants. The requirement that the plaintiff have standing imposes a "fundamental limitation" upon a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555

U.S. 488, 493 (2009). "[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation omitted). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). Finally, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations and quotations omitted).

> a. **Plaintiffs lack standing because their claims are merely generalized grievances shared by a large class—all in-person voters in the Defendant counties.**

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–574. A "'generalized grievance'—no matter how sincere—is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013). Here, Plaintiffs raise only generalized grievances that would be shared by the public writ large, and therefore lack standing to file suit against the SOS Defendants, among others.

The Fifth Circuit has had two occasions, recently, to consider this generalized-grievance bar to standing in cases challenging voting systems. In each case, the Fifth Circuit ruled there was no standing. Recently, in *Eubanks v. Nelson*, the Fifth Circuit affirmed the Northern District's ruling that the plaintiffs lacked standing to challenge multiple counties' use of allegedly

"noncompliant, uncertified voting equipment and systems." No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024). Citing to its decision last year in *Lutostanski v. Brown*, the Fifth Circuit noted that the plaintiffs, in both cases, did not allege that their votes were treated differently from other votes, but that all voters who used the challenged voting systems were at risk of having their votes not counted as intended. *Id*. at *2; *see also Lutostanski*, 88 F.4th 582, 586 (5th Cir. 2023) ("[P]laintiffs' theory would apply equally to all voters in Travis County."). Likewise, with respect to their allegations that ballot secrecy could be compromised, their claims were not specific nor particular to them. *Eubanks*, 2024 WL 1434449 at *1.

Such alleged injuries do not confer standing because the plaintiffs are only raising a "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Id.* Like the allegations in these cases, the Plaintiffs' allegations do not state an Article III case or controversy but are merely undifferentiated, generalized grievances about the conduct of government that the courts have refused to countenance. *Id.*; *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam).

The Supreme Court of Texas has also had occasion to consider and dismiss such claims for this reason. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011). In *Andrade*, the NAACP of Austin and several Travis County voters sued the Texas Secretary of State, alleging that her certification of an electronic voting machine, known as the "eSlate," (manufactured by Hart Intercivic) violated the Texas Election Code and the Texas Constitution. 345 S.W.3d at 6. "The voters assert[ed] that the Secretary's failure to require a contemporaneous paper record of an electronic vote violate[d] their statutory right to a recount and an audit, as well as Texas constitutional guarantees of equal protection, the purity of the ballot box, and the right of suffrage."

*Id.* (citing Tex. Const. art. I, § 3, art. VI, § 2(c), art. VI, § 4; and Tex. Elec. Code §§ 122.001, 211.01). The Court ultimately concluded that "most of the voters' allegations involve[d] generalized grievances about the lawfulness of government acts" and that "their remaining claims fail[ed] on their merits." *Id.* at 4.

As relevant here, the *Andrade* plaintiffs argued that "failing to require a paper ballot undermines the framers' intent in drafting the numbering requirement [of Tex. Const. art. VI, § 4]—a requirement they claim[ed] was intended to secure the integrity of the election process." *Id.* at 15. The Texas Supreme Court held that even "[a]ssuming, as we must, that these allegations are true, they amount only to a generalized grievance shared in substantially equal measure by all or a large class of citizens." *Id*. The *Andrade* plaintiffs further argued that "the lack of a contemporaneous paper record neither provides a means of detecting and punishing fraud, nor preserves the purity of the ballot box." *Id.* at 16. The Court responded that "we have held that the 'purity of the ballot box' provision requires only that *the Legislature* pass laws as necessary to deter fraud and protect ballot purity: 'This constitutional provision is addressed to the sound discretion of the Legislature.'" *Id.* (emphasis in original) (quoting *Wood v. State ex rel. Lee*, 126 S.W.2d 4, 9 (Tex. 1939)).

Finally, the *Andrade* plaintiffs argued that "the Secretary's certification of the eSlate violate[d] the requirement that voting systems be capable of providing records from which the system's operation may be audited, and, therefore, the Secretary acted outside her authority in certifying the system." *Id.* at 17. The Court again held that the plaintiffs had merely stated a generalized grievance, holding that "the voters have made no showing that the Secretary's certification harmed them other than as members of the general public. Accordingly, for much the

same reason their article VI claims are barred, the voters lack standing to pursue their Election Code complaints." *Id*.

