# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| LAURA PRESSLEY, ROBERT BAGWELL, TERESA SOLL, THOMAS L. KORKMAS, and MADELON HIGHSMITH,<br>    *Plaintiffs*,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Texas Secretary of State, CHRISTINA ADKINS, in her official capacity as the Director of the Elections Division of the Texas Secretary of State, BRIDGETTE ESCOBEDO, in her official capacity as Williamson County Elections Administrator, DESI ROBERTS, in his official capacity as Bell County Elections Administrator, and ANDREA WILSON, in her official capacity as Llano County Elections Administrator,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   Civil Action No. 1:24-cv-00318-DII |

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS WITH BRIEF IN SUPPORT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Division Chief, General Litigation Division

JOSEPH D. KEENEY
Attorney-In-Charge
Texas Bar No. 24092616
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4090
Facsimile: (512) 320-0667
Joseph.Keeney@oag.texas.gov

***ATTORNEYS FOR DEFENDANTS***

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ iii

I. Introduction ............................................................................................................... 1

II. Argument .................................................................................................................. 2

        A. Plaintiffs' Response distorts the generalized grievance test and again fails to articulate a non-hypothetical injury. .............................................. 2

        B. Plaintiffs' Response further illustrates the absence of any non-speculative ongoing violation of federal law. ............................................ 3

        C. Plaintiffs' Response misunderstands the political question doctrine and fails to state a claim under the U.S. Constitution. ............................... 5

        D. Plaintiffs' Response implicitly concedes their federal statutory claims should be dismissed. .......................................................................... 8

III. Prayer ........................................................................................................................ 8

Certificate of Service ............................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*,
  468 U.S. 737 (1984) .................................................................................................................. 1

*Baker v. Carr*,
  369 U.S. 186 (1962) .................................................................................................................. 3

*Brennan v. Stewart*,
  834 F.2d 1248 (5th Cir. 1988) .................................................................................................. 6

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) .................................................................................................................. 7

*Duncan v. Poythress*,
  657 F.2d 691 (5th Cir. 1981) .................................................................................................... 6

*Eubanks v. Nelson*,
  No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) ........................................................ 7

*FEC v. Akins*,
  524 U.S. 11 (1998) .................................................................................................................... 2

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) .................................................................................................................. 1

*Green v. Mansour*,
  474 U.S. 64 (1985) .................................................................................................................... 4

*Kuwait Pearls Catering Company, WLL v. Kellogg Brown & Root Services, Inc.*,
  853 F.3d 173 (5th Cir. 2017) .................................................................................................... 5

*Monk v. Huston*,
  340 F.3d 279 (5th Cir. 2003) .................................................................................................... 4

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) .................................................................................................................. 4

*Nolan v. Ramsey*,
  597 F.2d 577 (5th Cir. 1979) .................................................................................................... 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................................... 7

*Richardson v. Tex. Sec'y of State*,
  978 F.3d 220 (5th Cir. 2020) ................................................................................................ 5, 6

*Russ v. N. Pike Sch. Dist.*,
  No. 518CV145DCBMTP, 2020 WL 13682829 (S.D. Miss. Feb. 6, 2020) ............................... 8

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) .................................................................................................................. 1

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) .................................................................................................................. 1

*United States v. Texas*,
    599 U.S. 670 (2023) .................................................................................................... 1

*United Transp. Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000) ....................................................................................... 4

*Williams on Behalf of J.E. v. Reeves*,
    954 F.3d 729 (5th Cir. 2020) ....................................................................................... 4

**Statutes**

52 U.S. § 21081 ................................................................................................................ 8

52 U.S.C. § 10301 ............................................................................................................ 8

52 U.S.C. § 10303 ............................................................................................................ 8

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Texas Secretary of State Jane Nelson and Texas Elections Director Christina Adkins in their official capacities (collectively "SOS Defendants") file this Reply to Plaintiffs' Response to the SOS Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

