IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LAURA PRESSLEY, ROBERT BAGWELL, TERESA SOLI, THOMAS L. KORKMAS, and MODELON HIGHSMITH<br>    *Plaintiffs*,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Texas Secretary of State, CHRISTINA ADKINS, in her official capacity as the Director of the Elections Division of the Texas Secretary of State, BRIDGETTE ESCOBEDO, in her official capacity as Williamson County Elections Administrator, DESI ROBERTS, in his official capacity as Bell County Elections Administrator, and ANDREA WILSON, in her official capacity as Llano County Elections Administrator,<br>    *Defendants*. | Civil Action No. 1:24-cv-00318 |

## DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT ON MOOTNESS

To The Honorable Judge Ezra:

    Defendants Texas Secretary of State Jane Nelson and Texas Elections Director Christina Adkins in their official capacities (collectively, the "Secretary of State Defendants"), and Defendants Williamson County, Bell County, and Llano County (collectively, the "County

1

Defendants") file this Motion for Summary Judgment limited to the question of whether this matter is moot, as directed by the Court on March 25, 2025.[1] (Dkt. #83).

## I.  INTRODUCTION

Since Plaintiffs filed their suit, the Secretary of State has issued Election Advisory No. 2024-21, in June 2024, which prohibits any county, including Williamson and Bell, from generating ballot numbers using electronic pollbook systems or using peripheral devices that directly connect to electronic pollbook systems. Two of the Defendant Counties—Williamson and Bell—have altered their procedures to no longer use electronic pollbooks to randomly generate numbers on ballots. These counties made the changes in light of the Secretary of State's advisory, which sets forth electronic pollbook standards consistent with state law, with no realistic chance of reversal. *See* Ex. A, B, E.

Plaintiffs had alleged that randomly-generated numbers from pollbooks—as opposed to consecutive numbers printed on ballots—posed a risk to the secrecy of ballots because individuals could allegedly request and receive these documents and corresponding voter lists under the Texas Public Information Act and match voters with their ballots by applying an undefined "algorithm." (Dkt. #32) at 47. Thus, Plaintiffs' claims—which Defendants maintain have always been entirely unfounded and frivolous—that the secrecy of the ballot is at risk for these reasons in Williamson and Bell Counties are moot.

Llano County never generated ballot numbers using electronic pollbook systems or peripheral devices that directly connect to electronic pollbook systems. There is no information

---

[1] Defendants reserve the right to refile their Motions to Dismiss should the Court deny this Motion for Summary Judgment, which the Court denied without prejudice as to refiling. Defendants also reserve the right to file a Motion for Summary Judgment—should this case not be dismissed—after the entry of a scheduling order in this case, should one be approved by the Court.

printed on the ballot that can be connected back to the voter and no reports that can be generated identifying any particular voter to any unique identifier. The voting process in Llano County already complied with the requirements of Secretary of State Election Advisory No. 2024-21. And—notwithstanding the absence of any factual allegations regarding ballot secrecy violations in Llano County in Plaintiffs' live Complaint—assuming arguendo Plaintiffs had stated a claim against Llano County in the first place, Attorney General Opinion No. KP-0463, which requires counties to redact identifying information in response to public information requests, renders their claims against Llano County moot. Finally, since their claims against the Counties are moot, any redundant claims against the Secretary of State Defendants are also moot.

## II. ARGUMENT

### A. Plaintiffs' claims against Williamson and Bell Counties are moot.

As Plaintiffs are aware, both Bell and Williamson Counties have complied with Secretary of State Election Advisory No. 2024-21 and utilize consecutively numbered paper ballots, and do not assign a computer-generated unique identifier either via electronic voting system software or hardware. Ex. A, Ex. B. Plaintiffs agree that compliance with Advisory 2024-21 is mandatory and nondiscretionary by Defendants Roberts and Escobedo ("Advisory 2024-21 communicates two changes to the State Defendants' in-person voting ballot marking device ballot numbering policy: (1) prohibition against generating 'ballot numbers using electronic pollbooks' and (2) the requirement 'to use ballot numbering methods that do not involve the use of the electronic pollbook system.") *Compare* (Dkt. #79 at ¶ 7)) *with* Ex. A, Ex. B. As detailed *supra,* the voluntary cessation doctrine is inapplicable to this case as to Defendants Roberts and Escobedo because they, as Plaintiffs admit, are prohibited from generating ballot numbers using electronic pollbooks.