In accordance with the generalized-grievance principles set forth above, this Court should dismiss Plaintiffs' claims for lack of standing, as they make the same sort of vague allegations concerning "every citizen's interest in proper application of the Constitution and laws," which federal courts have consistently held do not meet the standing requirement. *See Buras v. Hill*, No. 4:22-CV-753-SDJ-KPJ, 2023 WL 4290073, at *5 (E.D. Tex. May 19, 2023), *R. & R. adopted*, No. 4:22-CV-753-SDJ, 2023 WL 4234393 (E.D. Tex. June 28, 2023); *Raskin v. Jenkins*, No. 3:22-CV-2012-E-BH, 2022 WL 19355739, at *5 (N.D. Tex. Nov. 2, 2022), *R. & R. adopted*, No. 3:22-CV-02012-E-BH, 2023 WL 2777417 (N.D. Tex. Apr. 4, 2023); *White v. Garcia*, No. 4:22-CV-00746-O-BP, 2022 WL 17968764, at *3 (N.D. Tex. Nov. 28, 2022), *R. & R. adopted*, No. 4:22-CV-00746-O-BP, 2022 WL 17968757 (N.D. Tex. Dec. 27, 2022); *Jungemann v. Dept of State Louisiana*, No. 1:22-CV-02315, 2023 WL 5487390, at *3 (W.D. La. Aug. 24, 2023). Indeed, Plaintiffs' own statements demonstrate the generalized nature of their claims. *See, e.g.*, Dkt. #32, ¶ 1 ("As described herein, Defendants' failures have deprived Plaintiffs *and others similarly situated* of their right to cast a secret ballot that is protected against fraud") (emphasis added); *Id*. ¶¶ 23–24 ("Plaintiffs are all registered Texas voters who have voted in past Texas elections and intend to vote in future elections." … "[E]ven if qualified to vote by-mail, those voters may opt to vote in-person instead."); *Id*. ¶ 107 ("every single *in-person* ballot cast in Williamson, Bell and Llano counties at the polls physically contains a randomly generated unique ballot number assigned to their ballot by voting system software.") (emphasis in original); *Id*. ¶ 145 ("Plaintiffs request redress on behalf of themselves and all in-person voters similarly situated across the State of Texas."). Assuming arguendo Plaintiffs' claims are true, their position would be no different

from any other in-person voter in the counties at issue. Therefore, they have failed to state an Article III case or controversy.

> b.    **Plaintiffs lack standing because their claims are merely conjectural rather than actual or imminent.**

To satisfy the injury-in-fact requirement for standing, a plaintiff's injury must also be "actual or imminent" as opposed to merely "conjectural or hypothetical." *See Lujan*, 504 U.S. at 560. "To be sure, 'imminence' is 'a somewhat elastic concept'" but it is "stretched beyond the breaking point where, as here, the plaintiff alleges only an injury at some indefinite future time." *E.T. v. Paxton*, 41 F.4th 709, 716 (5th Cir. 2022) (quoting *Lujan*, 504 U.S. at 564 n.2). The highly conjectural and hypothetical nature of Plaintiffs' alleged injury-in-fact is apparent throughout the Complaint. *See, e.g.*, Dkt. #32, ¶ 121 (discussing only why a bad actor might hypothetically desire voter information); *Id.* ¶ 148 (asserting that "[c]onsecutive numbering is intended to detect and prevent ballot box fraud"…but failing to allege any actual or imminent threat of fraud); *Id.* ¶ 28 (asserting "Plaintiffs are relegated to a class of voters whose votes are neither assured secrecy nor protected from dilution or debasement by fraud" but again failing to describe any actual dilution, fraud, or security breach of ballot secrecy). The Fifth Circuit "does not 'recognize the concept of probabilistic standing based on a non-particularized increased risk—that is, an increased risk that equally affects the general public.'" *E.T.*, 41 F.4th 709 at 715 (plurality opinion) (quoting *Shrimpers & Fisherman of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (per curiam)).