### I.   INTRODUCTION

"Standing is 'built on a single basic idea—the idea of separation of powers.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) (*citing United States v. Texas*, 599 U.S. 670, 675 (2023)). The elements of standing require a plaintiff to show: (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *See Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Plaintiffs have not only failed to demonstrate standing, they have failed to state non-speculative claims under any federal law. They cannot utilize this forum to litigate grievances arising under state law, and they cannot ask this court to "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *See Hippocratic Med.*, 602 U.S. at 368 (*citing Allen v. Wright*, 468 U.S. 737, 760 (1984)). Although they insist this Court should exercise jurisdiction, otherwise they would have no "judicial recourse" for their claims, "[t]he 'assumption' that if these plaintiffs lack 'standing to sue, no one would have standing, is not a reason to find standing.'" *Id*. (*citing Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)). "Rather, some issues may be left to the political and democratic processes." *Id*. For the following reasons, Plaintiffs' Response fails to defend the utter lack of any specific allegations of non-generalized, non-abstract, and non-speculative ongoing injuries or violations of law in Plaintiffs' Amended Complaint—much less any that would be appropriate to address under the political question doctrine.

## II.   ARGUMENT

**A.   Plaintiffs' Response distorts the generalized grievance test and again fails to articulate a non-hypothetical injury.**

Plaintiffs argue they are not challenging or seeking an injunction against the use of electronic voting machines, they are challenging the alleged "waivers" of state law permitting the use of the challenged electronic voting machines at least in a certain way—with consecutively numbered ballots and certain hardware. *See* (Dkt. #52) at ¶ 11. This is a distinction without a difference. Whether they are seeking to enjoin the use of electronic voting machines *per se* or simply, as they claim, proscribe the manner in which the electronic voting machines may be used— their allegations are generalized grievances. Plaintiffs even admit that their grievances are generalized—*i.e.*, felt by all persons using the voting systems, machines, or ballots at issue. (Dkt. #52) at ¶ 12. Plaintiffs' injuries are no more particularized than the voters in *Andrade*, *Eubanks*, and *Lutostanski,* since the plaintiffs in those cases also were undifferentiated from all in-person voters in the counties at issue. The same is true in this case, and the Court should similarly dismiss Plaintiffs' Amended Complaint.

Plaintiffs' reliance on *Baker v. Carr* and *Federal Elections Commission v. Akins* is unavailing. It is not *simply* the widely-shared alleged harm in Plaintiffs' Complaint that warrants dismissal, but rather its generalized nature combined with the abstract nature of the allegations that renders it extra-jurisdictional. *See FEC v. Akins*, 524 U.S. 11, 24 (1998) (noting that a widely shared injury must be "sufficiently concrete"). In *Akins*, the plaintiffs alleged an informational injury fairly traceable to a political action committee's failure to—as required by the Federal Election Campaign Act—disclose certain information. 524 U.S. at 11. *Akins* is distinguishable, as an initial matter, because the Plaintiffs are not capable of demonstrating standing merely by asserting an "informational injury"—a low bar. Rather, as discussed in the SOS Defendants'

2

Motion to Dismiss, Plaintiffs have alleged no more than an abstract or hypothetical injury that cannot be fairly traced to any action—much less a knowing or intentional one—of the SOS Defendants. Accordingly, there is nothing particularized, nor "sufficiently concrete" about Plaintiffs' alleged fears of future injuries.

Similarly, in *Baker v. Carr*, the alleged harm was also concrete—the actual dilution of votes attributed to the apportionment of U.S. representatives. 369 U.S. 186, 206–08 (1962). Not so in this case, where the alleged harm is purely hypothetical, resting on pure speculation (but no factual allegation) that unidentified bad actors developed or uncovered the Plaintiffs' "algorithm," *and* will request *and* will receive the requisite documents through the Public Information Act ("PIA"), to which they would then need to successfully apply the "algorithm" in order to decipher how Plaintiffs voted. Plaintiffs alleged that "the secrecy of the Williamson County Plaintiffs' ballots has already been violated," but in fact, the only factual allegation in this regard is that the Plaintiffs *themselves* disclosed how voters voted—not that *purely hypothetical others* (the unidentified "bad actors") did so and harmed the Plaintiffs.[1] *See* (Dkt. #52) at ¶¶ 16–17.