In addition, Tex. Attorney General Opinion No. KP-0463 requires county officials to redact

3

all personally identifiable information contained in election records and keep voter secrecy data confidential. Accordingly, this action moots any potential "ballot secrecy" violation by members of the public (even if the Plaintiffs had standing in the first place to assert claims related to the acts of third parties). Plaintiffs, however, have argued that their claims are not moot because the unspecified "data" is still in the hands of county officials. But Plaintiffs and those with whom they have shared information are the only individuals allegedly in possession of the "algorithm" which is, according to the allegations in Plaintiff's live Complaint, necessary to understand the data and match voters' ballots to identifying information. No county official has any idea what Plaintiffs mean when they refer to this "algorithm," nor do they have any idea how any "data" might be used to violate ballot secrecy. Ex. A, Ex. B, Ex. C.

Accordingly, this case is moot as to Defendants Roberts and Escobedo, and this case must be dismissed as to them. (Dkt. #79 at ¶¶ 6–8).

### B. Plaintiffs' claims against Llano County are moot.

The same is true of Llano County. Ex. C. Llano County complied with the requirements discussed in Secretary of State Election Advisory No. 2024-21 prior to its issuance. Ex. C, Ex. D. Despite Llano County not making any *changes* to its election practices, the case should still be rendered "moot" as to *all* parties, given—to the extent the sole Plaintiff in Llano County might theoretically claim the threat that her votes might be revealed has chilled her desire to vote—the unimpeachable testimony attached from the Llano County Elections Administrator and the Hart InterCivic Senior Vice President of Customer Success render that claim absurd and incapable of invoking the Court's jurisdiction. *See Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 *2 (5th Cir. Apr. 3, 2024); *Lutostanski v. Brown*, 88 F.4th 582, 586-7 (5th Cir. 2023) (dismissing when Plaintiffs could not articulate non-speculative ongoing harm to them by either Defendant).

In Llano County, the election process neither generates ballot numbers using electronic pollbook systems nor uses peripheral devices that directly connect to electronic pollbook systems. *Id.* As stated in Advisory No. 2024-21, the Secretary of State's Office "has the authority to adopt specific standards for the certification of electronic pollbook systems and to adopt specific requirements relating to the form and content of electronic voting system ballots, including the methods used to comply with requirements in Texas law relating to the numbering of ballots." Tex. Sec'y State Elec. Adv. No. 2024-21. Thus, the Secretary of State's Office "revised the standards for certification of an electronic pollbook system . . . [that] prohibit the generation of ballot numbers using electronic pollbook systems or using peripheral devices that directly connect to electronic pollbook systems." *Id.*

It is clear that Plaintiffs either misunderstand the voting equipment in Llano County or misinterpret the information associated with the equipment and the election process. In Llano County, "there are three (3) separate and independent processes taking place at the polling location – (1) verification that the voter is qualified at the poll pad; (2) the voter has been provided with the correct ballot style and the ability to mark their correct ballot style; and (3) the voter casts their ballot." *See* Ex. C, D. The Knowink Poll Pad verifies that the voter is qualified to vote and a barcode with no identifying information to the voter is printed only for the purpose of providing a correct ballot style for the voter. *Id.* The Hart Verity Controller ("Controller") verifies the ballot style only and confirms that it matches the ballot style provided to the voter during the verification process. The Hart Verity Controller is separate and independent and is in no way tied to the Knowink Poll Pad and does not contain any identifying information of the voter. *Id.* Upon confirmation of the ballot style, "an access code is printed for the voter to utilize at the voting

5

booth at the Hart Verity Duo ("Duo"), also known as a ballot marking device. The Controller and Duo are linked with the various ballot styles and are not linked to the voter's information from the Poll Pad." *Id*. Following marking their selections, the voter will print their ballot – "no data regarding their selections is saved on the Duo once the ballot has been printed and cannot be reprinted or duplicated anywhere." *Id*. The ballot is then scanned into the Hart Verity Scanner, which accepts the ballot and deposits it into the ballot bag. *Id*.