The only specific allegations are limited to Williamson County, but as an initial matter, they fail because they do not trace any injury to the actual *use* of the challenged systems. Rather, they focus on the allegation that Plaintiffs were able to develop an undefined algorithm which they allegedly applied to records obtained through Public Information Act ("PIA") requests to match

the names of voters in Williamson County to their ballots. Dkt. #32, ¶¶ 113–123. Even assuming arguendo, it is the electronic voting systems—rather than disclosures through the PIA—that can be charitably considered the source of any injury, as the Court noted in its Order denying Plaintiffs' Motion for a Temporary Restraining Order, Plaintiffs do not show that any PIA requests related to ballot data are imminent, "much less that state or county officials will imminently hand that information over." Dkt. #13 at 4. Accordingly, the Court has already correctly recognized that Plaintiffs' alleged threat of future injury is not imminent. *Id*. Rather, it is purely hypothetical, resting on mere speculation that, theoretically, an individual will: 1) possess ill intent to violate ballot secrecy, 2) file PIA requests with Williamson County, 3) independently divine the algorithmic pattern that Plaintiffs claim to have observed, and 4) successfully use that algorithm to discover how—not simply someone—but specifically how *the Plaintiffs* voted.[2] Since by their own allegations, they and those with whom they have shared information are the only ones alleged to have knowledge or understanding of this "algorithm," they have failed to demonstrate that their ballots are in danger of being revealed to others.

In other words, Plaintiffs have merely alleged a possibility. But claiming there is simply a possibility is insufficient—it is purely speculative. *See Buras*, 2023 WL 4290073, at *6 ("'[C]laims of the possibility of hacking and manipulation of electronic voting systems' are 'speculative at best.'") (quoting *White*, No. 2022 WL 17968764, at *4). Thus, for this reason also, the Plaintiffs lack standing, and the Court should dismiss the claim for want of jurisdiction. As the

---

[2] Further, Plaintiffs' claims are not based on the risk that an official might not adequately redact personally identifying information in response to a Public Information Request—the topic at issue in recent advisories from the Office of the Attorney General and Secretary of State. *See* Appendix 1-3. Plaintiffs do not seek to ensure that redactions are properly made; they seek to simply end the use of randomly generated unique identifying numbers, seemingly whether they would be redacted in a production of documents requested under the PIA or not. The Secretary of State also recently issued updated ballot numbering requirements related to the certification of electronic pollbook systems (Advisory No. 2024-21). See App'x 4. But as the Plaintiffs offer no insight into their alleged "algorithm," it is unclear how or whether the revised pollbook certification standards impact Plaintiffs' claims. Regardless, the Plaintiffs' allegations are plainly insufficient to satisfy Article III standing requirements.

Fifth Circuit noted in *Eubanks* and *Lutostanksi*, the types of allegations in the Complaint are "too 'speculative' to provide a basis for standing." *Eubanks*, 2024 WL 1434449 at *2; *Lutostanksi*, 88 F.4th at 587 (noting plaintiffs did not explain why, how, when, or to whom data was unlawfully released (or sold or compromised)).

      2.    **The *Ex parte Young* exception does not apply to claims arising under state law.**

      While Plaintiffs pay lip service to the U.S. Constitution, the thrust of their complaints relate to their assertions that the Defendants have violated the Texas Constitution and various provisions of the Election Code. *See, e.g.*, Dkt. #32, § IV C. Alleging a violation of state law "is neither a necessary nor a sufficient condition for a finding of a due process violation [or equal protection]." *See Stern v. Tarrant County Hospital Dist.*, 778 F.2d 1052, 1059 (5th Cir.1985) (en banc), *cert. denied* 476 U.S. 1108 (1986). "The appropriate standard is one of federal law." *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 558 (5th Cir. 1988).