**B.   Plaintiffs' Response further illustrates the absence of any non-speculative ongoing violation of federal law.**

In addition, even if Plaintiffs' allegations are correct, the fact that recent Attorney General Opinions and SOS Advisories have issued guidance *not only* instructing county officials to redact additional information in response to future PIA requests of ballot information, but also prohibiting "the generation of ballot numbers using electronic pollbook systems or using peripheral devices that directly connect to electronic pollbook systems" render it even more speculative that it would

---

[1] Further, in light of their concession that they have shared the "algorithm" and thereby—taking their allegations as true—the knowledge of how they cast their votes with another person, the Plaintiffs in this case would have needed to *also* allege how any specific disclosure to an identified individual(s) would concretely injure them, since apparently, by their own standards, Plaintiffs are not injured by *certain* individuals knowing how they voted. *See* (Dkt. #32) at ¶ 115 (alleging they shared the "algorithm" with another person, Walter Dougherty).

be still possible to, as Plaintiffs allege they previously did in a prior election, uncover and apply an "algorithm" to determine how individuals will have voted in future elections.[2] *See* (Dkt. #52-1). It is entirely unclear and not factually alleged how Plaintiffs would be able to replicate their results in future elections—and they do not contend in their Response that they would still be able to do so.[3] *See generally* (Dkt. #52). Indeed, whether ballot secrecy was breached in the past is irrelevant for purposes of federal jurisdiction, since the *Ex Parte Young* exception only permits prospective (not retrospective relief). *Green v. Mansour*, 474 U.S. 64, 67 (1985). Thus, given the lack of any non-speculative allegation indicating that Plaintiffs' "algorithm" is as effective as Plaintiffs claim it was in the past, especially considering new state-level requirements for ballot numbering and redactions in PIA requests, the Plaintiffs have failed to allege any non-speculative "ongoing" violation as necessary for the *Ex Parte Young* sovereign immunity exception, even if they had alleged the existence of these "bad actors" with ill intent in possession of or requesting the requisite documents with knowledge of the secret "algorithm." *See Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

Plaintiffs' specific arguments regarding sovereign immunity similarly misunderstand the inquiry. First, whether the SOS Defendants have "misinterpreted their authority under Section 52.075, [a Texas statute]," is not a question the federal court can address. *See id*. (requiring

---

[2] At the very least, the lack of such concreteness demonstrates the inquiry is not ripe. *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (holding ripeness doctrine "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."); *see also Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (requiring dismissal for lack of ripeness); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (noting that ripeness doctrine prevents courts from engaging in abstract disagreements over administrative policies).

[3] While Plaintiffs cannot show that it is purely speculative that changed circumstances have not rendered null and void any future application of their alleged "algorithm," they also cannot give their allegations credence by citing to these recent political activities. (Dkt. #52) at ¶¶ 18–21, 36–38. Plaintiffs previously claimed that their allegations do not concern the issues being addressed by the SOS and Texas Legislature. *See* Dkt. #434) at ¶ 11 ("Ballot secrecy breaches obtained via another method - completely unrelated to this case and to Dr. Pressley's algorithmic ballot numbering breach method…"). Plaintiffs' turnabout in their Response simply further undermines the credibility of their claims.

allegation of a violation of federal, not state law).[4] Second, it is true that the Court can generally order state agency defendants to do "no more than refrain from violating federal law," but if the Plaintiffs are implying that that rule permits the Court to do *more* than ordering the SOS Defendants to refrain from violating federal law, and instead order them to take affirmative actions within the scope of their discretion, they are sorely mistaken. *See Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020). As applied to this case, the SOS Defendants have sovereign immunity from any judicial relief that would require the SOS Defendants to issue or retract any Advisories or take any other affirmative, discretionary action. Because Plaintiffs have failed to identify any judicial relief, i.e., a narrowly tailored, ministerial action that would provide them prospective relief for a concrete, actual or imminent alleged injury, they have—in this way also—failed to plead a claim fitting within the narrow *Ex Parte Young* exception.