"No information printed on the ballot can be connected back to the voter as no information is saved on the Controller and Duo and no reports can be generated identifying any particular voter or unique identifier. A voter could choose to write down the randomly generated unique identifier listed on their printed ballot and release it to the public, as Ms. Highsmith did in this matter. There would still be no way for anyone to identify any other voters or cast ballots. Although a list of unique identifiers can be printed from the Controller, the Controller doesn't contain personal identifying information as it is not linked to the Poll Pad and cannot be linked to any specific voter. Further, the voter's selections on their marked ballot are not retained and cannot be reprinted or linked to any unique identifiers." *Id*.

Further, Texas Attorney General Opinion No. KP-0463 provides that "[a]ny personally identifiable information contained in election records that could tie a voter's identity to their specific voting selections must be redacted for purposes of disclosure to protect the constitutional right to a secret ballot in Texas." Tex. Att'y Gen. Op. No. KP-0463. Similarly, Secretary of State Election Advisory No. 2024-20 entitled "Emergency Guidance of Voter Privacy" dated June 6, 2024, provides that "[t]he purpose of this advisory is to address concerns regarding the constitutional right to a secret ballot." Tex. Sec'y State Elec. Adv. No. 2024-20. "If an election

6

official receives a public information request for specific election records and/or ballot images and the county election official determines that producing the records in their original form could compromise a voter's right to a secret ballot, the official should consider additional redactions in consultation with their county or district attorney and public information coordinator. Below are some specific categories to consider when evaluating a public information request.

- Possible Redactions
    - Location at which a voter voted on the early voting roster or any associated epollbook reports
    - Serial numbers and time stamps on epollbook reports
    - Polling place identifiers such as a ballot number (either electronic or pre-printed) on the ballot image
    - Precinct information on the ballot image
    - Presiding judge's signature or early voting clerk's initials on the back of a ballot
    - Information on chain of custody documents that provide location identifiers that would appear on a ballot
    - Information on a ballot inventory form that shows what range of pre-printed ballot numbers are assigned to a given location
    - Provisional notations on specific ballots
    - Date a ballot was received on an Early Voting Roster
    - The voter's name and the ballot serial number on the Register of Spoiled Ballots."

*Id.*

For these reasons, Plaintiffs cannot show there is an actual controversy remaining between them and any County Defendant with regard to protecting voter secrecy data from disclosure. (Dkt. #79 at ¶¶ 52-54). Accordingly, the Court should dismiss Plaintiffs' claims against Defendant Andrea Wilson as moot, as well.

### C. Plaintiffs' claims against the SOS Defendants are moot.

A court lacks subject matter jurisdiction where a case becomes moot. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78-79, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."

*Already, L.L.C. v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (internal quotation marks and citation omitted). "If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot." *American Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988). In other words, when the controversy between parties "has resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests to maintain the litigation,' [courts] are without power to entertain the case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 354 (5th Cir. 2006)).

Plaintiffs reside in Llano County, Williamson County, or Bell County. (Dkt. #32) at ¶¶ 12–16. Their claims are moot against the County Defendants for the reasons previously discussed. Self-evidently, Plaintiffs lack any legally cognizable interest in the outcome of any changes at the state level that would impact other counties in which they do not reside. Thus, Plaintiffs' pursuit of statewide relief has been wholly improper from the start of this case. *See Lewis v. Casey*, 518 U.S. 343, 356–59 (1996) (finding systemwide relief was not appropriate upon showing of only two instances of actual injury); *Pro. Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 273 (5th Cir. 1984) ("Intrusion of federal courts into state agencies should extend no further than necessary to protect federal rights of the parties."); *Lane v. Williams*, 455 U.S. 624, 634 (1982) ("The possibility that other persons may litigate a similar claim does not save this case from mootness."). Accordingly, Plaintiffs' claims against the SOS Defendants are also moot.