      Further, sovereign immunity would bar any state law claims—to the extent alleged— against the SOS Defendants. The *Ex parte Young* exception "is not a way to enforce state law through the back door." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 740 (5th Cir. 2020). The narrow *Ex parte Young* doctrine is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Neuwirth*, 845 F.2d at 556 (noting that the *Ex parte Young* exception does not apply to "suits which would seek to have federal judges order state officials to conform their conduct to state law"); *Papasan v. Allain*, 478 U.S. 265, 277 (1986) (holding that *Ex parte Young* "does not foreclose an Eleventh Amendment challenge where the official action is asserted to be illegal as a matter of state law alone"). "[S]ince state law claims do not implicate federal rights or federal supremacy concerns, the *Young* exception does not apply to *state* law claims brought against the state," including claims brought against official capacity defendants seeking prospective injunctive relief

"for violations of the Texas Constitution." *McKinley v. Abbott*, 643 F.3d 403, 405–06 (5th Cir. 2011) (emphasis in original). Accordingly, to the extent Plaintiffs assert claims against the SOS Defendants based on violations of state law, they are barred by sovereign immunity and should be wholly disregarded. Whether there has been any constitutional violation is a question based solely on federal law. And as discussed, *infra* § III, Plaintiffs have failed to state those claims.

### 3. Article III prevents adjudication of the Plaintiffs' claims, as Political Questions are inextricably present.

"The political-question doctrine forecloses as nonjusticiable actions which would improperly require judicial review of decisions exclusively within the purview of the political branches of government." *Kuwait Pearls Catering Company, WLL v. Kellogg Brown & Root Services, Inc.*, 853 F.3d 173 (5th Cir. 2017) (*KPCC*). "The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). The political-question doctrine has been recognized as a limit on the subject-matter jurisdiction of the federal courts since the very earliest days of the Republic. *See Marbury v. Madison*, 5 U.S. 137, 170 (1803) (dictum) ("Questions, in their nature political, or which are, by the constitution and laws, submitted to the [political branches], can never be made in this court."); *see also Luther v. Borden*, 48 U.S. 1, 42 (1849) ("[Congress's] decision [regarding the rightful, republican government of Rhode Island under the Guarantee Clause] is binding on every other department of the government, and could not be questioned in a judicial tribunal.").

There are six factors to assess in making a political-question determination, "any one of which is sufficient to indicate the presence of a nonjusticiable political question." *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 949 (5th Cir. 2011). First, whether there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker v. Carr*, 369 U.S. 186, 217 (1962). Second, whether there is "a lack of judicially discoverable and

manageable standards for resolving [such issue]." *Id*. Third, whether it is impossible to decide the case "without an initial policy determination of a kind clearly for nonjudicial discretion." *Id*. Fourth, whether it is impossible for the court to undertake "independent resolution without expressing lack of the respect due coordinate branches of government." *Id*. Fifth, whether there is "an unusual need for unquestioning adherence to a political decision already made." And sixth, whether there is a "potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Id*.

The Fifth Circuit has indicated that the decision of "whether to use electronic voting machines or paper ballots" is a challenge to "the wisdom of [a state's] policy choices." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 398 (5th Cir. 2020) (comparing the justiciability of the use of a voting machines or paper ballots to whether "provisions of the Texas Election Code run afoul of the Constitution") (citing *Coal. For Good Governance v. Raffensperger*, 2020 WL 2509092 (N.D. Ga. May 14, 2020) (dismissing claims seeking to require use of paper ballots rather than touchscreen ballots for virus prevention purposes "because they present a nonjusticiable political questions.")). As evidenced here, the Fifth Circuit views the question at hand as a political one not suited for judicial discretion. The Fifth Circuit is correct.

"The dominant consideration in any political question inquiry is whether there is a 'textually demonstrable constitutional commitment of the issue to a coordinate political department.'" *Citgo*, 632 F.3d at 950 (quoting *Saldano v. O'Connell*, 322 F.3d 365, 369 (5th Cir. 2003). In this case, election-related matters are constitutionally committed to the legislatures of the states. U.S. Const. art. I, § 4, cl. 1 (Elections Clause) ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the

Legislature thereof. . . .").[3]

Further, the judicially-discoverable-and-manageable-standards factor "'is not completely separate from' the concept of a textual commitment to the coordinate branches." *Citgo*, 632 F.3d at 952 (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993)). "The lack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch." *Nixon*, 506 U.S. at 228-229; *see also id.* at 230 (holding that the word "try" in the Impeachment Trial Clause did not provide "sufficient precision to afford any judicially manageable standard" for reviewing the Senate's exercise of its constitutionally committed discretion in the impeachment trial of a federal judge). Plaintiffs' Complaint is devoid of any demonstration of familiar, judicially manageable standards the Court could apply in this case.