C. **Plaintiffs' Response misunderstands the political question doctrine and fails to state a claim under the U.S. Constitution.**

Likewise, Plaintiffs' arguments that they have stated a claim and that their claims are not precluded by the political question doctrine are of no moment. First, Plaintiffs cannot evade the political question doctrine by claiming that they are asking the Court to order a state agency to "honor the [state] legislature's policy choices." *See* (Dkt. #52) at ¶ 52. If the question is committed to the state legislature, then the state legislature (not a federal court) is the one to determine whether the state agency needs to be corrected. *See Kuwait Pearls Catering Company, WLL v. Kellogg Brown & Root Services, Inc.*, 853 F.3d 173 (5th Cir. 2017) (KPCC) (articulating the distinction as one between the judiciary and "the political branches" (plural), i.e., both the legislature and

---

[4] Pages 17 through 19 of Plaintiffs' Response further illustrates that Plaintiffs have done no more than pay lip service to the U.S. Constitution, but they are truly seeking a declaration that the SOS Defendants are acting contrary to the Texas Legislature's statutory directives. For purposes of federal court jurisdiction, this discussion is patently irrelevant. Their references to the separation of powers and checks and balances—being cabined to their apparent dissatisfaction with the SOS Defendants' policy choices and belief that they have acted beyond their authority as delegated to them by the state are not concerns the *Ex Parte Young* exception permits the Court to evaluate.

executive branches). Second, Plaintiffs are not challenging the procedural due process of a given election in an election contest, as in *Duncan v. Poythress*, but rather, as discussed, SOS Advisories and voting system certifications, which are legislative or discretionary in nature, not implicating any procedural concern of a deprivation of a liberty or property interest without notice or opportunity to respond. *Compare* (Dkt. #32) *with* 657 F.2d 691, 703 (5th Cir. 1981). Accordingly, no procedural due process interest can be stated in this context. *Nolan v. Ramsey*, 597 F.2d 577, 580 (5th Cir. 1979) (holding that due-process rights did not attach to the adoption of a rule by the Texas Railroad Commission because it was a quasi-legislative decision); *see also Richardson* 978 F.3d at 230–32 (finding no property or liberty interest in voting, as necessary for procedural due process claim). For these reasons, they have failed to allege a deprivation of a property or liberty interest without procedure; and accordingly have failed to state a procedural due process claim.

Further, given the absence of a liberty or property interest, they have also failed to state a substantive due process claim. *See Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) ("A violation of 'substantive' due process … occurs only when the government deprives someone of liberty or property."). Moreover, even if the case did involve a property or liberty interest, whether a "breach of ballot secrecy" shocks the conscience is not the question. Because certifications of voting systems are not arbitrary or "conscience-shocking"—especially given the especially-tenuous and tortured way in which Plaintiffs attempt to trace any ballot secrecy breach to the SOS Defendants, relying not on the actions themselves to prove harm, but rather, on the hypothetical actions of third parties outside the control of the SOS Defendants—the Plaintiffs have failed to state a substantive due process claim against the SOS Defendants.