### D. The voluntary cessation doctrine is not applicable.

#### 1. The voluntary cessation doctrine is inapplicable to Bell and Williamson County Defendants.

A party may proceed beyond mootness "only in exceptional situations." *Empower*

*Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020). The case at hand is not one of those "exceptional situations." In attempting to address both the inapplicability of the "voluntary cessation" doctrine and the mootness of their claim, Plaintiffs misstate the authority of Defendants Escobedo and Roberts. Plaintiffs assert that the policy changes implemented by Defendants Escobedo and Roberts are voluntary in nature, despite being mandated by the Secretary of State. Plaintiffs claim that advisories issued by the Secretary of State are mere suggestions which Defendants Escobedo and Roberts are entitled to disregard. Plaintiffs attempt to differentiate between an advisory and an order. (Dkt. #61, ¶ 14 and Dkt #62, ¶ 15). However, Secretary of State Advisory 2024-21 (Dkt. #60-2, p. 1) clearly references the two statutes upon which the advisory rests, both of which vest the Secretary of State with authority to bind county election officials.

First, Advisory 2024-21 relies upon Tex. Elec. Code § 31.014 (Certification of Electronic Devices to Accept Voters). That statute reads, in relevant part, "[t]he secretary of *state shall prescribe specific requirements and standards*, consistent with this code, for the certification of an electronic device used to accept voters…." [emphasis added]. Second, Advisory 2024-21 cites to Tex. Elec. Code § 52.075 (Modification of Ballot Form for Certain Voting Systems). That statute reads, "[t]he secretary of state may *prescribe* the form and content of a ballot for an election using a voting system, including an electronic voting system…" [emphasis added].

These two statutes clearly empower the Secretary of State to prescribe specific standards and requirements for election related equipment. To prescribe means "to order that an action be taken." *Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*, No. 16-5256 (D.C. Cir. Aug. 14, 2018). To "prescribe" is to "lay down rules [and] laws," or to "lay down as a rule or direction to be followed" or "impose authoritatively." Oxford English Dictionary (3d ed. 2007),

9

http://www.oed.com/view/Entry/150644." Therefore, an advisory issued by the Secretary of State is an order that county election officials are required to follow. If Defendants Escobedo and Roberts were to act contra to Advisory 2024-21, they would be violating a duly promulgated order issued by the state's chief elections officer.

Despite Plaintiffs' assertion, Defendants Escobedo and Roberts are not free to resume utilizing electronic pollbooks to assign randomized ballot numbers; to do so would be to violate the standards prescribed by the Secretary of State in accordance with state law. Since Defendants Roberts and Escobedo have no ability to alter or supersede state law, the Secretary of State's actions guarantee as a matter of law that Bell and Williamson Counties do not remain "free to return to [their] old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); Tex. Elec. Code §122.003 (allowing the secretary of state to limit the use of equipment in elections to conditions stated, binding on local election officials).

Finally, a governmental entity's conclusive abandonment of the challenged policy is sufficient to demonstrate that the threat of injury has abated, even when the change in policy is not accomplished by a statutory repeal or amendment. *See, e.g., Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd*, 131 S. Ct. 1651 (2011). (holding that the TDCJ director's affidavit explaining a revision to the policy in question was sufficient to establish that the plaintiff would no longer be subject to the challenged restrictions on attendance at religious services); *Coalition of Airline Pilots Ass'n v. F.A.A.*, 370 F.3d 1184, (D.C. Cir. 2004) ("[T]he agencies' commitment to draft new regulations that will provide additional administrative review procedures—a commitment made both to this court and in the formal entry in the TSA rulemaking dockets—provides sufficient assurance that the agencies will never return to [the]allegedly

unlawful procedures."). Government entities are entitled to a presumption of good faith when a change in policy eliminates the case or controversy.