Moreover, on its face, the question of whether to use an electronic voting system utilizing randomly generated unique identifying numbers on ballots is one of policy—involving, conceivably and at a minimum, questions of cost and efficiency, choices among vendors, administration feasibility, technological capabilities, ease or difficulty of implementation, and employee or volunteer availability. These considerations cannot be weighed without making policy determinations of a kind clearly for nonjudicial discretion. Although Plaintiffs would prefer—as a matter of policy—that Defendants end the use of randomly generated numbers and certain technical features of electronic voting systems, they have neither shown that any certain decision is necessary under the Constitution, nor have they shown any likelihood of imminent harm from the political branches' choices.

---

[3] "Congress may at any time by Law make or alter such [state] Regulations." U.S. Const. art. I, § 4, cl. 1. Congressional supervisory authority over the state legislatures with respect to the Elections Clause only provides yet more evidence that this issue is demonstrably committed to other political branches.

Indeed, this is very likely why the Framers expressly committed such questions of election administration to the discretion of the political branches. To wade into such waters in a judicial proceeding would disrespect the roles of the legislative and executive branches at the federal, state, and local levels. And because Plaintiffs' extraordinary request for relief would surely create confusion in upcoming elections, the Court should adhere to the political decisions already made—to use the selected electronic voting systems. The likelihood of disarray also exhibits how there is a risk in this case of potential embarrassment resulting from a judicial decision supplanting the policy choices already made by other political departments. For these reasons, each of the six relevant factors weigh in favor of finding that Plaintiffs have raised a non-justiciable political question. Thus, the Court should dismiss the Complaint in its entirety.

## III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Standard of Review

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### B.   Arguments & Authorities

#### 1.   Plaintiffs cannot sue the state for their own conduct.

"The Due Process Clause ... does not, as a general matter, require the government to protect its citizens from the acts of private actors." *Fisher v. Moore*, 73 F.4th 367, 371 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 569 (2024). Likewise, the First Amendment is applied to the states through

the Due Process Clause. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n. 1 (1996). Further, the First Amendment simply constrains government action. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019). Accordingly, there is simply no basis to sue the state because its discretionary policymaking (Secretary of State Advisories) and voter system certifications did not prevent the Plaintiffs from allegedly violating the constitutional right to ballot secrecy of thousands of citizens, nor would such a case be permitted under *Ex Parte Young*, which does not permit relief that would dictate such affirmative, discretionary actions of the state. *See Richardson v. Texas Sec'y of State*, 978 F.3d 220, 241 (5th Cir. 2020). *Ex Parte Young* is a narrow exception that allows private parties to file suit to prevent state officials from enforcing a state law contrary to federal law. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). But Plaintiffs are not seeking to enjoin Plaintiffs from enforcing a state law allegedly contrary to federal law. *See, e.g.*, (Dkt. #32) at ¶ 2 (claiming officials are not acting *in accordance with state* law). Accordingly, even if they had alleged that others were—as they claim they are—violating the secrecy of their ballots, Plaintiffs' constitutional claims would not be viable.

> **2.      Plaintiffs have not stated a procedural due process claim against the SOS Defendants.**

Plaintiffs do not clearly specify whether they have alleged a violation of due process under its procedural or substantive component. *See generally* Dkt. #32. They cursorily claim the SOS Defendants made decisions "with no public input, debate, or scrutiny." *See* Dkt. #32, ¶¶ 110–11. In any event, to the extent Plaintiffs did intend to allege procedural due process claims against the SOS Defendants with respect to issuing advisories and certifying voting systems, they fail because procedural due process does not constrain the creation of generally applicable laws. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its

adoption."). "Government makes so many policy decisions affecting so many people that it would likely grind to a halt were policymaking constrained by constitutional requirements on whose voices must be heard." *Minn. State Bd. for Cmty. Coll. v. Knight*, 465 U.S. 271, 283 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.") ; *Nolan v. Ramsey*, 597 F.2d 577, 580 (5th Cir. 1979) (holding that due-process rights did not attach to the adoption of a rule by the Texas Railroad Commission because it was a quasi-legislative decision). Further, even if they could identify a right to procedural due process, they have failed to identify any deprivation tied to a failure to follow some form of process. *See, e.g., Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 942 (5th Cir. 1977) (finding plaintiff could identify no deprivation of a property interest without procedural due process when Georgia Public Service Commission certified a corporation under Georgia motor carrier code). Thus, no procedural due process rights attach—and no cognizable property interest deprivation can be found with respect to—the SOS Defendants' quasi-legislative decisions, issuing advisories to election officials, or certifying voting systems under the Election Code.