Likewise, it is entirely in bad faith to accuse the SOS Defendants of acting intentionally or knowingly in contravention of ballot secrecy. (Dkt. #52) at ¶ 29. Plaintiffs claim that Defendant

Nelson was "personally presented with evidence" of "ballot numbering waivers and pollbook issues," at a certain meeting, but do not allege that any SOS Defendant was personally presented with evidence of ballot secrecy violations. *See* (Dkt. #52) at ¶ 29. Indeed, Plaintiffs are deliberately obstructing the SOS Defendants from determining whether their allegations regarding an "algorithm" have *any* merit by refusing to provide such information. *See* (Dkt. #42, #44). As shown by recent SOS Advisories, any concerns of ballot secrecy violations are being taken seriously by the SOS Defendants. But Plaintiffs' *distinct* allegations—concerning their unrelated "algorithm," have no supporting information which would lead the SOS Defendants to conclude any different or further action is necessitated at this time.[5]

In addition, the Equal Protection Clause requires similarly-situated voters to be "treated" alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Since Plaintiffs have not alleged an actual or concrete harm flowing from the way mail-in and in-person ballots are numbered, they have not alleged that the numbering on the Plaintiffs' ballots has resulted in them being "treated" differently. Finally, with respect to the First Amendment—indeed, to this suit as a whole—Plaintiffs have failed to state a claim "certainly impending to constitute injury in fact." *See Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449, at *2 (5th Cir. Apr. 3, 2024) (holding that allegations of possible future injury are not sufficient). In *Eubanks*, the Plaintiffs alleged that they feared their ballots would be disclosed, subjecting them to possible harassment and intimidation, thus interfering with their First Amendment rights. *Id*. Likewise, in this case, Plaintiffs allegations are similarly conjectural and abstract, lacking the requisite impending nature

---

[5] Plaintiffs also appear to want it both ways—arguing they are not suing to enforce state law (rather, they are simply asking the Court to instruct the SOS Defendants to comply with federal law), but that the SOS Defendants cannot satisfy the Fourteenth Amendment in certain ways because doing so would conflict with certain state laws, as they interpret them. *See* (Dkt. #52) at ¶¶ 22, 30. There is no jurisdiction for such an inquiry. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (holding "the Eleventh Amendment prohibited the District Court from ordering state officials to conform their conduct to state law.").

to invoke federal jurisdiction and state a First Amendment violation.

**D.   Plaintiffs' Response implicitly concedes their federal statutory claims should be dismissed.**

Finally, Plaintiffs' Response ignored the SOS Defendants' arguments concerning their allegations of various violations of federal statutes. *See generally* (Dkt. #52). Accordingly, Plaintiffs have conceded that they failed to state claims thereunder. *See Russ v. N. Pike Sch. Dist.*, No. 518CV145DCBMTP, 2020 WL 13682829, at *2 (S.D. Miss. Feb. 6, 2020) (noting plaintiff conceded argument by not responding to argument raised in motion to dismiss). As such, Plaintiffs allegations of violations of 52 U.S.C. §§ 10301, 10303 and 52 U.S. § 21081 must be dismissed.

### III.   PRAYER

For all these reasons, Texas Secretary of State Jane Nelson and Texas Elections Director Christina Adkins respectfully ask the Court to dismiss Plaintiffs' claims against them.

> Respectfully submitted,
>
> KEN PAXTON
> Attorney General of Texas
>
> BRENT WEBSTER
> First Assistant Attorney General
>
> JAMES LLOYD
> Deputy Attorney General for Civil Litigation
>
> KIMBERLY GDULA
> Chief for General Litigation Division
>
> /s/ *Joseph Keeney*
> JOSEPH KEENEY
> Texas Bar No. 24092616
> Assistant Attorney General
> Office of the Attorney General
> General Litigation Division
> P.O. Box 12548, Capitol Station MC 019
> Austin, Texas 78711-2548
> Phone: 512-475-4090
> Fax: 512-320-0667

8

Joseph.Keeney@oag.texas.gov
ATTORNEYS FOR SOS DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on July 19, 2024, to all counsel of record. I further certify that a true and correct copy of the foregoing instrument has been sent via e-mail as follows:

*Via email*:
Laura Pressley, Ph.D.,
101 Oak Street, Ste. 248
Copperas Cove, TX 76522
LauraPressley@Proton.me
PRO SE LITIGANT

*/s/ Joseph Keeney*
JOSEPH KEENEY
Assistant Attorney General