### 2. The voluntary cessation doctrine is inapplicable to the Secretary of State Defendants.

Moreover, the voluntary cessation doctrine does not apply to Election Advisory No. 2024-21, which was issued by the Secretary of State. *See Sossamon*, 560 F.3d at 325 ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."). Government defendants are "accorded a presumption of good faith because they are public servants, not self-interested private parties." *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017). "[W]hen a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance, then the voluntary cessation doctrine does not apply." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018).

Given the attached declaration from Defendant Christina Adkins, the Court has no reason to apply the voluntary cessation doctrine to the case at hand.

## III. PRAYER

For all these reasons, Defendants respectfully ask the Court to dismiss Plaintiffs' claims against them. To the extent Plaintiffs would contend there is a fact issue, that would not save their claims. The Court can simply resolve the factual dispute in favor of Defendants. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to

satisfy itself that it has the power to hear the case."); *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987) (holding mootness is jurisdictional and must be raised sua sponte).

                                      Respectfully submitted,
                                      KEN PAXTON
                                      Attorney General of Texas

                                      BRENT WEBSTER
                                      First Assistant Attorney General

                                      RALPH MOLINA
                                      Deputy First Assistant Attorney General

                                      AUSTIN KINGHORN
                                      Deputy Attorney General for Civil Litigation

                                      KIMBERLY GDULA
                                      Chief for General Litigation Division

                                      */s/ Joseph Keeney*
                                      JOSEPH KEENEY
                                      Texas Bar No. 24092616
                                      Assistant Attorney General
                                      Office of the Attorney General
                                      General Litigation Division
                                      P.O. Box 12548, Capitol Station MC 019
                                      Austin, Texas 78711-2548
                                      Phone: 512-475-4090
                                      Fax: 512-320-0667
                                      Joseph.Keeney@oag.texas.gov

                                      **COUNSEL FOR SECRETARY OF**
                                      **STATE DEFENDANTS**

                                      */s/ Eric Opiela (with permission)*
                                      Eric Opiela
                                      State Bar No. 24039095
                                      ERIC OPIELA, PLLC
                                      9415 Old Lampasas Trail

Austin, TX 78750
Telephone: (512) 791-6336
Email: eopiela@ericopiela.com

**COUNSEL FOR DEFENDANT BRIDGETTE ESCOBEDO, IN HER OFFICIAL CAPACITY AS WILLIAMSON COUNTY ELECTIONS ADMINISTRATOR**

*/s/ Ross Fischer (with permission)*
Ross Fischer
State Bar No. 24004647
Ross Fischer Law, PLLC
430 Old Fitzhugh, No. 7
Dripping Springs, Texas 78620
Telephone: (512) 587-5995
Email: ross@rossfischer.law

**ATTORNEY FOR DEFENDANT DESI ROBERTS, IN HIS OFFICIAL CAPACITY AS BELL COUNTY ELECTIONS ADMINISTRATOR**


*/s/ J. Eric Magee (with permission)*
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
1301 Nueces Street, Suite 201
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

**COUNSEL FOR DEFENDANT ANDREA WILSON, IN HER OFFICIAL CAPACITY AS LLANO COUNTY ELECTIONS ADMINISTRATOR**

13

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF on April 24, 2025, to all counsel of record. I further certify that a true and correct copy of the foregoing instrument has been sent via e-mail as follows:

*Via email*:
Laura Pressley, Ph.D.,
101 Oak Street, Ste. 248
Copperas Cove, TX 76522
LauraPressley@Proton.me
**PRO SE LITIGANT**

                                                    */s/ Joseph Keeney*
                                                    JOSEPH KEENEY
                                                    Assistant Attorney General