### 3.   Plaintiffs have not stated a substantive due process claim against the SOS Defendants.

To the extent Plaintiffs intend to allege a substantive-due-process violation, it similarly fails. "Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). "Substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S.

292, 302 (1993). In cases dealing with the specific actions of a governmental officer, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotations omitted). Thus, to constitute a substantive due process violation, the governmental officer's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8); *see also Reyes v. North Texas Tollway Authority*, 861 F.3d 558, 562 (5th Cir. 2017).

Here, Plaintiffs do not allege that SOS Defendants themselves have taken actions that directly interfere with their right to vote. Instead, they effectively allege that SOS Defendants have taken insufficient precautions to prevent third-parties—counties and electronic voting system vendors—from making decisions that could, theoretically, allow unidentified third parties to violate the secrecy and integrity of the ballot. *See, e.g.*, Dkt. #32, ¶ 2 (noting that Plaintiffs do not have the same "legal protections."); ¶ 28 (arguing that Plaintiffs are not "assured" secrecy and are not "protected from dilution or debasement by fraud."). This claim is profoundly different from other voting-rights cases in which the State action itself is alleged to have imposed a burden on "the right of qualified voters . . . to cast their votes effectively." *See, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 237 (5th Cir. 2020) (where plaintiffs alleged a burden from state's signature-comparison procedures for mail-in ballots. Generally, government entities and officers cannot be held liable for failure to protect the life, liberty, and property of its citizens against invasion by private parties. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Further, due process violations generally cannot be based on simply an allegation of a lack of due care or inadequate, ineffective, or insufficient governmental personnel or management. *See U.S. v. Crouch*, 84 F.3d 1497, 1505–

18 (5th Cir. 1996). But even if the issuance of advisories and certifications of voting systems are sufficient to constitute state action—however tenuous its connection to any alleged injury—the Complaint is simply devoid of any alleged facts showing the SOS Defendants have burdened their right to vote, much less taken any arbitrary action "so egregious" as to "shock the contemporary conscience." *See Morris*, 181 F.3d at 668. And even if their theory were viable, Plaintiffs do not allege facts demonstrating actual or imminent breaches of secrecy by third parties, nor actual or imminent fraud by third parties, based on their algorithm. For these reasons, Plaintiffs have failed to state a due process claim.

> **4.     Plaintiffs have not stated an equal protection against the SOS Defendants.**

"To state a claim for equal protection, 'the plaintiff must prove that similarly situated individuals were treated differently.'" *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020) (quoting *Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003)). As an initial matter, rather than claiming they were treated differently from others similarly situated, Plaintiffs have asserted precisely the opposite of an Equal Protection claim by alleging that they share the same injury as others "similarly situated." *See* Dkt. #32, ¶¶ 1, 5, 111, 145. But, liberally construing the Complaint and assuming arguendo that mail-in voters are similarly-situated to in-person voters—a proposition the SOS Defendants reject and do not concede—Plaintiffs have still failed to allege any non-speculative, substantive differential treatment.

While Plaintiffs have alleged that mail-in ballots are numbered consecutively and ballots used in certain counties' electronic voting systems are randomly generated, they have failed to allege facts plausibly showing that this difference results or will imminently result in any difference in outcome. They allege unsubstantiated fears that non-consecutive numbering is less secure than consecutive numbering, but failed to allege that any fraud has caused their votes not to be counted, much less any effect on the outcome of any election. *See, e.g.,* Dkt. #32, ¶ 111

(complaining only of "potential ballot fraud"), ¶ 144 (alleging merely lack of fraud "protections" but containing no facts indicating fraud is imminent, much less explaining how fraud might be accomplished). Further, though Plaintiffs claim to possess the secret knowledge enabling *them* to breach the secrecy of the ballot, Plaintiffs have failed to allege that any other person has uncovered this same "algorithmic pattern," has or is about to obtain the requisite documents through a PIA request, or is in any other way imminently about to discover how they—or any other person— voted in any election through the use of their discovered algorithm. Dkt. #32, ¶¶ 114–19. Accordingly, Plaintiffs have failed to allege facts showing that the difference in the way mail-in and in-person ballots used in electronic voting systems are numbered causes Plaintiffs' votes to be treated differently. As such, they have failed to state an equal protection claim.

5.    **Plaintiffs have not stated a First Amendment claim against the SOS Defendants.**

Plaintiffs appear to base their First Amendment claims on the alleged chilling effect that their fears of ballot secrecy violations have on their desire to vote. *See, e.g.,* Dkt. #32, ¶ 168. But for a First Amendment claim to proceed, Plaintiffs must allege a realistic danger. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). A mere "subjective chill" is no substitute for alleging a specific harm or threat of a specific future harm. *Miller v. Doe*, 422 F. Supp. 3d 1176, 1185 (W.D. Tex. 2019). Since Plaintiffs have alleged no more than a subjective chill, but—as discussed in prior sections—failed to allege an actual or imminent future injury, they have failed to state a First Amendment claim.

6.    **Plaintiffs have not stated a statutory claim against the SOS Defendants.**

Plaintiffs also allege—without explanation—that the Defendants have violated 52 U.S.C.

19

§ 10301 and § 10303, as well as 52 U.S. §§ 21081(a)(1)(A)(i and ii), 21081(a)(1)(C).[4] As an initial

matter, 52 U.S.C.§ 10303 was struck by the Supreme Court in *Shelby County v. Holder*, 570 U.S.

529 (2013). Further, both § 10303 and § 10301 apply only to discrimination on account of race,

color, or membership in a language minority group. *See* 52 U.S.C. § 10301(a); § 10303(f)(2). Since

Plaintiffs do not allege any discrimination on account of race, color, or membership in a language

minority group, they have failed to state a claim under these provisions. *See generally* Dkt. #32

(failing to discuss any of these protected classes).

    In addition, 52 U.S. §§ 21081(a)(1)(A)(i) and (ii) simply require voting systems to:

> (i) permit the voter to verify (in a private and independent manner) the votes
> selected by the voter on the ballot before the ballot is cast and counted;
> (ii) provide the voter with the opportunity (in a private and independent manner) to
> change the ballot or correct any error before the ballot is cast and counted (including
> the opportunity to correct the error through the issuance of a replacement ballot if
> the voter was otherwise unable to change the ballot or correct any error);

52 U.S. §§ 21081(a)(1)(A)(i), (ii). Under section (a)(1)(C), voting systems must simply

ensure that any notification required for voters who select votes for more than one candidate

preserves the privacy of the voter and the confidentiality of the ballot. 52 U.S. § 21081(a)(1)(C).

Because Plaintiffs do not allege that they cannot verify their selections and change their ballots,

nor do they allege that any notifications sent to individuals who selected more than one candidate

for a race fails to preserve the secrecy of their ballots, they have failed to state a claim under these

provisions. *See generally* Dkt. #32.

## IV.   <u>PRAYER</u>

    For all these reasons, Texas Secretary of State Jane Nelson and Texas Elections Director

Christina Adkins respectfully ask the Court to dismiss Plaintiffs' claims against them.

                    Respectfully submitted,

---

[4] 42 U.S.C.§ 1983 and § 1988 are mere procedural vehicles to allege actions in violation of federal law and request
attorneys' fees.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

/s/ *Joseph Keeney*
JOSEPH KEENEY
Texas Bar No. 24092616
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station MC 019
Austin, Texas 78711-2548
Phone: 512-475-4090
Fax: 512-320-0667
Joseph.Keeney@oag.texas.gov

ATTORNEYS FOR SOS DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on June 28, 2024, to all counsel of record. I further certify that a true and correct copy of the foregoing instrument has been sent via e-mail as follows:

*Via email*:
Laura Pressley, Ph.D.,
101 Oak Street, Ste. 248
Copperas Cove, TX 76522
LauraPressley@Proton.me

PRO SE LITIGANT

*/s/ Joseph Keeney*
JOSEPH KEENEY
Assistant Attorney General